FORM TO BE USED BY A PRISONER FILING A
42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT
IN THE UNITED STATES DISTRICT COURT
FOR THE          DISTRICT OF DELAWARE

07 - 110

## I. CAPTION

Gbeke Michael Awala

(Enter the full name of the plaintiff or
plaintiffs)

v.

U.S. Attorney's Office Delaware,
Executive Office For United States Attorneys, Lisa Cooper, D.G.C.
Colm F. Connolly, Beth Moskow-Schnoll and Kent A. Jordan Dist. Judge.

(Enter the full name of the defendant or
defendants) and Kenneth T. Jones and Ilana H. Eisenstein.
Deputy Registra, U.S. Attorney and Asst.
Florida Health Dept.    U.S. Attorneys
## II. PARTIES    For District of Delaware.

a. Plaintiff

Full name: Gbeke M. Awala.

Prison identification number: 82074-054

Place of present confinement: Moshannon Valley Correctional Center

Address: P.O. Box 2000, Philipsburg, PA 16866

Place of confinement at time of incidents or conditions alleged in
complaint, including address:
Salem County Correctional, 125 Cemetery Road, Unit A 3, Woodstown, NJ 08098

Additional plaintiffs: Provide the same information for any additional
plaintiffs on the reverse of this page or on a separate sheet of paper.

b. Defendants: (list only those defendants named in the caption of the
complaint, section I)

1. Full name including title: U.S. Attorney's Office District of Delaware

   Place of employment and section or unit: Wilmington, DE 19899-2046.

2. Full name including title: Executive Office For United States Attorney's

   Place of employment and section or unit: Washington, DC 20530

3. ...title: Colm F. Connolly

   ...lace of employment...and section or unit: U.S. Attorney Delaware

4. ...full name including...title: Beth Moskow-Schnoll

   Place of employment and section or unit: Asst. U.S. Attorney Delaware.

Additional defendants: Provide the same information for any additional
defendants on the reverse of this page or on a separate sheet of paper.

FILED
FEB 22 2007
SUE L. ROBINSON
U.S. DISTRICT JUDGE

## III. PREVIOUS LAWSUITS

*Instructions:*

If you have filed other lawsuits in any federal or state court dealing with the same facts as this complaint or other facts related to your imprisonment, you must provide the information requested below. If you have not filed other lawsuits, proceed to Section IV, Administrative Remedies, on this page.

If you have filed other lawsuits, provide the following information.

Parties to your previous lawsuit:

Plaintiffs ___Gbeke Michael Awala___

Defendants ___Chief Judge Sue L. Robinson et al.___

Issues: ___Plaintiff attempts to argue that Defendants have waived their Soveregn Immunity because of the alleged. Vidating state Law In Florida under 382.0Je1, for Issuance of a Birth Certificate.___

Court: if federal, which district? ___U.S. District Cort District of Delaware___

if state, which county? ___Wilmington, Delaware___

Docket number: ___1:07-CV-0T06I-UNA___ Date filed: ___1/29/07___

Name of presiding judge: ___UNA ?___

Disposition: (check correct answer(s)); Date: _____

Dismissed ___ Reason? _____

Judgment ___ In whose favor? _____

Pending ___ Current status? _____

Other _X_ Explain ___Awaiting Signature from, Senator Joseph J. Biden Jr.___ (Del.)

Appeal filed? ___ Current status? _____

**Additional lawsuits.** Provide the same information concerning any other lawsuits you have filed concerning the same facts as this action or other facts related to your imprisonment. You may use the back of this page or a separate sheet of paper for this purpose.

## IV. ADMINISTRATIVE REMEDIES

*Instructions:*

**Provide** the information requested below if there is an administrative procedure to resolve the issues you raise in this complaint. Examples of administrative procedures include review of grievances, disciplinary action, and custody issues. If no administrative procedures apply to the issues in this complaint, proceed to Section V, Statement of Claim, on page 4.

a. **Describe** the administrative procedures available to resolve the issues raised in this complaint:

Type of procedure. (grievance, _disciplinary_ review, etc.)

Judicial Council for The 3rd Circuit.

Authority for procedure. (DC-ADM, inmate handbook, etc.)

28 U.S.C. § 351 and 28 USC §§ 49, 332 (d)(i)

Formal or informal procedure. Formal Procedure before Chief Judge Scirica

Who conducts the initial review? on J.C.'s 33, 36 and 40, Complaint alleged Disiplinary Violations by members of the Judicial

What additional review and appeals are available? Council for 3rd Circuit, Under Judicial Councils Reforms and Judicial Conduct and Disability Act.

b. **Describe** the administrative procedures you followed to resolve the issues raised in this complaint before filing this complaint:

On what date did you request initial review? I stood at the door

What action did you ask prison authorities to take? and knock, the Judges Sue L Robinson and Kent A Jordan, Improper

What response did you receive to your request? Influence over the Family History and Geneological Section of the Trial Transcripts,

What further review did you seek and on what dates did you file the requests? Said Transcript was Inaccurately Transmitted on Appeal. nos and , having ascertained 80 percent error, and Conducts under Crim 04-90-KAJ, that defiled

What responses did you receive to your requests for further review? and disrepute Judicial Process. Said Chief Judge accompanying to an apinion to Complainants, that the Subject Judges and Circuits Court Judges have not engaged in Conduct.

c. If you did **not** follow each step of the administrative procedures available to resolve the issues raised in this complaint explain why.

Prejudicial to the effective and expeditious administration of the business of the Courts. Even though it was well-highly Impossible to get the exact data from the Testimony and Evidence adduced at trial on January 17, 18, 2006. Obliteration of my name and family names.

Complaint And Jury Demand

Gbeke M. Awala brings this Civil Rights
Complaint, through Prose and alleges as follows:

Plaintiff alleges that at all times relevant, he was
proceeding to the State of maryland on the facts that
the Baltimore Branch of the Homeland Security's and
Border Inspection, In Conjunction with the U.S. Citizenship
and Immigration Service, engaged in Conduct prejudicial
to the effective and expeditious administration of a Citizenship
Application filed under N-400, to the service on January 1,
2004. Plaintiff seeking his documents, alleged a State
Forum against the defendants, U.S. Attorney's office for,
the District of Delaware, Executive office For United
States Attorney's, For administrative oversights over Colm
F. Connolly, U.S. Attorney District of Delaware, Beth
Moskow-Schnoll and Ilana H. Eisenstein, For a Crown of his
Citizenship having been Born in Miami, Florida, on may
May 17, 1971, by Papa, moses Hime Awala, and Mama,
Dorcas C. Brown, upon Consideration, Involved the personal,
Individual and official Capacity of said defendants. emphasizes
on the Defendant kenneth T. Jones, Florida Health Department
while awaiting said Birth Documents, pictures and other
Documents of Hospital Records of Birth at Jackson Memorial
Hospital, miami-Florida, treatments for Navel cut, at birth,
Levkemiah and Several other medical treatment within the
Miami, Florida Districts. Defendant established prosecutorial
procedure on August 12, 2004, in New Castle, upon Investigation,
deliberately and Intentionally Suppressed and undermined evidence
4.

Conformed in expectation of U.S. Citizenship through the Border Inspectors who gained Possession of or "Laid hold of" all that Plaintiff Seeks to be. Defendants acted under Color of Law, willfully Subjected Plaintiff for the purpose of distinguishing the benefit of a Citizenship, perdited Actions under 8 U.S.C. Sec. 1326 Re-entry After Deportation Subsection (a) and (b) (2) (Count I).

Plaintiff brings this Civil Rights action against the Defendants to redress the deprivation, under Color of State and federal Law, of Rights, privileges and Immunities secured to him by provisions of the Fourth, fifth, Eighth, Ninth and Fourteenth Amendments to the United states Constitution; and 42 U.S.C. Secs. 1981, 1983 and 1985.

Plaintiff also alleges that Defendants unlawfully Deprives him of his Civil rights under the Florida State Constitution.

Plaintiff alleges that Defendants with knowledge of his U.S. Citizen Status, understood the responsibilities associated with Citizenship by birth, to shift their perspective from the 8 U.S.C. § 1326(a) and (b) (2) realms, to the Court of Appeals under 8 U.S.C. Sec. 1252 (b) (5) (A), and pursuant to that provision, the Court of Appeals would decide whether Plaintiff presents a "genuine issue of material facts about his nationality... If the Court concludes that such an issue is present, it shall retransfer the proceeding to the district court. In the U.S. District Court for the District of Delaware under 8 U.S.C. § 1252 (b)(5)(B), without arbitrary multiplying

5.

both Plaintiff and Judicial effort by Indefinite discrimination or arbitrary classification by Defendants where situation was due to no act of Plaintiff but Conduct of Plaintiffs parent who caused him to be taken to Africa, Ghana and Nigeria on/or around 1977, under an age of no majority.

Plaintiff further alleges that as a direct results of Defendants Invidious discrimination and arbitrary classifi-cation by them; a legal term denoting procedure to obtain a Delayed Birth Certificate through the Defendant Kent A. Jordan order and Kenneth T. Jones Deputy State Registrar of Florida Health Department, Including records of Plaintiff's original Birth Records, sees suffering, and the proof needed to obtain such Birth Certificates where isolated, excluded, excul-patory evidence submitted to Government Agents, Baltimore Airport, were stricken, by on anylysis of facts, known to be perjured by Agent Gonzales (unnamed defendant), Defendants Colm F. Connolly, Condored, Defendants Beth Moskow-Schroll and Ilana H. Eisenstein, on their Individual Capacites, United for a common goal shift their perspective from the reelm of U.S. Citisenship Claim, ac-to strive together, stand to accomplish Invidios discrimination and arbitrary classification with deliberate Indifference towards Plaintiffs needs rendered additional, Inconclusive Alien File, to prosecutor, prevented wittness In favor of Plaintiff's generic Consent to reenter the United States, Used their Individual Power to prevent witnesses who had evidence from testifing In favor of Plaintiff in U.S. vs Awala. 04-90-KAJ, After Plaintiff Clearly stated he wanted truth and honesty from the Def-endant Beth Moskow-Scholl's, Conduct was clearly Prosecutorial misconduct.

Plaintiff alleges that Defendants Violated

Ethics in Government Act; Thus, werent establishing prosecutorial office free of any Conflict of Interest that might arise where officials of Executive Branch of the U.S. Attorney's office District of Delaware and the Executive office For United States Attorney's and Lisa Cooper Deputy General Counsel to Investigate the Defendants and their Colleagues and Superiors Intentional Interference with the State of Florida's Statute, established to benefit Plaintiff Gbeke M. Awala from Support under Article III of the U.S. Constitution to obtain his Birth Certificate. Plaintiff further alleges that Defendants with knowledge of the Constitutional rights of Plaintiff, and with deliberate Indifference to Said rights, had failed and neglected to establish and Implement Policies practices and a fair hearing that the Florida Health Department had Correctly Construed under the Immigration Laws applicable to Plaintiff's case, and adverse to Said Laws, Defendants Beth Moskow Schnoll and Judge Kent A Jordan's findings were without Legal Support In the evidence presented at trial on Jan. 17/18 2006, with Intent to Injure Plaintiff denied Plaintiff due process of Law and employed a skilled Fetish (Attorney Samuel C. Stretton), to poison the express and purpose of the Plaintiff's Status as An American Citizen by Birth, Conspired and divulged diabolical Scheme In order to Convict him. Plaintiff Further alleges that defendant had failed to designe procedure that Plaintiff's Citizenship Con be administered on a Sound moral principles as opposed to the Casual arrest of his Prominents to be recognized as a U.S. Citizen by birth.
    Plaintiff further alleges that Defendants with Knowledge

7.

also of their inadequacies and deficiencies in their policy of invidious discrimination and arbitrary classification, had a duty under the Fourth, fifth, Eight, Ninth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1982, and 1983 to establish and implement policies, practices and procedures designed by the Defendant Executive office for United States Attorney's, under her policy development, administrative management direction, and operational support, See attached Letter from Lisa Cooper Duputy General Counsel, dated October 30, 2006, (in an attempt to vilify the Plaintiff's true name Gbeke M. Awala, said (EOUSA), above, mutilated the name and pronounced Awala as, Dear mr Mayo, not Inadvertence or mistake, but to Intimidate plaintiff and give greater impetus to the misconduct already established by the members of the U.S. Attorney's office District of Delaware. Defendant, Unanimously failed to Conform to the Case and well being of plaintiff — Case and Custody of the Infant Documents, Defendants were Capable of securing Said Documents through Form G-884. (see attached), Defendant Continued to claim Custody of Said Documents, after Jan 1, 2004. Defendants Improperly through their Agents interfered with the power of the State of Florida, Current Courts in miami Family Division, for Issuance of Birth Certificate of the State of Substantially prevented Plaintiff and Impairs the performance of the Defendant Florida Circuit Court. Defendants Conduct and Influence over Defendants Kenneth T. Jones, Inferred, absence such deep-seated favoritism and Influence over the State of Florida, there is a Substantial probability that Plaintiff would have been able to obtain his Birth Certificate to a U.S. Citizen.

Defendants with knowledge of Plaintiffs right under the Fourth Amendments, at trial, Two Exhibit Numbers, of the Same Exhibit Numbers, Marked '2' were taken and grinded together, and the other Left out of the Transcript and obviously, there will be no doubt the Defendant destroyed the Exhibit 2' a check payable to DR BA dated 02/04, for $6.00 on transcript and developed another taken Evidence, order of the Immigration, mis construed as Exhibit 2, Thus, Duplicious, not exactly as transpired on the date the Trial took place.

Plaintiff alleges that Defendants Conducts exhibits a Pattern of deception that is Inconsistent with the qualities needed to be an effective U.S. Attorneys and Assistant U.S. Attorneys, making them unsuitable for Federal employment and Law enforcement performance.

8.

# MEMORANDUM OF LAW.

Plaintiff argues that it is irrelevant in this case to merit Beth Moschow-Schnoll's Substitution of Counsel for government to Ilana H. Eisenstein, as noted on Case no 0490-SLR, See: "whether it would impair rights a party possessed when he acted, Incease a party's liability for past conduct, or impose new duties with respect to transactions already completed. Langraf v. US1 Film Prods. 511 US 244, 114 S.Ct.1483, 1505. 128 L.Ed. 2d 229(1994).

Here, Plaintiff argues that Congress clearly expresses the Title 42 U.S.C §1983 proper reach. See also Hall v. Clinton, (2002 DC), 350 OS App. DC 422, 285 F3d .74, held, It was well within Justice Department's discretion to determine that United States had Continuing Interest in representing former First Lady in litigation based on actions she allegedly undertook while at White House, even after she had become private citizen.

Plaintiff argues in this Complaint of Corruption and other Improper motivation for the alleged Conduct done against Plaintiff, that should be called or pronounced a Sadomasochism, since the defendants derived pleasure from Inflicting pain on Plaintiff, and Gbeke M Awala, having Substantiated his U.S. Citizens claim by birth in miami, florida. See. Instromedix, Inc (1984) 72 S f 2d 537, held standard for determining whether there is Improper Interference with or delegation of Independent power of branch."

Here, Kenneth T. Jones, altered the role the Birth Certificate played in favor of Plaintiff Awala, and on the basis to support the Government Impairs the diligent search of my birth records, gave an untrustly report a non-found statement, Plaintiff relates as the ancient statement tells "There is only one person who is oppressed in America. He is Black, Furthermore, I became aware at an early age from miami-florida that the whites felt superior to blacks. I could see my mother Dorcas Shabby Looks in the

*V. STATEMENT OF CLAIM*

*Instructions:*

*State here as briefly as possible the facts of your case. Use plain language and do not make legal arguments or cite cases or statutes. State how each defendant violated your constitutional rights. Although you may refer to any person, make claims only against the defendants listed in the Caption, Section I. Make only claims which are factually related. Each claim should be numbered and set forth in a separate paragraph with an explanation of how the defendants were involved. Use the reverse of this page or a separate sheet of paper if you need more space.*

*Statement of claim:*

Of adequate Standards, In Contrary, used their positions to deprived Plaintiff under the Color of Law, Stimulated Cultivation of his trial transcript, making his testimonies, and family geneology Impossible to get and the exact data transpired by the Jan. 17, 18 2005 criminal trial case altered, mutilated, under the Teachings, advocate and Incitation of the Defendants Colm F Connolly, with Violence Subjected Plaintiff to physical Abuse and torture by the U.S marshall Anderson, Causes plaintiff to suffer broken Ribbs, and Consistenty harbored Agent Gonzalez, who choose to ignore Information offered to him firsthand on August 12, 2004, that Plaintiff was a Citizen of the United States even mutilated AXcl Rodriguez.

*VI. RELIEF* (By Birth and a Dual Citizen of Nigeria

*Instruction: Briefly state exactly what you want the Court to do for you.*

*Relief sought:* That the Court determine and enter judgment declares that the acts and omissions of Defendants, violates rights secured to plaintiff Under Bivens, by the fourth, fifth, Eight, Ninth and fourteenth Amendment to the United States Constitution. and 42 U.S.C. Sec. 1981, 1982, 1983 and 1985. That the Court awards general damages and pentive damages. That Defendants Should Team up with Airport Agents retrieve Data and Compel Kenneth T. Jones

*VII. DECLARATION AND SIGNATURE*

*I (we) declare under penalty of perjury that the foregoing is true and* to Search rec correct.

Diligently and Completely record my Birth.

2/11/07

*DATE*

*SIGNATURE OF PLAINTIFF(S)*

Addendum.

See 65 A.L.R Fed. 819A.

"Constitutional issues relating to
federal Criminal prosecution of
federal Judges. No one knows where Andrew
Jackson was born, the 7th U.S. President, Igbeke, Born in Miami

Art. III "Case" or Controversy" Inquiry which
is at Core of federal Judicial power is not
different from examination of Subject matter
Jurisdiction. Scholes v. Schroeder, N.D. Ill 1990
744 F. Supp. 1419.

' In order to Satisfy Constitutional requirement
that Judicial power of United States be
applied to "Cases and Controversies," there must
be real and Substantial Controversy admitting of
specific relief through decree of Conclusive
Character, as distinguished from an opinion
advising what Law would be upon hypothetical
State of affairs. See Doe v. Shalala.
(D. Md. 1994). 862 F. Supp. 1421.

Here, it is necessary for the Court to accept and
Interpose with respect to Art III Construe
standard for disposing cases and Controversies.

Gbeke M- Awala
2/1/07.

Gbeke M. Avala
No. 82074-054
Moshannon Valley Correctional Center
P.O. Box 2000
Philipsburg PA 16866



Sue L. Robinson
Chief Judge
U.S. District Court
For The District Of Delaware
844 N. King street, Lockbox 31
Wilmington, Delaware 19801-3570



Legal mail!

INMATE MAIL FROM A CORRECTIONAL FACILITY

# EXHIBIT

# A



**U.S. Department of Justice**

Executive Office for United States Attorneys

*General Counsel's Office*                                    *Washington, D.C. 20530*

OCT 3 0 2006

Mr. Gbeke Michael Awala
#82074-054
Moshannon Valley Correctional Center
Philipsburg, Pennsylvania 16866

Dear Mr. Mayo:      ~ my name is Gbeke M. Awala not " Mayo".

    This responds to your July 25, 2006 letter which was received in the General Counsel's
Office, Executive Office for United States Attorneys (EOUSA), for a response.

    EOUSA provides the 93 United States Attorneys and 94 United States Attorney's offices
with general executive assistance and, among other things, direction, policy development,
administrative management direction and oversight, and operational support. Accordingly, we
are unable to assist you with regard to this matter.

                                              Sincerely,

                                              Lisa Cooper
                                              Deputy General Counsel

12



FLORIDA DEPARTMENT OF
# HEALTH

Jeb Bush
Governor

M. Rony François, M.D., M.S.P.H., Ph.D.
Secretary

August 2, 2006

Mr. Gbeke Michael Awala
Number 82074-054-Sho-403
Moshannon Valley Correctional Center
Post Office Box 2000
Philipsburg, PA  16866

Dear Mr. Awala:

Governor Bush asked me to reply to your July 4 letter regarding your birth certificate. I am sorry your search for your birth certificate has been so frustrating for you.

I asked Ken Jones, the Deputy State Registrar at the State Office of Vital Statistics, to give me an update on your request. You indicated in your letter that your parents are Dorles Brown and Moes At Awala, and that you were born on or around May 17, 1971 at Jackson Memorial Hospital in Miami-Dade County. Our Vital Statistics staff diligently searched Florida birth records several times, and could not locate a birth record with the information you gave us. Our staff also contacted Jackson Memorial Hospital on your behalf. Jackson Memorial Hospital also could not locate any records regarding your birth, based on the information you provided us.

By law in Florida, when we cannot locate the birth record, the Office of Vital Statistics cannot issue a birth certificate. Instead, we must issue a certified "no record found" statement. When our staff did not locate a record of your birth after several searches, we issued you the required certified statement as required by law.

However, this does not mean you cannot get your birth certificate if you were born in Florida. Section 382.0195, *Florida Statutes*, says that any person born in Florida who does not have a birth certificate can file a petition with the circuit court in the county of residence at the time of the birth. If there is enough evidence to support the petition, the circuit court can issue a "Delayed Certificate of Birth." I have enclosed a copy of that law for your information.

I suggest that you ask your attorney to assist you in contacting the Eleventh Circuit Court in Miami-Dade County to explore your options for obtaining a birth certificate through that venue.

Again, I am sorry that we were unable to locate your birth record. If you or your attorney have additional questions or concerns, please contact Mr. Jones at (904) 359-6982.

Sincerely,

François MD, PhD

M. Rony François, M.D., M.S.P.H., Ph.D.
Secretary, Department of Health

MRF/kj/eca
Enclosure

B-126

1              MR. STRETTON:   And it will be 30 or 60 days

2   hence?

3              THE COURT:   Probably more like 90 days hence.

4   That's more typical.   But if you want to wait here, we'll

5   get you an order on that promptly; all right?

6              MR. STRETTON:   Thank you.

7              THE COURT:   All right.   And if I could just see

8   the marshal in chambers for a moment and we stand in recess.

9   Thanks.

10             (Jury trial proceedings end at 1:27 p.m.)

11                            INDEX

12   THOMAS LISZKIEWICZ

13   DIRECT EXAM (CONTINUED) BY MS. MOSKOW-SCHNOLL         7
     CROSS-EXAMINATION BY THE DEFENDANT                   8
14   REDIRECT EXAMINATION BY MS. MOSKOW-SCHNOLL          22

15   SPECIAL AGENT AXEL RODRIGUEZ

16   DIRECT EXAMINATION BY THE DEFENDANT                 29

17   GBEKE AWALA

18   DIRECT TESTIMONY BY THE DEFENDANT                   32
     CROSS-EXAMINATION BY MS. MOSKOW-SCHNOLL             63
19
     CLOSING ARGUMENT BY MS. MOSKOW-SCHNOLL              73
20   CLOSING ARGUMENT BY MR. STRETTON                    79
     REBUTTAL ARGUMENT BY MS. MOSKOW-SCHNOLL             89
21
     INSTRUCTIONS TO THE JURY                            95
22
     JURY QUESTION                                      112
23
     JURY VERDICT                                       123
24

25

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
1900 E. WHATLEY ROAD
OAKDALE, LA  71463

In the Matter of:                           Case No.: A74-190-250
*F-AWALA, OBEKE O.

RESPONDENT                                  IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

Upon the basis of respondent's admissions, I have determined that the
respondent is subject to removal on the charge(s) in the Notice to Appear.

Respondent has made no application for relief from removal.

It is HEREBY ORDERED that the respondent be removed from the United States
to NIGERIA on the charge(s) contained in the Notice to
Appear.

If you fail to appear for removal at the time and place ordered by the INS,
other than because of exceptional circumstances beyond your control (such as
serious illness of the alien or death of an immediate relative of the alien,
but not including less compelling circumstances), you will not be eligible
for the following forms of relief for a period of ten (10) years after the date
you were required to appear for removal:

    (1)  Voluntary departure as provided for in section 240B of the
         Immigration and Nationality Act;
    (2)  Cancellation of removal as provided for in section 240A of the
         Immigration and Nationality Act; and
    (3)  Adjustment of status or change of status as provided for in section
         245, 248 or 249 of the Immigration and Nationality Act.

                                    AGNELIS L. REESE
                                    Immigration Judge
                                    Date:  Sep 20, 1999

Appeal:  (WAIVED )(A/1/B)
Appeal Due By:  Oct 20, 1999

GOVERNMENT
EXHIBIT
2

JS

748 S. 5½ Ave.
MT. VERNON, NY 10550

NY 4C#
584-824-95
Exp. 5-17-00

1-7247/2260

DATE 12/03/9?

94

D R B A

$ 6.00

PAY TO THE ORDER OF _____

_____ Six dollars only _____ , DOLLARS

Cross County Federal
Savings Bank
175 Bedford Avenue, Brooklyn, NY 11211

MEMO  Payment - Spell

⑆226072472⑈ 057⑆720474⑉6⑈ 0094

GOVERNMENT
EXHIBIT
2

PENGAD-Bayonne, N. J.

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

**FILED**

JAN 1 6 2007

**U.S. Court of Appeals Fourth Circuit**

| | | | |
|---|---|---|---|
| In the Matter of a | * | | |
| Judicial Complaint | * | No. | 06-9064 |
| Under 28 U.S.C. § 351 | * | | |

## MEMORANDUM AND ORDER

This judicial complaint is brought pursuant to 28 U.S.C. § 351(a), which provides an administrative remedy for "conduct prejudicial to the effective and expeditious administration of the business of the courts" and for judicial inability to "discharge all the duties of office by reason of mental or physical disability."

Complainant has filed this complaint against the district judge who denied relief on complainant's claims against immigration officials for convicting him of immigration violations while failing to produce records establishing that he is a United States citizen by birth. Complainant alleges that the judge knew that complainant would not have been convicted if the defendants had been required to produce his birth certificate but did not require any response from the defendants.

The district judge's rulings in complainant's case cannot be challenged through a judicial complaint. Review of a judge's decisions is obtained through appeal, rather than through judicial misconduct proceedings. Allegations that are directly related to

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**
LEWIS F. POWELL, JR. UNITED STATES COURTHOUSE ANNEX
1100 EAST MAIN STREET, SUITE 501
RICHMOND, VIRGINIA 23219-3517
*WWW.CA4.USCOURTS.GOV*

PATRICIA S. CONNOR                                          TELEPHONE
CLERK                                                    (804) 916-2700

January 16, 2007

**CONFIDENTIAL**

Gbeke Michael Awala, 83074-054
CI Moshannon Valley
Correctional Institution
P.O. Box 2000
Philipsburg, PA 16866

**No. 06-9064, In the Matter of a Judicial Complaint Under 28 U.S.C. § 351**

Dear Mr. Awala:

Enclosed is a copy of an order dismissing your judicial complaint.

You have the right to petition the Fourth Circuit Judicial Council for review of this order.
If you choose to file a petition for review, your petition must be filed in the clerk's office **no later than February 15, 2007**. See Rule 6 of the *Rules of the Judicial Council of the Fourth Circuit Governing Complaints of Judicial Misconduct and Disability*.

Yours truly,

Patricia S. Connor / ler

Patricia S. Connor

PSC:ler
Enclosure

cc:    Honorable Benson Everett Legg
       Honorable J. Frederick Motz
       Mr. Samuel W. Phillips

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

OMB No. 1653-0028; Expires 08/31/08
# G-884, Request for the Return of Original Documents

## Instructions

Please read the instructions carefully. If you do not follow the instructions, U.S. Citizenship and Immigration Services (USCIS) may have to return your petition, which may delay final action. If you need more space to complete the answer, use a separate sheet(s) of paper. Write your name and Alien Registration Number (A#), if you have one, at the top of each sheet and indicate the number of the item relating to your answer.

**Use Form G-884 to request the return of original documents submitted to establish eligibility for an immigration or citizenship benefit.**

~~You need to give us:~~

- A completed and signed Form G-884; and
- Supporting documentation.

**To file this request, see Step 2 for specific instructions.**

### When Should I Use Form G-884?

You should use Form G-884 if you submitted original documents to U.S. Citizenship and Immigration Services (USCIS) with a petition, application or request and you are now seeking to have those documents returned to you.

Furnishing the information requested on the form and submitting the required supporting documents will assist USCIS to locate and return the documents requested.

### How Do I File Form G-884?

You only need to submit one Form G-884 if you are requesting multiple documents contained in a single USCIS file. However, if the requested documentation is in more than one USCIS file, you must submit separate requests. (Example: If you wish to obtain your mother's birth certificate and your parent's marriage certificate, both of which are in the USCIS file that pertains to her, submit one Form G-884 with your mother's information.)

Follow the steps below to complete your request:

**Step 1** - Fill out the Form G-884.

**Step 2** - Submit your G-884.

### Notice

USCIS wants to make sure that you are eligible to receive the requested documents. To do this we may ask for more evidence, interview you and/or conduct an inquiry. If you misrepresent facts or otherwise engage in fraud, USCIS will take appropriate action. This means we will not only deny your request, you may lose current and future immigration benefits. You may also face penalties, including criminal and/or civil prosecutions leading to fines and/or imprisonment.

### Step 1. Fill Out the Form G-884.

Use **black ink**. Type or print clearly using **capital** letters. If an item does not apply to you, write "N/A." If the answer is none, write "NONE."

This form is divided into **Parts 1** through **3**. The following information should help you fill out the form.

### Part 1. Information about you.
*(Person requesting original documents.)*

- **Family Name** (Last name) - Give your legal name. If you have two last names, include both and use a hypen (-) between the names, if appropriate.
- **Mailing Address** - Give your mailing address, if different from your home address.
- **Telephone Number** - Give a telephone number with the area code where you can be reached during the day.
- **A Number** - This is your Alien Registration Number (A #). If you do not have an A#, or do not know it, leave this blank.
- **Information, Documents or Records Requested** - Name or describe the original documents you wish returned. Be as specific as possible. (Example: marriage certificate of John Q. and Mary A. Public.)

### Part 2. Data for Identification of Personal Record.

Failure to provide the following information may make it very difficult for USCIS to locate the relating record.

- **Family Name** (Last name) - Give the subject's legal name. If there are two last names, include both and use a hyphen (-) between the names, if appropriate.
- **A Number** - This is the subject's Alien Registration Number (A Number). If the subject does not have an A # or you do not know it, leave this blank.
- **Other Names Used** - Include the subject's maiden name, nickname or alias.
- **Date of Birth** - Use eight numbers to show the date of birth. (Example: May 1, 1979, should be written 05/01/1979.)

Form G-884 Instructions (Rev 01/23/06)Y



Jeb Bush
Governor

M. Rony François, M.D., M.S.P.H., Ph.D.
Secretary of Health

November 2, 2006

Gbeke M. Awala
No. 82074-054
Moshannon Valley Correctional Center
P.O. Box 2000
Philipsburg, PA 16866

Dear Mr. Awala:

This is in reference to your correspondence addressed to Dr. Francois dated September 15, 2006.

The State Office of Vital Statistics has again conducted a diligent search of Florida's vital records under the names that were provided in your September 15, 2006 correspondence. The names searched in reference to your case are: Gbeke Michael Awala, and Gbekeloluwa Oritshemabomi Awala, date of birth: 05/17/1971, place of birth: Miami, Florida, father's name: Moses Hime Awala, and mother's name: Dorcas Callendar Brown. There were a number of variations used as well to broaden the search, such as years before and after 1971, an all county search, Brown spelled Browne, Callendar spelled Calendar, and Callender. No record of your birth is found under any of the criteria listed.

I regret there is nothing more that we can do to assist you in this regard.

Cordially,

Ken Jones
Deputy State Registrar
State Office of Vital Statistics

KJ/lk

## Langloh, Drew

**To:**   frank.perfinski@state.de.us

**Subject:** Gbeke Michael Awala

Dear Mr. Perfinski,

Thank you for looking into the matter of Mr. Awala's request.

Mr. Awala wrote me asking if I could provide him with the name of the individual that signed him into Foster Care. I have teh following information.

Parents:  Moses Awala, Dorcas Callendar Awala

Previous Address:   3601 N.W. 210 Terrace
                    Carroll City, Miami-Dade County
                    Miami Florida

He believes that he was signed into Foster Care around 1973.  Not exactly sure of the date.

Mr Awala's Current info:

Gbeke Michael Awala
Salem County
25 Cemetery Road
Woodstown, NJ  08098

I understand that you will investigate the information and communicate directly with Mr. Awala.  Thank you for what ever help you can provide to Mr. Awala.

Drew Langloh
President
United Way of Delaware
25 North Orange Street
Wilmington, DE  19801

Phone: 302.573.3788
Fax:    302.573.2714
mail:  DLangloh@uwde.org

8

12

FILED

JAN 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Gbeke Michael Awala,                    )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )    Civil Action No.    07 0072
                                        )
3rd Circuit Judge Kent A. Jordan *et al.*,  )
                                        )
            Defendants.                 )

## ORDER

The Court will allow the above-captioned action to be provisionally filed. Before the
Court will consider the application to proceed *in forma pauperis* and the complaint, plaintiff
must provide the following information to the Court.

In accordance with 28 U.S.C. § 1915, plaintiff shall provide the Court with a certified
copy of the plaintiff's trust fund account statement (or institutional equivalent) for the six-
month period immediately preceding the filing of this complaint, obtained from the appropriate
official of each prison at which plaintiff is or was confined.

The Court hereby advises plaintiff that federal law requires a plaintiff in a civil action
to pay a filing fee of $350.00. After submission of the trust fund information, the Court will
determine plaintiff's ability to pay the entire amount in one payment. If the Court determines
that plaintiff does not have sufficient funds to pay the filing fee at one time, the Court will
assess an initial partial filing fee. After payment of the initial partial filing fee, monthly
payments of 20 percent of the deposits made to the plaintiff's trust fund account during the
preceding month will be forwarded to the clerk of the Court each time the account balance

exceeds $10.00. Payments will continue until the filing fee is paid. Accordingly, it is by the

Court this ____ day of January 2007,

ORDERED that within **thirty (30) days** from the filing date of this Order, plaintiff

shall provide the above-requested information. Failure to comply with this Order will result in

dismissal of this action.

SO ORDERED.

United States District Judge

# MEMORANDUM

**TO:**       Honorable Kent A. Jordan

**FROM:**   Nancy D. Rebeschini

**DATE:**    June 8, 2006

**RE:**       Civ. No. 06-361-KAJ, Awala v. Grand Jury

Three strikes order for Mr. Awala.

Thank you.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## No. 06-4811

In Re: Gbeke Michael Awala

To: Clerk

1) Letter from Petitioner construed as Motion to be Relieved of the Filing
   Requirements of 3rd Cir. LAR 22.5

---

The foregoing Motion, along with the documents filed to date in this matter, is
referred to a motions panel of this Court. This panel will determine whether the
incomplete application under §2244(b) is sufficiently complete under Third Circuit LAR
22.5. The state may file a response within seven (7) days of the date of this Order.

For the Court,

/s/ Marcia M. Waldron
Clerk

Dated: January 19, 2007
nmb/cc:   Mr. Gbeke Michael Awala
          Office of the U.S. Attorney

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

FILED
January 17, 2007.

No. 06-7423
1:06-cv-01052-JFM

GBEKE MICHAEL AWALA

Plaintiff - Appellant

v.

ALBERTO R. GONZALES, Attorney General; EDWARD C. DURANT,
Attorney; THOMAS WARD HUSSEY; LINDA SUSAN WENDTLAND,
Attorney; DEPARTMENT OF HOMELAND SECURITY, Border
Protection, Immigration, and Customs Enforcement, all
defendants in their individual and official capacities

Defendants - Appellees

---------
**O R D E R**
---------

Appellant has filed a motion to recall the mandate.

The Court denies appellant's motion.

For the Court - By Direction

/s/  Patricia S. Connor

_____
CLERK

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 06-4164

Awala

vs.

US Dept State Intl, et al.

Gbeke Michael Awala, Appellant

(Delaware District Civil No. 05-cv-00368)

O R D E R

Pursuant to Rule 3(a) of the Federal Rules of Appellate Procedure and Third Circuit LAR 3.3 and Misc. 107.1(a),

It is O R D E R E D that the above-entitled case is hereby dismissed for failure to timely prosecute,

It is FURTHER O R D E R E D that a certified copy of this order be issued forthwith as the mandate.

For the Court,

Marcia M. Waldron

Clerk

Date: October 17, 2006

cc:
Mr. Gbeke Michael Awala
Ilana H. Eisenstein, Esq.

U.S. Department of Justice

## Administrative Detention Order

Federal Bureau of Prisons

| | MVCC | 10-22-06 - 2015 |
|---|---|---|
| | Institution | Date/Time |

FROM:            LT. S. LEEMHUIS
                 Name and Title

SUBJECT:    Placement of inmate: AWALA, GBEKE    Reg No. 82074-054    In Administrative Detention.
                                    Inmate Name                         BOP #

☐ (a)    Is pending a hearing for a violation of Bureau regulations;
☐ (b)    Is pending investigation of a violation of Bureau regulations;
☐ (c)    Is pending investigation or trial for a criminal act;
☐ (d)    Is to be admitted to Administrative Detention

☐        (1)    Since the inmate has requested admission for protection;

                 I hereby request placement in Administrative Detention for my own protection.

                 Inmate Signature/Register No: _____

                 Staff Witness Printed Name/Signature: _____

☒        (2)    Since a serious threat exists to individual's safety as perceived by staff, although person has not requested admission: referral
                 of the necessary information will be forwarded to the UDC/DHO for appropriate hearing.

☐ (e)    Is pending transfer or is in holdover status during transfer;
☐ (f)    Is pending classification: or
☐ (g)    Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative Detention by the Warden's designee.

It is this officer's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat
to life, property, self, staff, other inmates, or to the security or orderly running of the institution because*

INMATE AWALA WAS ASSAULTED IN D UNIT6 IS ONDER
THREAT OF FURTHER ASSAULT, TREATED AT MEDICAL,
_____
_____

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this order on (date/ time)
                                                                                    10-22-06 -2130

Staff Witness Signature/ Printed Name: Leemh / S. LEEMHUS LT-    Date: 10-22-06 SON

In the case of DHO action, reference to that order is sufficient, in other cases; the officer will make an independent review and decision, which is documented here.
cc:    Inmate Concerned (not necessary if placement is a result of holdover status
       Captain
       Unit Manager
       Operations Supervisor — Administrative Detention Unit
       Central File

SEC-001  1/2006  Administrative Detention Order

U.S. Department of Justice

# Administrative Detention Order

**Federal Bureau of Prisons**

| | MVCC | 01-05-2007/ 11 20 |
|---|---|---|
| | Institution | Date/Time |

FROM:     Lt R. Phillips
_____
          Name and Title

SUBJECT:  Placement of inmate: Awala, Gbeke     Reg No.   82074-054     In Administrative Detention.
          _____                 _____
          Inmate Name                                      BOP #

☐ (a)  Is pending a hearing for a violation of Bureau regulations;
☐ (b)  Is pending investigation of a violation of Bureau regulations;
☐ (c)  Is pending investigation or trial for a criminal act;
☐ (d)  Is to be admitted to Administrative Detention

☒ (1)  Since the inmate has requested admission for protection;

       I hereby request placement in Administrative Detention for my own protection.

       Inmate Signature/Register No: _____

       Staff Witness Printed Name/Signature: _____

☐ (2)  Since a serious threat exists to individual's safety as perceived by staff, although person has not requested admission: referral of the necessary information will be forwarded to the UDC/DHO for appropriate hearing.

☐ (e)  Is pending transfer or is in holdover status during transfer;
☐ (f)  Is pending classification: or
☐ (g)  Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative Detention by the Warden's designee.

It is this officer's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because*
Protective Custody 1-05-2007

_____
_____
_____
_____

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this order on (date/ time)

Staff Witness Signature/ Printed Name: _____ A. Leskovansky Date: 1-5-07   1153

In the case of DHO action, reference to that order is sufficient, in other cases; the officer will make an independent review and decision, which is documented here.
cc:   Inmate Concerned (not necessary if placement is a result of holdover status
      Captain
      Unit Manager
      Operations Supervisor — Administrative Detention Unit
      Central File

SEC-001   1/2006   Administrative Detention Order

U. S. Department of Homeland Security

Immigration and Customs Enforcement .                    **Immigration Detainer - Notice of Action**

| | |
|---|---|
| | BOP # 82 74-054 |
| | File No. A 74 190 250- |
| | Date     9/28/2006 |

| To: (Name and title of institution) | From: (INS office address) |
|---|---|
| WARDEN | U.S. DHS/ICE |
| MOSHANNON VALLEY CORR. CENTER | ALLENWOOD @ LSCI |
| 555 CORNELL DRIVE | P. O. BOX 209 |
| PHILIPSBURG PENNSYLVANIA 16866 | WHITE DEER, PA  17887 |

Name of alien: __AWALA, Gbeke__ _____ Projected Release _____

Date of birth: ___5/17/1971___ Nationality: _Nigeria___ Sex: __M___

**You are advised that the action noted below has been taken by the Immigration and Customs Enforcement concerning the above-named inmate of your institution:**

☒  Investigation has been initiated to determine whether this person is subject to removal from the United
    States.

☐  A Notice to Appear or other charging documents initiating removal proceedings, a copy of which is
    attached, was served on _____.
                              (Date)

☐  A warrant of arrest in removal proceedings, a copy of which is attached, was served on

.
                                                                                        (Date)

☐  Deportation or removal from the United States has been ordered.

**It is requested that you:**

Please accept this notice as a detainer. This is for notification purposes only and does not limit your
discretion in any decision affecting the offender's classification, work and quarters assignments, or other
treatment which he or she would otherwise receive.

☒  Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours
(excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody
of the alien. You may notify ICE by calling _570-547-6903_ during business hours or _____ _____
after hours in an emergency.

☒  Please complete and sign the bottom block of the duplicate of this form and return it to this office.  ☐
A self-addressed stamped envelope is enclosed for your convenience.  ☐ Please return a signed copy via
facsimile to _____.
             (Area code and facsimile number)
Return **fax** to the attention of ___ S. Montgomery _____, at ___ 814 ∴ 768-2687 ____    .

_____
                    (Name of INS officer handling cases)            (Area code and phone number)

☒  Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.
☒  Notify this office in the event of the inmate's death or transfer to another institution.
☐  Please cancel the detainer previously placed by this Service on _____ _____.

| | |
|---|---|
| (Signature of INS official) | IEA |
|  | (Title of INS official) |

Receipt acknowledged:

Date of latest conviction: _____ Latest conviction charge: _____          STEPHEN C. MONTGOMERY
Estimated release date: _____                                                       I.E.A.
                                                                                               DHS/ICE ALLENWOOD PA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GBEKE MICHAEL AWALA            :            CIVIL ACTION

          v.                                 :

                              FILED   'NOV -| 2 2005
DISTRICT DIRECTOR, et al.       :            NO. 05 - 5471

## ORDER

**AND NOW,** this      2nd   day of  November  2005, it appearing that

petitioner, who is being held by the United States government pending his deportation,

has filed a petition in this court seeking Habeas Corpus relief pursuant to 28 U.S.C.

§2241, in which he seeks to challenge the legality of his pending deportation, and

it further appearing that upon consideration of *the Emergency Supplemental*

*Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief,* labeled

United States Public Law 109-13, which became effective with the President's

signature on May 11, 2005, and which, inter alia, amended the Judicial Review

provisions of Section 242 of the Immigration and Nationality Act, 8 U.S.C. §1252, to

provide that United States Courts of Appeals "shall-be-the-sole and exclusive means for

judicial review of an order of removal entered or issued under any provision of" the

immigration and Nationality Act (United States Public Law 109-13, Division-B,

§106(a)(1)(B)), it is hereby

ORDERED that petitioner is granted ***provisional*** leave to proceed in

forma pauperis ***for the purpose of this Order only***, and, it is further

ENTERED

NOV - 2 2005

ORDERED that the Clerk of the United States District Court for the Eastern District of Pennsylvania shall **TRANSFER** this matter to the United States Court of Appeals for the Third Judicial Circuit, and, it is further

ORDERED that the United States and all of its various departments, agencies, bureaus, agents, officers and employees, including the respondent or respondents, are **ENJOINED** from deporting petitioner from the United States for a period of **either**: thirty (30) days; **or**, until the physical transfer of the habeas corpus petition to the Court of Appeals takes place (whichever occurs first), and, it is further

ORDERED that the Clerk of the United States District Court for the Eastern District of Pennsylvania shall mark this matter as **CLOSED** in this court for all purposes, including statistics.

HARVEY BARTLE, III, J.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

GBEKE M. AWALA                    CIVIL ACTION NO. 3:07CV160    SEC P

VERSUS                            JUDGE JAMES

CIRCUIT JUDGE BARKSDALE, ET AL    MAGISTRATE JUDGE HAYES

MEMORANDUM ORDER

Before the court is a civil rights suit filed on 1/24/07. Upon review of the record, the Court finds

that the plaintiff's suit is not in proper form for the following reason(s):

Plaintiff has failed to submit the complaint on approved forms. NOTE: PLEADINGS
MUST BE ORIGINALS AND NOT COPIES OF PLEADINGS. **Plaintiff must submit
the complaint on approved forms that are legibly handwritten or typewritten.**

Plaintiff has failed to submit either the $350.00 to file his complaint or a completed
application to proceed *in forma pauperis*. **Plaintiff must either send $350.00 or a
completed *in forma pauperis* application in order to proceed.**

In accordance with the above,

**IT IS HEREBY ORDERED** that plaintiff, within thirty (30) days of the date of this order,

amend the pleadings by submitting the information indicated above to the following address: **Clerk of**

**Court, 300 Fannin Street, Suite 1167, Shreveport, LA 71101-3083.**

**FAILURE TO AMEND THE PLEADINGS AS INDICATED ABOVE WILL RESULT IN
THE PLEADINGS IN THE INSTANT COMPLAINT BEING STRICKEN FROM THE RECORD
AND RETURNED TO THE PLAINTIFF.**

THUS DONE January 31, 2007

ROBERT H. SHEMWELL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:w/Enclosures to plaintiff:      Civil Rights Complaint form & IFP application

# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

October 26, 2006

Gbeke Awala (82074-054)
Moshannon Valley CI
MVCC B-P6
PO BOX 2000
PHILIPSBURG PA 16866-0798

**Appeal Number: 06-14017-A**
Case Style: Gbeke Michael Awala v. Kenneth Jones
District Court Number: 06-20630 CV-MGC ()

The following action has been taken in the referenced case:

The enclosed order has been ENTERED.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Deborah Owens (404) 335-6180

MOT-2 (03-2006)

# *United States Court of Appeals*

FIFTH CIRCUIT
OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

TEMP. U.S.P.S. ADDRESS:    P.O. BOX 610160
                          HOUSTON, TX 77208
COMMERCIAL DELIVERY: ROOM 1216, 515 RUSK ST.
                          HOUSTON, TX 77002

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

November 18, 2005

Mr Alberto R Gonzales
US Department of Justice
Suite 4400
950 Pennsylvania Avenue NW
Washington, DC 20530

Mr Thomas Ward Hussey
Director
US Department of Justice
Office of Immigration Litigation
PO Box 878
Ben Franklin Station
Washington, DC 20044

> No. 05-61060 Awala v. Gonzales
> Agency No. A74 190 250

We received an order from the United States Court of Appeals for
the United States District Court, Eastern District of
Pennsylvania (Philadelphia) transferring their case number 2:05-
CV-5471 to us. We have assigned the new case number shown above.
Please refer to this docket number on all correspondence
pertaining to this case.

See FED. R. APP. P. 16 and 17 as to the composition and time for
the filing of the record.

All counsel desiring to appear in this case must sign and return
a "Form for Appearance of Counsel", naming each party you
represent, within 15 days from this date as required by FED. R.
APP. P. 12(b) and 5™ CIR. R. 46. You may print or download the
form from the Fifth Circuit's web site, www.ca5.uscourts.gov.
Failure to send in the form indicates that you do not desire to
appear and your name will be removed from our docket. Also, we
cannot release official records on appeal unless you have entered
an appearance.

Motions pending with the United States District Court, Eastern
District of Pennsylvania (Philadelphia) will not be considered by
this court. All motions must be refiled with this court in order
for a ruling to be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GBEKE MICHAEL AWALA,                )
                    Plaintiff       )
                                    )
        vs.                         )       Civil Action No. 06-1456
                                    )       Judge Joy Flowers Conti/
R. STEPANOVICH, Program Manager;    )       Magistrate Judge Amy Reynolds Hay
G. MITAL, Librarian; MAJOR NEWMAN,  )
Security; D. CRIBBS, Case Manager;  )
K. WILKINSON, Grievance Coordinator,)
                    Defendants      )

## ORDER

AND NOW, this 25th day of January, 2007, IT IS HEREBY ORDERED that the

Report and Recommendation (doc. 4) issued on January 17, 2007 is VACATED.

/s/ *Amy Reynolds Hay*

United States Magistrate Judge

cc:    Gbeke Michael Awala
       82074-054
       M.V.C.C.
       P.O. Box 2000
       Philipsburg, PA 16866

# UNITED STATES OF AMERICA

## DEPARTMENT OF HOMELAND SECURITY

### IMMIGRATION AND CUSTOMS ENFORCEMENT

January 12, 2006

## **CERTIFICATION**

BY VIRTUE of the authority vested in the Secretary of Homeland Security by Section 103 of the Immigration and Nationality Act, as amended, and 8 CFR 103.7(d), delegated to the Assistant Secretary for the Immigration and Customs Enforcement (ICE) by the Department of Homeland Security Delegation Order No. 7030 and which has been delegated to me by the Assistant Secretary, ICE, pursuant to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement Delegation number: 0001, subsection, (2)(B)(2)(c),

I HEREBY CERTIFY, that the annexed documents are originals, or copies thereof, from the records relating to the immigration matters within the control of the Immigration and Customs Enforcement, pertaining to File No. A074190250 of which the Secretary of Homeland Security is the legal Custodian by virtue of Section 103 of the Immigration and Nationality Act, as amended.

John P. Kelleghan
Acting Special Agent in Charge

THOMAS LISZKIEWICZ
Curriculum Vitae

## EXPERIENCE:

**United States Department of Homeland Security**
**United States Immigration and Customs Enforcement**
**Forensic Document Laboratory, McLean VA.**
*American Society of Crime Laboratory Directors Accredited Laboratory*

Senior Fingerprint Specialist (March 2003 – Present)

Using a variety of techniques, accept evidence worldwide requiring the development and preservation of latent prints. Conduct examinations and comparisons of inked and latent prints, complete computer searches of unknown prints through multiple A.F.I.S. system. Prepare detailed reports concerning my findings and provide testimony at judicial proceedings concerning the results. Services are provided to federal, state and local law enforcement agencies. Provide training and support for agents, visitor demonstrations and represent the department at seminars and conferences.

### Wilmington Police Department, Wilmington, DE.

Forensic Services Supervisor (November 1995 – March 2003)

Commander of unit staffed by eleven sworn officers and one civilian, designated to investigate all matters relating to physical evidence. Comprised of Crime Scene Investigators, Fingerprint, Photographic and Ballistic Laboratory personnel, providing service to this department, federal, state and local agencies.

### Wilmington Police Department

Patrol Division Supervisor    (February 1992 – November 1995)

Responsible for police services provided by a squad of ten patrol officers. In absence of the Watch Commander, responsible for all street police activity, management of the police jail and public safety building. Served as Acting Watch Commander for more then six months due to retirements and department reorganization.

### Wilmington Police Department

Fingerprint Examiner (June 1989 – February 1992)

Primary fingerprint examiner responsible for the operation of print laboratory and northern AFIS site in the State of Delaware.

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-61060

GBEKE MICHAEL AWALA

Petitioner

v.

ALBERTO R GONZALES, U S ATTORNEY GENERAL

Respondent

U. S. COURT OF APPEALS
**F I L E D**

MAY 0 3 2006

CHARLES R. FULBRUGE III
CLERK

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

ON PETITION FOR REHEARING EN BANC

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:

( ✓ )   Treating the Petition for Rehearing En Banc as a Motion for Reconsideration, the Motion for Reconsideration is DENIED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

(    )   Treating the Petition for Rehearing En Banc as a Motion for Reconsideration, the motion for Reconsideration is DENIED. The court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

ENTERED FOR THE COURT:

United States Circuit Judge

REHG-6a

Case No. 06-4068

GBEKE AWALA,

       Appellant

  v.

KENT A. JORDAN; PETER T. DALLEO;
BETH MOSKOW-SCHNOLL

Case No. 07-1314

GBEKE MICHAEL AWALA,

Appellant

v.

MARTIN P. DURKIN, U.S. Probation Officer;
JACK R. MCDONOUGH, Chief U.S. Probation Officer;
U.S. MARSHALL DANNY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Crim. Action No. 04-90-KAJ |
| | : | |
| GBEKE AWALA, | : | |
| | : | |
| Defendant. | : | |

## SUBSTITUTION OF COUNSEL

Please withdraw the appearance of Assistant United States Attorney Beth Moskow-Schnoll

and enter the appearance of Assistant United States Attorney Ilana H. Eisenstein as counsel of record

for the government in the above-captioned case.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By:   /s/Ilana H. Eisenstein
     Ilana H. Eisenstein
     Assistant United States Attorney

Dated: February 1, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Crim. Action No. 04-90-KAJ |
| | : | |
| GBEKE AWALA, | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I, Jennifer Brown, an employee in the Office of the United States Attorney, hereby certify under penalty of perjury that on February 1, 2007, I electronically filed:

## SUBSTITUTION OF COUNSEL

with the Clerk of Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF, which will send notification of such filing(s) to the following:

Samuel C. Stretton, Esquire
301 South High Street
West Chester, Pa. 19381-3231

two copies delivered via US Mail to:

Gbeke Awala
Reg # 82074-054
Moshannon Valley Correctional Facility
P.O. Box 2000
Philipsburg, PA 16866

/s/ Jennifer Brown
Jennifer Brown

## Notices
1:04-cr-00090-KAJ USA v. Awala
APPEAL, CLOSED

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Eisenstein, Ilana on 2/1/2007 at 3:15 PM EST and filed on 2/1/2007

| | |
|---|---|
| **Case Name:** | USA v. Awala |
| **Case Number:** | 1:04-cr-90 |
| **Filer:** | USA |
| **Document Number:** | 256 |

**Docket Text:**
NOTICE OF SUBSTITUTION OF COUNSEL: Entry of appearance of attorney Ilana H. Eisenstein. Attorney Beth Moskow-Schnoll terminated in case as to Gbeke Awala. (Eisenstein, Ilana)

### 1:04-cr-90-1 Notice has been electronically mailed to:

Ilana H. Eisenstein    ilana.eisenstein@usdoj.gov, jennifer.brown@usdoj.gov, usade.ecf@usdoj.gov

Samuel C. Stretton    s.stretton@verizon.net

### 1:04-cr-90-1 Notice has been delivered by other means to:

Gbeke Awala
Reg# 82074-054
Moshannon Valley Correctional Facility
P.O. Box 2000
Philipsburg, PA 16866

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=2/1/2007] [FileNumber=337195-0]
[a137b100ddc3173d97da4026d1c667e063b070edc0cca835b01cfe4b5cc6ea03f4c0e
7bae4d5c49f2754b37b4ff8030adaacf2b50baba5994e6997ff04c62c9b]]

U. S. Department of Justice

Immigration and Naturalization Service

## Notice of Intent/Decision to Reinstate Prior Order

File No. __A074 190 250__

**Case No: VPI0408000086**

Date: __August 12, 2004__

Name: __Gbeke Awala__

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR241.8, you are hereby notified that the Attorney General intends to reinstate the order of __Deportation__ _____ entered against you. This intent is based on
(Deportation / exclusion / removal)

the following determinations:

1. You are an alien subject to a prior order of deportation / ~~exclusion~~ / ~~removal~~ entered on __September 21, 1999__ at
(Date)

__Okdale, Luisiana__ .
(Location)

2. You have been identified as an alien who:

☒ was removed on __November 13, 1999__ pursuant to an order of deportation / ~~exclusion~~ / ~~removal~~.
(Date)

☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
(Date)

after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about __July 18, 2004__ at or near __Rainbow Bridge, NY__ .
(Date)                                (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a writen or oral statement to an immigration officer. You do not have a right to a hearing before an immigration judge.

*The facts that formed the basic of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* __ENGLISH__ _____ *language.*

__AXEL GONZALEZ FIGUEROA__
(Printed or typed name of official)

_____ (Signature of officer)

**SPECIAL AGENT**
(Title of officer)

---

### Acknowledgment and Response

I ☐ do ☐ do not wish to make a statement contesting this determination.

REFUTED to sign

_____
(Date)

_____
(Signature of Alien)

---

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act

_____
(Date)

_____
(Location)

_____
(Signature of authorized deciding INS official)

__LINDA J. VALENTINE__
(Printed or typed name of official)

**GROUP SUPERVISOR**
(Title)

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

ATTORNEY GENERAL,

      Respondent,          :

                      :

      V.                 :    Civil No._____

                      :

GBEKE MICHAEL AWALA,

                      :

      Petitioner.

                      ;

## MOTION FOR REVIEW OF AGENCY ACTION

AND NOW COMES the Petitioner appearing **in pro s**e and respectfully
moves the Honorable 3rd Circuit Court pursuant to **LAR 15.0** to re-
view the Attorney Generals Action, alleging that the Government
seeks to strip Gbeke Michael Awala of his United States Citizens-
ship at birth.  The District Court has not used every detail ins-
trumental to a consonant discretion. In support thereof avers:

    (a)  The Petitioner requires the court to determine whether
an administrative agency can create a limitations period affecting
the ability of an Article III court to review agency action, absent
an express delegation of congressional authority; and

    (b)  On January 1, 2004, the petitioner Gbeke Michael Awala
applied to the U.S. Citizenship and Immigration Services to become
a naturalized citizen of the United States and establishing a co-
llection of material including previous pictures or photographs
produced throught the Baltimore Airport files, to hold the evidence
forever in secret is understandable; and

    (c)  The Petitioner asserts U.S. Citizenship and Immigration

have accomplished its dissention without protecting petitioners rights in a manner consonant with proper discretion, by assigning the matter to this court, Congress specifically granted Jurisdictional authority to the Federal Courts to review the denial of an application for naturalization; and

(d) The petitioner is afraid of been set apart because of the agency judgment and the United States District Court in Delaware's decision without any opinion for the Nationality issues, since the court failed to bow down and honor the testimony presented on the plateau of the reentry case; and

(e) The Petitioner argues that a de novo review can be heard in this court because it is axiomatic that the above Agency through its attorney general has created regulations which are beyond the scope of its delegated authority, and the decision have held the petitioner guilty within the applicable laws and not set before the agency as affording an American Child his right to posses of his land and the land of his ancestors; and

(g) The Petitioner alleges that this Court should adopt a reasoning with substantial deference under the doctrine anounced in the following authorities.

## MEMORANDUM OF LAW

The Standard for review in this Case has not been setled in that the petitioner is seeking a Naturalization under N-400 application and consequently a declaratory judgment that Gbeke Michael Awala was a U.S. Citizen at birth, and deliver him from the house of bondage.

In Breyer v. Ashcroft, 350 F.3d 327 (2003)( The government seeks to strip Johann Breyer of his United States citizenship for serving in the Waffen SS during World War II. This Court mentioned and raised a question whether Breyer, who joined at age seventeen, was a voluntary

-2-

member of the Nazi military Unit. The District Court found that he was not, and consequently issued a declaratory judgment that Breyer was a United States citizen). Affirming were **Honorable SCIRICA, Chief Judge, RENDELL and AMBRO, Circuit Judges;**

In the Instant case, the facts ones in the oracle within the District Court with the fullness of "Best Evidence," trust under the U.S. Border Protection under the Shadow of the Attorney General abundantly satisfied a request that this Court conduct a hearing de novo on the petitioners application submitted today, nothwithstanding, any equitable tolling, because, **Fourteenth Amendment provides that** "all persons born or naturalized in the United States...are citizen of the United States." U.S. Const. amend XIV §1."

Petitioner contends that the District court erred when it failed to consider his state of mind in returning into the United States of America, the Border Agents and the U.S. Citizenship and immigration Services also erred in spirit and in truth and this complaint should lean on at least one relevant doctrine, that Petitioner retains his U.S. Citizenship by birth, this resonable presumption should be ordered rebutted by showing, by preponderance of evidence. See Afroyim v. Rusk, 387 U.S. 253, 262, 18 L. Ed 2d 757, 87 S. Ct 1660(1967). As such, United States citizenship obtained either by birth or legitimate naturalization cannot be lost unless the citizen voluntarily renounces his citizenship. Vance v. Terrazas, 444 U.S. 252, 261, 62 L. Ed 461, 100 S. Ct 540 (1980). See also Nagahi v. INS, 219 F.3d 1166(2000)(The case required the court to consider and determine whether an administrative agency can create a limitations period affecting the ability of an article III court to review agency action, absence an express delegation of congressional authority, this court held that it cannot, reverse, and remanded the case).

Here, petitioner should be treated similarly to prohibit enforcem-

ent of an order to reinstate of removal until petitioner accomplished
his U.S. Citizenship claim in manner consonant with proper discretion.

In Manjiyani v. Ascroft, (2003), 343 F.3d 1018( It was held that
Supplemental evidence offered by alien on appea, consisting of her
complete application to adjust status, was adequate to reopen pro-
ceedings before Board of Immigration Appeals (BIA) to consider her
evidence and to determine , in first instance, whether to grant pe-
tition to reopen underlying deportation proceedings in light of com-
plete record). Here, Petitioner asserts that he has broken down the
foundation in a split open strenght to obtain his U.S. Citizenship
by birth , the conduct of the Respondents Agencies, after they coll-
ected petitioners fruits of worthy documents, they have intimidated
and accuse him falsely, thus, this Court should reason worthy of a
means to loose the petitioners of his bounds.   Indeed Acts of Admin-
istrative assistance are deemed acts of head of department. See Alvord
v. United States,(1877) 95 US 356, 5 Otto 356, 24 L Ed 414. Thus, the
Attorney General is the proper respondent.

## CONCLUSION

The petitioner concludes that this court is the jetty or Go-bet-
ween mover between parties in this matter with great ordeal the peti
tioner called the court to reason and grant a hearing on this matter,
and the petitioner respectfully request that the court grant the inst-
ant motion and issue an order and preliminary injunction.   The peti-
tioner has goog moral character which is not a requirement to be reco-
gnize as an American Citizen by birth.

Dated  8/24/ , 2006.

Respectfully submitted,

Gbeke Michael Awala

-4-

S.L.t

A-1

1            IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3                        - - -

     UNITED STATES OF AMERICA,
4                              :   CRIMINAL ACTION
                 Plaintiff,    :
5                              :
          v.                   :
6                              :
     GBEKE AWALA,              :
7                              :
                 Defendant.        NO. 04-90 (KAJ)
8                        - - -

9                        Wilmington, Delaware
                 Tuesday, January 17, 2006 at 9:20 a.m.
10                   JURY TRIAL - VOLUME A

11                        - - -

12   BEFORE:  HONORABLE **KENT A. JORDAN**, U.S.D.C.J., and a Jury

13                        - - -

     APPEARANCES:
14

15            BETH MOSKOW-SCHNOLL, ESQ.
              Assistant United States Attorney
16
                 Counsel for Government
17

18            GBEKE AWALA, Pro Se

19                 Appearing on his own behalf

20
              LAW OFFICES
21            BY:  SAMUEL C. STRETTON, ESQ.
                   (West Chester, Pennsylvania)
22
                 Standby Counsel for Defendant Gbeke Awala
23

24

25

                      A - 88

1    about to be deported and it explains to them, it told him

2    that he was never, ever permitted to return to this country

3    unless he received consent from the Attorney General before

4    he reapplied -- in order to reapply for admission to this

5    country.  Again, he was told that.  He signed the form.  He

6    was told you cannot come back here, ever unless you reapply

7    for admission before you leave the country you are coming

8    from, in his case, Nigeria or wherever he was leaving from.

9    He was not allowed to come back unless he got that consent.

10              You will see he did not get that concent.  There

11   is no record of any such consent being applied for or being

12   given to the defendant to reenter this country.

13              So that is the Government's proof in this case.

14              After you hear all that evidence and you get to

15   see all those documents firsthand, I'll get to come back

16   and talk to you in my closing, in my closing argument.  At

17   that time, I will ask to you render the only verdict that

18   comports with the evidence and that is a verdict of guilty.

19   Thank you very much.

20              THE COURT:  Thank you.

21              Mr. Awala.

22              THE DEFENDANT:  Ladies and gentlemen, thank you

23   for coming.  It is wonderful to be here.  And I'm happy that

24   I have the American life and the American people to hear the

25   other side of the story.

A - 1 2 16

1    The Government, of course, has led to you what

2    she believes without looking at what we call immeasurable

3    circumstances. Now, I just have the perception from the

4    bible because I have no other means to prove my innocence

5    but to just read some things.

6    Which one shall have the friend? And to go to

7    him at midnight and say to him, friend, lend me three loafs,

8    for a friend of mine has come to me on his journey and have

9    none to set for him and will ask that from within and say do

10   not trouble me, the door is now shut.

11   Okay. Unfortunately for me, without knowing,

12   without having a full memory, I was born in this country,

13   born in Miami, Florida, Dade County. At the age seven,

14   taken to Africa. My parents got divorced. They had their

15   own situations. One, I live in Chicago. At age five, my

16   father was killed, gunpoint, because he was involved in

17   heroin smuggling from Nigeria down to this country. My

18   mother originally, according to documents discovered, I'm

19   not supposed to talk about those documents, but, of course,

20   when we speak of circumstantial situations, there is

21   something called direct and circumstantial or something

22   that would tell you that there has to be something else to

23   support that fact.

24   Now, of course, I come from Mexico. I didn't

25   come from Canada. I didn't come from any neighboring

1    country within this region.  I came from Africa.  And

2    obviously I couldn't have swam the Atlantic ocean.  And

3    obviously if I had actually came in the way I came in, there

4    has to be some type of inspection.  And that inspection in

5    this day of 9/11 is terrible and it was terrible --

6                MS. MOSKOW-SCHNOLL:  Objection.

7                THE DEFENDANT:  -- ladies and gentlemen.

8                THE COURT:  Just a moment.

9                Yes.

10               MS. MOSKOW-SCHNOLL:  I believe he is giving

11   argument, not an opening statement.

12               THE COURT:  All right.  Mr. Awala, please stick

13   with the evidence you anticipate giving in light of earlier

14   court rulings.

15               THE DEFENDANT:  So, ladies and gentlemen, the

16   Government is to prove beyond a reasonable doubt that I did

17   in fact reenter the United States without the permission

18   or whether I was actually compelled to reenter the United

19   States without the permission or whether I was a citizen of

20   the United States, must be mandatorily required to knock on

21   the door before they return to their own country.  Just like

22   if we have a child and it goes out and it does whatever it

23   wants to do.  You tell them don't come back no more but when

24   they return back to society or back to your door, if he

25   knocks that door, he is your son, you have to open your

A-12 /

1    door.

2          So my point of view is I'm defending myself as a
3    U.S. citizen.  I believe I'm an American citizen.  I didn't
4    know all this information.  I have alien records which if
5    I'm going to take you to some of those records on the alien
6    records, you will see where all my kindergarten areas were:
7    I don't know.  I don't know.  Your mother is dead.  Your
8    father, I don't know.  Some part of it I say I give some of
9    the information.  I never knew this information.  I was born
10   in this country.  Jackson Memorial Hospital, circumcized, on
11   and on of that.  I came back to this country.  I came back
12   January 1st.  I didn't know all this information.

13         I was happy to come back, and I know today is
14   the day of Benjamin Franklin, yesterday was Martin Luther
15   King, and I know those two individuals.  I'm going to use
16   their spirit because at this time, if I should cry "I need
17   my mother" and my mother is in this land, and I know that
18   God is going to use somebody in here to see the truth and to
19   evaluate the facts, to put it together.

20         I know that no one will be accused of reentering
21   the United States without a permission and go to trial.  It
22   is absolutely insane.  But I know, I stand on the truth.  I
23   am an American citizen.  I am your federal fellow American
24   and please do not cast me out.  Thank you very much.

25         THE COURT:  All right.  Thank you.

A - 127

A-120

Gonzalez - cross

1    A.    No.

2              MS. MOSKOW-SCHNOLL:    Thank you.    That's all I

3    have, Your Honor.

4              THE COURT:    All right.    Thank you.    Mr. Awala,

5    now it's your opportunity to cross-examine.

6              THE DEFENDANT:    Ladies and gentlemen, I'm here

7    to cross-examine.

8              THE COURT:    Yes.

9                    CROSS-EXAMINATION

10   BY THE DEFENDANT.

11   Q.    State your name for the record.

12             THE COURT:    That's right.    You don't want to

13   address them at all.    Just ask your questions directly to

14   the agent.

15   A.    I'm Special Agent Axel Gonzalez.    Special Agent.

16   Q.    Axel Gonzalez.    And you work for?

17   A.    Immigration and Naturalization Service, now called

18   Immigration Customs Enforcement.

19   Q.    For how long?

20   A.    For the agency, for 13 years.

21   Q.    Have you ever had any opportunity to approve or

22   garner evidence relating to naturalization or alien

23   registration?

24   A.    Have I -- I'm sorry.    Can you repeat the question?

25   Q.    Have you particularly worked on any application of

A-121

Gonzalez - cross

1   any applicant regarding naturalization or alien

2   registration?  Have you had that opportunity to be the

3   person to work in an application?

4   A.    Are you asking me if I am part of the examination

5   process?  Because that is what the examiner does when a

6   person applies for other naturalization or residency.

7   Q.    No, I mean have you accepted evidence of any

8   potential applicant and considered whether that person is

9   either a U.S. citizen or alien?  Have you done that?  Do you

10  have the authority to do that?

11        THE COURT:  Well, hold on.  Those are two

12  separate questions.

13        THE DEFENDANT:  Okay.

14        THE COURT:  I think his first question is have

15  you ever done that?  Do you understand, sir?

16        THE WITNESS:  The first question about whether

17  I have granted someone residency?  Do I have the powers to

18  grant residency?  No, I don't.

19        THE COURT:  Hold on.  I don't want to stomp on

20  your question, Mr. Awala, but in the first instance I think

21  he is asking whether you have had, in your experience, ever

22  the opportunity to talk to somebody about their nationality

23  or their residency status, alien registration status.  Have

24  you walked somebody through the process?

25        THE WITNESS:  Yes, I have.

1           THE COURT:  All right.

2    BY THE DEFENDANT:

3    Q.    When was that?

4    A.    Numerous times, when I talk to different aliens and

5    people that I approach throughout my career.

6    Q.    So what you saying is you have authority to grant any

7    consent as to issue a document for an alien or for a

8    citizen?

9    A.    If you can tell me specifics document, I will tell

10   you whether I have authority to grant that.

11   Q.    Do you have a legal authority to grant an

12   application?  A citizenship application?

13   A.    The residency and the --

14   Q.    Yes.

15   A.    The residency and citizenship are two different

16   things.  I am not the one who verifies whether a person has

17   the local right to adjust to that particular status, so if

18   the question is, no, I don't have that power.

19           THE DEFENDANT:  Your Honor, may I put on the

20   monitor, so the jury can see it?

21           THE COURT:  Yes, you can.  Well, before you do

22   that, I need to know if that is something actually in

23   evidence.  If it's one of the documents in evidence, you are

24   free to put it up there.  If it's not, then the answer is

25   no.

                        A   000

Gonzalez - cross

1        THE DEFENDANT:  It is.  It is.  I mean it is

2   related to this particular question I'm asking.  It is

3   probative.

4            THE COURT:  Let's take it at sidebar.

5            THE DEFENDANT:  Okay.

6            (Conference held at sidebar out of presence of

7   jury.)

8            THE COURT:  You have to wait until they're here.

9            THE DEFENDANT:  I'm sorry.

10           THE COURT:  Okay.  What is it that you want?

11           THE DEFENDANT:  This is a form that deals with

12  naturalization.

13           THE COURT:  All right.

14           THE DEFENDANT:  And these are working forms.  I

15  want to know if he has done anything related to that.

16           THE COURT:  All right.

17           THE DEFENDANT:  And how is it that you can be,

18  you can also ask for what is called permission to return to

19  United States, relinquish instead of that alien.

20           THE COURT:  All right.  I think I understand

21  what you want to ask.  I want you to stop.

22           THE DEFENDANT:  Yes.

23           THE COURT:  You can't show that to the jury

24  unless and until it is admitted into evidence.  You can ask

25  him about these documents without being evidence, but if you

Gonzalez - cross

1  government form?

2           THE WITNESS:  The answer is no.

3  BY THE DEFENDANT:

4  Q.    The answer is no?

5  A.    The Embassy have no authority to process that form,

6  no.

7  Q.    Well, I would refer.  Have you found -- are you

8  familiar with immigration?

9  A.    To my knowledge, yes, I am, with 13 years experience.

10 Q.    Thirteen years.  And you said you processed

11 naturalization form before?

12 A.    I said I did not.  I do not have authority to approve

13 N-400 naturalization form, sir.

14 Q.    You do not have authority?

15 A.    No, I do not.  I am familiar with it but I do not

16 have the power to authorize that.

17 Q.    How would you know U.S. Embassies or the Consulate

18 Service do not have that authority to grant that permission?

19 A.    Because the State Department which handles the

20 embassies overseas are the ones that have no authority under

21 no circumstances of processing a naturalization form.

22 Q.    So what you saying to me is they have no

23 constructive, no type of implicit authority to grant

24 application?

25 A.    The American Embassies overseas which are run by the

Gonzalez - cross

1  want to show it, it has to be admitted into evidence.

2           THE DEFENDANT:  Okay.

3           MS. MOSKOW-SCHNOLL:  Your Honor, I have never

4  seen it and I'd like the opportunity to view the document.

5           THE DEFENDANT:  This is from the U.S.

6  Citizenship and Immigration Service.

7           MS. MOSKOW-SCHNOLL:  It may be, but I have never

8  seen it, Mr. Awala.

9           THE DEFENDANT:  I have mailed you copy of those.

10          THE COURT:  No, stop.  You got to stop.

11          THE DEFENDANT:  I'm sorry.

12          MS. MOSKOW-SCHNOLL:  And I don't understand what

13  this is.  There is also writing here.

14          THE DEFENDANT:  It's American English.

15          THE COURT:  Well, here is what is going to

16  happen.

17          MS. MOSKOW-SCHNOLL:  Whose writing is this?

18          THE DEFENDANT:  That's not -- ·

19          THE COURT:  You guys, stop.  Both of you.

20          MS. MOSKOW-SCHNOLL:  Sorry.

21          THE COURT:  You've got talk to me.

22          MS. MOSKOW-SCHNOLL:  I'm sorry, Your Honor.

23          THE COURT:  If he wants to ask, have you ever

24  dealt with -- ·

25          THE DEFENDANT:  Process.

A-125
Gonzalez - cross

1    THE COURT:  -- the process and I-191, I'm going

2    to let him ask the question.

3                MS. MOSKOW-SCHNOLL:  That's fine.

4                THE COURT:  But if you want to try to submit

5    this into evidence --

6                THE DEFENDANT:  You're going to let it go.

7                THE COURT:  I'm not letting it in for the

8    reasons I described before, which is unless you want to show

9    it to them and work out an agreement, but I'm not going to

10   on-the-fly have people trying to examine documents while a

11   jury is in the box.

12               THE DEFENDANT:  Okay.

13               THE COURT:  So go ahead and ask the questions.

14   All right?

15               THE DEFENDANT:  Okay.

16               THE COURT:  But don't display it.

17               THE DEFENDANT:  Because?

18               THE COURT:  Because it's not in evidence.

19               THE DEFENDANT:  The whole process, that's what

20   I'm trying to show.

21               THE COURT:  Okay.  So you can ask that.

22               THE DEFENDANT:  All right then.

23               (Conference at sidebar ends.  Proceedings

24   continue in open court.)

25               THE DEFENDANT:  The Government is always having

A-126

Gonzalez - cross

1  some light most favorable to the Government so I'm not going

2  to be allowed to show it.

3            THE COURT:  Stop.  You've just got to ask your

4  question.  No editorial comments.  Just go ahead and ask

5  your question, sir.

6  BY THE DEFENDANT:

7  Q.    Back to that question.  I want to know if you ever

8  process any N-400 naturalization form to become a U.S.

9  citizen?

10  A.    No, I have not.

11  Q.    Okay.  And from my understanding, you support the

12  Government's questions as to indicating that those forms

13  can -- I was saying that do you have an idea if those forms

14  that could be processed by a U.S. Embassy outside the United

15  States?

16            THE COURT:  Which forms, sir?

17            THE DEFENDANT:  The particular form N-400 that

18  on its face, it deals with naturalization.

19            THE COURT:  Okay.

20            THE DEFENDANT:  It's not alien, by itself.

21            THE COURT:  All right.

22  BY THE DEFENDANT:

23  Q.    Were you U.S. born by a foreign?

24            THE COURT:  Okay.  The question is, does the

25  U.S. Embassy have the authority to process that particular

A-128

Gonzalez - cross

1   State Department have no authority to process immigration,

2   immigration form, especially the naturalization form.

3   Q.   Okay.  Now, how does U.S. citizen whose parents were

4   here, okay, say 35 years ago -- I'm going to use myself as

5   an example.  Thirty-five years ago.  Okay?  I'm 27 now.  At

6   the time I was seven years old.  I was present here, sick,

7   had all these problems.  My parents separated.

8              MS. MOSKOW-SCHNOLL:  Objection.

9              THE COURT:  Stop.

10             THE DEFENDANT:  I'm asking a question.

11             THE COURT:  No, you are not asking a question,

12   sir.  You are testifying.  What I told you before is you

13   have to wait until it's your turn to testify.  You have to

14   ask questions.

15             THE DEFENDANT:  Thank you very much.

16   BY THE DEFENDANT:

17   Q.   So you say that -- how does people who basically like

18   U.S. citizens who never had documents -- I've had situations

19   and I heard, prior to me finding out about my situation, I

20   have been able to evaluate the forms.

21             MS. MOSKOW-SCHNOLL:  Objection, Your Honor.

22             THE DEFENDANT:  Excuse me.

23             MS. MOSKOW-SCHNOLL:  Same objection.

24             THE COURT:  All right.  And it's sustained.

25             THE DEFENDANT:  Okay.

A-129

Gonzalez - cross

1        THE COURT:  You need to get to a question, sir.

2   You will have an opportunity, if you choose to take it, to

3   testify.  But at this juncture, you need to ask questions.

4        THE DEFENDANT: ` All right.

5   BY THE DEFENDANT:

6   Q.   Are you familiar with border patrol agents?

7   A.   Excuse me.

8   Q.   Border patrol agents.

9   A.   Yes, those are people that are on the borders.

10  Q.   Okay.  So do you guys have the same functions?  Do

11  you share the same function?

12  A.   Same authority, yes.

13  Q.   Same authority.  Okay.  So if I'm speaking of

14  immigration officers in general, would I be right, we have

15  immigration officer, immigration inspector, immigration

16  examiner, we have offices, we have detention, we have

17  investigative, we have special agent.  You are special

18  agent; correct?

19  A.   Correct.

20  Q.   All right.  We have intelligence agent, general

21  council, applications, and all of these individuals are all

22  immigration.  They are all on the Department of Homeland

23  Security; correct?

24  A.   That is correct.

25  Q.   Okay.  Well, what I want to know now is -- excuse

A-130

Gonzalez - cross

1   me -- does alien and citizenship, citizen, do they hold the

2   same process when you deal with immigration, registration

3   process?

4   A.   I'm sorry.  Repeat the question or clarify it,

5   please.

6   Q.   Okay.  I said an alien is someone who it was not born

7   in the United States; right?  Am I correct?

8   A.   Correct.

9   Q.   And a citizen is someone who is born in the United

10  States?

11  A.   And also it could be a person who became an American

12  citizen by the Naturalization Service.

13  Q.   That's correct.  That is exactly what I'm saying.

14  Now, have you ever had a situation where you process an

15  application of the person who was adopted?  Do you ever deal

16  with foster care, adoptions or anything like that relating

17  to alien or documented aliens and their child was born here?

18  A.   I don't understand the question.

19          THE COURT:  I think he asked if you have ever

20  had, in your experience, if you have ever dealt with

21  somebody who was adopted or in foster care while you were

22  in the context of dealing with an immigration issue.

23          THE WITNESS:  Yes, I have.

24  BY THE DEFENDANT:

25  Q.   You have.  And what was it?  How long ago was that?

A-131

Gonzalez - cross

1   A.    I can't say exactly.  It was in 13 years, I have come

2   across a couple of people that have been adopted and have

3   citizenship either by that or there were permanent residents

4   because of that.

5   Q.    Okay.  Are you familiar with the -- now, when you

6   speak of having had those applications and process

7   applications, do you do things in relation to vital

8   statistics, like State Departments that deals with registry,

9   stuff like that?  Do you ever have any opportunity?

10  A.    No, I don't deal with that.

11  Q.    You never heard about delayed birth certificate,

12  someone that didn't have a birth certificate?

13  A.    I never heard of it.

14  Q.    You never heard of it?

15  A.    No, sir.

16  Q.    Okay.  Well, a delayed birth certificate is an

17  application.

18            MS. MOSKOW-SCHNOLL:  Objection, Your Honor.

19            THE COURT:  Okay.  Yes, you can't testify at

20  this point.  You need to ask questions.

21            THE DEFENDANT:  All right.

22  BY THE DEFENDANT:

23  Q.    I want to take you back to the night of August 12th,

24  2004.

25  A.    Okay.

Gonzalez - cross

1   Q.    In your submissions, as you testified, you indicated

2   that the defendant, myself, speak on my behalf, that I never

3   had a job.  Is that what you said?

4   A.    That's what you said to me.

5   Q.    I told you that.  Okay.  And you confiscated the

6   truck, isn't it?

7   A.    I did not confiscated the truck.

8   Q.    But you searched the truck?

9   A.    I did search the truck.

10  Q.    Okay.  What were contents of that truck?  Could you

11  remember anything in particular?

12  A.    It was a lot of trash in the truck and documents not

13  pertaining to you.

14  Q.    Okay.  So the trash in the truck, how could it, how

15  could it be there was trash in the truck and, I mean, would

16  you have thought that someone had to have done some work,

17  had actually put those trash in the truck?

18  A.    Of course.  There was a lot of trash.  There was

19  paint.  Yes, it would appear it was a truck that was used by

20  someone that was working.

21  Q.    And you reasonably concluded that that was not a job,

22  that is not work, that is not a job?

23  A.    My conclusions are not relevant at this point.

24  Q.    Well, you made a statement that the defendant said

25  that he didn't have a job.  He didn't have a work.

A — 710

A-133

Gonzalez - cross

1   A.    I wrote down on the statement what you told me.

2   Q.    But how could I have told you that I didn't have a

3   job when I had stuff in the back of the truck that was

4   evidence of work?

5   A.    Again, I wrote down on the statement what you told

6   me.

7   Q.    Okay.  Thank you.  At the time that you, before you

8   actually came to Mr. Awala, how did you learn about

9   Mr. Awala?

10  A.    I'm sorry.  Say again.

11  Q.    How did you learn about Mr. Awala?

12        THE COURT:  When you are speaking about yourself

13  at this point, when you say Mr. Awala, it's you; right?

14        THE DEFENDANT:  Yes, that's me.

15  BY THE DEFENDANT:

16  Q.    How did you learn about me?

17  A.    Okay.  I was notified on August 12th, 2004 that you

18  were found in Delaware.

19  Q.    I was found in Delaware.  And did you -- were you

20  told that I had a license with me, some type of a driving

21  license or anything like that, identification?  Was I

22  identified before you came?

23  A.    Yes, you were identified by the police of whom you

24  were.

25  Q.    And they didn't have to go through trouble to find

Gonzalez - cross

1   who I was; right?

2   A.    Correct.

3   Q.    Which means that I gave them the truth; correct?

4   About my name?

5   A.    I believe you did.

6   Q.    Gebeke O. Awala; correct?

7   A.    Correct.

8   Q.    Now, from your experience as an immigration officer,

9   and with regards to alien and illegal aliens and all that,

10  would you reasonably conclude that anyone who had his name,

11  his real name had no reason to be, to have any false

12  identification? And would you think that person would have

13  reentered the United States knowing it was an alien and

14  knowing he could be subject to arrest?

15  A.    I have many people who approach me or when I approach

16  to interview who have lied to me, yes, as to their identity

17  because they're either illegal or they're probably wanted.

18  Did I answer your question?

19  Q.    No. I'm saying say suppose that you get a call and

20  they tell you, oh, that Mr. James has been arrested.  The

21  NCIC, which is what the number of police do, the computer

22  and the NCIC came back and it said Mr. James, didn't do

23  fingerprints.  Say he already had filled out a form and that

24  form he handed Mr. James, he handed something like Samuel

25  Stretton and Samuel Stretton was the name used to deport

B-1

1                IN THE UNITED STATES DISTRICT COURT

2                IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

    UNITED STATES OF AMERICA,

4                                    :    CRIMINAL ACTION
                        Plaintiff,   :

5                                    :
                        v.           :

6                                    :
    GBEKE AWALA,                     :

7                                    :
                        Defendant.        NO. 04-90 (KAJ)

8                          - - -

9                          Wilmington, Delaware
                   Wednesday, January 18, 2006 at 8:58 a.m.

10                      JURY TRIAL - VOLUME B

11                         - - -

12   BEFORE:  HONORABLE **KENT A. JORDAN**, U.S.D.C.J., and a Jury

13                         - - -

    APPEARANCES:

14

15               BETH MOSKOW-SCHNOLL, ESQ.
                 Assistant United States Attorney

16
                    Counsel for Government

17

18               GBEKE AWALA, Pro Se

19                  Appearing on his own behalf

20
                 LAW OFFICES

21               BY:  SAMUEL C. STRETTON, ESQ.
                      (West Chester, Pennsylvania)

22
                    Standby Counsel for Defendant Gbeke Awala

23

24

25

Liszkiewicz - cross

1    A.    Yes, that was the request.

2    Q.    Did you reach a conclusion as to whether the

3    fingerprints in those two different exhibits belong to the

4    same individual?

5    A.    I did.

6    Q.    And what was that conclusion?

7    A.    The prints were made by one and the same individual

8    to the exclusion of all others.

9              MS. MOSKOW-SCHNOLL:   Thank you.   That's all I

10   have, Your Honor.

11             THE COURT:   All right.   Your cross-examination,

12   Mr. Awala.

13                      CROSS-EXAMINATION

14   By THE DEFENDANT:

15   Q.    The prints are made of one particular individual at

16   the exclusion of another person.   Would you please explain

17   that to me?   I don't seem to understand.

18   A.    The prints are made by one and the same individual

19   to the exclusion of all others because to date, no two

20   individuals have been found -- no two different individuals

21   have been found to have the same fingerprint.

22   Q.    As of yesterday, the issue, there was an issue about

23   my -- you not being, you not being involved in the full

24   immigration process of citizenship documents for U.S.

25   citizenship by immigration.

Liszkiewicz - cross

1    MS. MOSKOW-SCHNOLL:  Objection, Your Honor.  I

2  believe this is irrelevant and beyond the scope.

3    THE COURT:  Let me have your question again,

4  Mr. Awala.

5    THE DEFENDANT:  My question is that -- my

6  question is according to the curriculum vitae, right here,

7  correct?  I could read from the experience part, it says

8  United States Department of Homeland Security, United States

9  Immigration and Customs Enforcement.  Forensic Document

10  Laboratory, McLean, Virginia.  There is nothing that embrace

11  U.S. citizenship in immigration.  So I want to know if you

12  have access to those files, if they link together, or you

13  have some type of access to those files where you may be

14  able to have had access to my application with a biographic

15  form that was filled out in support of the application.

16    MS. MOSKOW-SCHNOLL:  Objection.  He is

17  testifying.

18    THE DEFENDANT:  That is not testifying.  That is

19  overruled.

20    THE COURT:  No, overruled.  Go ahead.  If you

21  understand the question, please answer.

22  A.   We do have access to those fingerprint files, if we

23  had requested same; but in this particular matter, we only

24  were requested and only reviewed the files provided by the

25  agent investigating the matter.

Liszkiewicz - cross

1   BY THE DEFENDANT:

2   Q.    So you saying that you only can have access to that

3   files if it's been requested?

4   A.    That is correct.

5   Q.    So basically -- okay.  I'm going to direct you to

6   Government Exhibit 10, right here.

7   A.    Okay.

8   Q.    Of course, the name on it is Gebeke Awala, my name.

9   And where -- I just want to ask you a question as where it

10  says state identification.  Is that your signature?

11           THE DEFENDANT:  May I put it on the monitor?

12           THE COURT:  Yes, sure.  If you want to put it on

13  the monitor, you can do that, sir.

14  BY THE DEFENDANT:

15  Q.    Is that your signature?

16  A.    That is my initial and a checkmark, yes.

17  Q.    Is that how you initial all your -- every work that

18  comes in your office, anything that you have to attest to?

19  Is that how you attest to it?

20  A.    That is how I initial everything, yes.

21  Q.    Well, it's material that this is not a signature and

22  this doesn't seem to be found and knowing, some type of a

23  real signature, something within your own?

24           THE COURT:  You have to ask a question.  You

25  can't make argument.

A - 072

1       THE DEFENDANT:  That's the question.  I'm saying

2    this signature is questionable.

3       THE COURT:  And that's not a question.  What I'm

4    telling you is you have to ask a question.

5    BY THE DEFENDANT:

6    Q.   The best way to put it is that I'm claiming that you

7    should have had -- did you ever have printed out anything

8    else to support --

9               (Defendant and Mr. Stretton confer.)

10              THE DEFENDANT:  Thank you.  Excuse me.

11   BY THE DEFENDANT:

12   Q.   You should have something else to support when you

13   receive these particular prints from Agent Gonzalez;

14   correct?

15   A.   Yes.

16   Q.   Now, you indicated yesterday that you went by -- how

17   did you sample the prints to have been able to determine

18   that it belongs to me, or to have been able to determine

19   there was a record on there?

20   A.   I looked at the fingerprints.  There are two

21   fingerprints on the Warrant of Deportation.  I looked at

22   those vs. the right index finger on Government 10 which is

23   the fingerprint card and found them to be made by one and

24   the same individual.

25   Q.   Okay.  All right.  I'm going to direct you to your

1   criminal vitae -- curriculum vitae when you worked with the

2   Wilmington Police Department. I can read where it says you

3   have some FBI court testimony. And in those testimonies,

4   you testified within the same subject matter as what we are

5   discussing right now?

6              MR. STRETTON: Your Honor, can we see you at

7   sidebar?

8              THE COURT: Yes.

9              (Conference held at sidebar out of presence of

10  jury.)

11             THE COURT: Okay.

12             THE DEFENDANT: Respect me. Do not halt me when

13  I'm doing my job.

14             MR. STRETTON: The reason I asked for the

15  sidebar, I move to strike the gentleman's testimony. It

16  wasn't given with reasonable certainty. It was two

17  signatures. It's within the standard of an expert.

18             THE DEFENDANT: Your Honor --

19             MR. STRETTON: -- trying to do the cross.

20             THE COURT: Stop. Mr. Stretton, I can't let you

21  do this. Mr. Awala doesn't want you to do this.

22             THE DEFENDANT: What I'm trying to determine, if

23  this man had access.

24             MR. STRETTON: Listen to what I said. Just

25  adopt my objection.

B-13
Liszkiewicz - cross

1          THE DEFENDANT:  Do not object to what I'm doing.

2          MR. STRETTON:  I'm not objecting.

3          THE DEFENDANT:  You are ruining my case.

4          MR. STRETTON:  Listen to what I said.

5          THE COURT:  Stop.  Now, Mr. Stretton, you've got

6    to stop.  I know you want to help but you're moving outside

7    the bounds you can be in.

8          THE DEFENDANT:  This is citizen.

9          THE COURT:  He doesn't want to adopt your

10   objection.  Apparently, he wants to do what he wants to do.

11   I have to respect that you didn't have to do that.

12         THE DEFENDANT:  Maybe I didn't have to.

13         MR. STRETTON:  But without the reasonable -- not

14   psychological, without reasonable handwriting certainty, it

15   doesn't meet the standard of an expert.

16         THE DEFENDANT:  This is a waste of time.

17         MR. STRETTON:  Waste of my time.

18         THE COURT:  Okay.  Mr. Stretton, we're through

19   with that.  If he wants to make that objection, he can.  I

20   can't let you make objections he doesn't want.  I can't do

21   it.

22         MR. STRETTON:  But I also want him to know

23   you're not helping yourself.

24         THE DEFENDANT:  I am.

25         THE COURT:  Done, please.

B-14
Liszkiewicz - cross

1           THE DEFENDANT: I am.

2           THE COURT: Done. Not on the record.

3           MR. STRETTON: I'm sorry. I'll be quiet.

4           THE COURT: Please.

5           (Conference at sidebar ends. Proceedings

6    continue in open court.)

7           THE COURT: Court reporter ready?

8           THE COURT REPORTER: Yes, Your Honor.

9           THE COURT: All right. Mr. Awala, you may

10   continue.

11          THE DEFENDANT: Sorry about that.

12   BY THE DEFENDANT:

.13  Q.   United States Citizenship and Immigration fingerprint

14   system. Have you ever have your family have biometric

15   identifier? Biometric identifier. Have you ever heard

16   about that?

17   A.   I have heard of it, yes.

18   Q.   Okay. What is that? Can you explain to the Court

19   what that is?

20   A.   The system, as I understand it, uses, again, a

21   series of. A fingerprint is put into the system and picture

22   the smallest of grid pattern. These points or these

23   characteristics I spoke about are marked on this grid

24   pattern. And that's the biometric system by which it

25   identifies prints. The computer cannot see, for example,

B-15
Liszkiewicz - cross

1   a whirl or even a fingerprint. All it can see are like

2   where's the bifurcations, ending ridges and that biometric

3   pattern is what we use to identify the fingerprints.

4   Q.   Okay.  Does that -- by any connection, do you think

5   that is a link or casual relationship between border

6   fingerprints and consulate fingerprints?

7            MS. MOSKOW-SCHNOLL:  Excuse me.

8            THE DEFENDANT:  It is relevant.

9            MS. MOSKOW-SCHNOLL:  Objection.

10           THE DEFENDANT:  It is relevant.

11           THE COURT:  Yes?

12           MS. MOSKOW-SCHNOLL:  It's beyond the scope and

13  irrelevant, Your Honor.

14           THE COURT:  I'll go ahead and let him ask the

15  question.

16           Go ahead, Mr. Awala.

17           THE DEFENDANT:  Thank you, Your Honor.

18  BY THE DEFENDANT:

19  Q.   My question is, is there any casual link between

20  border fingerprints?  Because in the United States, right

21  when you come into this country, right before, there are two

22  ways.  There is the U.S. citizen, in the same spot, not the

23  aliens.

24           THE DEFENDANT:  I'm sorry.

25           THE COURT:  No.  You can't start giving

Liszkiewicz - cross

1    information.

2              THE DEFENDANT:  Okay.

3              THE COURT:  That's called testifying.

4              THE DEFENDANT:  All right.

5              THE COURT:  You have to ask a question.  Now,

6    if your question is --

7              THE DEFENDANT:  All right.  My question.  Okay.

8              THE COURT:  -- if your question is are

9    fingerprints taken at the border or something like that,

10   I'm letting you ask that question.  Do you want to ask that

11   question or not?

12             THE DEFENDANT:  Okay.  I will.

13   BY THE DEFENDANT:

14   Q.   Is it true that those fingerprints, that most

15   fingerprints, some of them are electronic, just put your one

16   finger on it, on some type of a burgundy system, you know

17   what I mean by that, and once you put your finger on, it

18   automatically access your files, whether you have NCIC,

19   prior convictions, prior deportation, whatever it is the

20   authorities have on you would automatically show up; right?

21   A.   That is not completely correct.

22   Q.   Why is that?

23   A.   At the border or border patrol, if they take a -- if

24   they detain someone or take someone, they can take them to

25   their office and they have, we refer it to as Ident.  It's

1  an old INS system where it only searchs the index fingers of

2  an individual, and it does so within 30 seconds to a minute.

3  And it can tell you whether this person was ever stopped at

4  the border, arrested at the border, whatever and returned.

5  It doesn't go beyond that area.  It doesn't give me a

6  complete record of whether that individual was ever arrested

7  within the United States.  It doesn't give me a record if

8  he was arrested outside the United States.  It only tells me

9  that he was stopped at the border and that the fingerprints

10  are on file.  It's predominantly border patrol.

11  Q.    So basically when you run fingerprints, you may not

12  have had access to that particular type of file you saying.

13  You may not have been able to view that file, not even

14  knowing that person that been pressed.  Do you understand

15  that question?

16  A.    Yes.  We routinely check fingerprints as they come

17  in if requested by the Special Agent.  We will run them

18  through the Ident/Enforce system to see if there is anything

19  different.  If we find nothing different, then we have

20  nothing else to report to them.

21  Q.    Now, this is criminal; correct?  Or civil?

22  A.    I'm sorry.

23  Q.    This is criminal.  This is a criminal fingerprint

24  report, isn't it?

25  A.    The exhibit, Government Exhibit 10.

1    Q.    Ten, right.

2    A.    It is a criminal fingerprint card, yes.

3    Q.    Okay.  So which means that in a normal circumstances

4    like you said, because I disagree because there is something

5    --

6            THE DEFENDANT:  Your Honor, I just want to ask a

7    question.

8            THE COURT:  Please do.  Ask.

9    BY THE DEFENDANT:

10   Q.    Have you heard of watch list?

11   A.    I have heard of watch list.

12   Q.    What is watch list?

13   A.    As I understand it, it doesn't apply to me

14   individually but that is for individuals coming into the

15   country who may have a reasonable suspicion, may be -- may

16   have the desire to cause harm or a terrorist-type watch

17   list.

18   Q.    A watch list from your explanation, it determines

19   your prior, isn't it your prior convictions?

20   A.    No.

21   Q.    If you've ever had a prior?

22           MS. MOSKOW-SCHNOLL:  Your Honor?

23           THE COURT:  Yes.

24           MS. MOSKOW-SCHNOLL:  Objection.  I think you

25   have given him some leeway but I really believe this is

Liszkiewicz - cross

1   irrelevant.

2          THE COURT:  I agree.  Move on to a different

3   topic or conclude your examination.

4          THE DEFENDANT:  All right.

5   BY THE DEFENDANT:

6   Q.    So if I, from an independent point, if I fill out --

7   say I fill out a Form N-400 for naturalization, become a

8   United States citizen, or I fill out a Form I-191 for

9   permission to return to a relinquished domicile, which is

10  for someone who was a U.S. citizen who lost citizenship

11  because of the failure to be present in the U.S. for a long

12  period of time.  So you come back to relinquish, which means

13  you are not giving it away, domicile, so that is another

14  process of immigration; right?  Citizenship process?

15  A.    That is a process within Immigration, yes.

16  Q.    Okay.  Independent from alien records, isn't it?

17         THE COURT:  All right.  Hold on.  Stop.

18         THE DEFENDANT:  I'm asking a question.

19         THE COURT:  Yes, you are, but you are way beyond

20  the scope of the direct examination, Mr. Awala.  So if you

21  want to ask this man about the fingerprint analysis he did,

22  if you have other questions about that.

23         THE DEFENDANT:  Yes, because what I want to ask

24  him, Your Honor, because there is no application you fill

25  out --

A - 282

 1              THE COURT:  Stop.

 2              THE DEFENDANT:  -- with Immigration --

 3              THE COURT:  Stop.

 4              THE DEFENDANT:  -- that go with the fingerprint.

 5              THE COURT:  Stop.  Let's go to sidebar.

 6              (Conference held at sidebar out of presence of

 7   jury.)

 8              THE COURT:  Don't talk, Mr. Stretton.  Let me

 9   deal with this.

10              THE DEFENDANT:  Thank you.

11              THE COURT:  Do you have anything else to ask him

12   about fingerprints?

13              THE DEFENDANT:  Your Honor --

14              THE COURT:  No, listen to me.  Do you have

15   anything else to ask him about fingerprints?

16              THE DEFENDANT:  Well, I believe that he has

17   answered my question, Consulate Department of State and I

18   just wanted fingerprints, because he says biometric,

19   electronic capture fingerprints in addition to the base.  So

20   if he is a fingerprint expert and he works with the United

21   States, Immigration citizenship, he should have access to

22   that.

23              THE COURT:  All right.  That's your last

24   question?

25              THE DEFENDANT:  That's my last question.

1    THE COURT:  Okay.  Well, then it's irrelevant.

2    I'm not going to let you ask it.  Your examination is over.

3               THE DEFENDANT:  Thank you.

4               MS. MOSKOW-SCHNOLL:  Your Honor, I believe all

5    these questions, the only relevance he might possibly have

6    as to the defense he wanted to put in you already precluded.

7               THE COURT:  Right, that could be.  But you know

8    what?  We'll deal with that if and when we have to deal with

9    it, Ms. Moskow-Schnoll.

10              MS. MOSKOW-SCHNOLL:  Thank you, Your Honor.

11              THE DEFENDANT:  Your Honor, those questions are

12   irrelevant.  Knowing if at least --

13              THE COURT:  We don't need to argue that now.

14   All we need to do is know that, and I'm putting it on the

15   record your examination is done.

16              Do you have any redirect?

17              MS. MOSKOW-SCHNOLL:  Just one question.

18              THE COURT:  All right.

19              MR. STRETTON:  Would you entertain my motion to

20   strike?

21              THE DEFENDANT:  Would you let me?

22              THE COURT:  No.

23              THE DEFENDANT:  When we go back to the jury, can

24   I just close it out?

25              THE COURT:  Sure.

A - 204

B-32

Awala - direct

1              - - -

2              DEFENDANT'S TESTIMONY

3              ... GBEKE AWALA, having been placed

4              under oath at 9:33 a.m. as a witness, was

5              examined and testified as follows ....

6              - - -

7          THE COURT:  All right.  Mr. Awala.

8          THE WITNESS:  Yes, Your Honor.

9          THE COURT:  Do you wish to have Mr. Stretton ask

10   you a narrative question to begin with or do you just want

11   to provide your narrative?

12         THE DEFENDANT:  Well, Your Honor, I do have a

13   plan.  And I want him, what I wanted him to ask me, are you

14   a citizen?

15         THE COURT:  Okay.  I'm just asking you a

16   yes-or-no question.  I take it you would prefer to just

17   proceed on your own.  Is that what you are saying to me?

18         THE DEFENDANT:  At this time, I would prefer to

19   proceed on my own.

20         THE COURT:  All right.  Go ahead then.

21         DIRECT TESTIMONY BY THE DEFENDANT

22         THE WITNESS:  I'd like to talk about my

23   character, matter of character.  It's called reputation

24   under 405, Your Honor.

25         THE COURT:  You want to talk about your

Awala - direct

1  character?

2          THE DEFENDANT:  Yes, reputation is similar.

3          MR. STRETTON:  Your Honor, I object to him doing

4  that.

5          THE COURT:  All right.  Well, you can't object,

6  Mr. Stretton, so I appreciate your frustration but you

7  can't.

8          And I can't let you testify about that because

9  that hasn't been put in issue.  So I am permitting to you

10  testify if you want to testify about facts that are

11  relevant.  This is the portion of the case, Mr. Awala, where

12  you get to talk about facts.

13          THE WITNESS:  So, Your Honor, are you saying --

14  in the rule book, it says that admissible proof may be made

15  by testimony of the reputation by testimony in the form of

16  an opinion on cross-examination or habits.

17          THE COURT:  Yes.

18          THE WITNESS:  Things that I do as a baby, things

19  I remember as far as when I was seven years old, things that

20  brings about memory that reminds me that I was a United

21  States citizen.

22          THE COURT:  Well, if you want to talk about why

23  you think you're a United States citizen.

24          THE WITNESS:  That's why I'm here.  That's why I

25  go to trial on this case.

A - 291

B-34

Awala - direct

1           THE COURT:  Go ahead.  You talk about the facts

2    that make you think you are a United States citizen, if that

3    is something you choose to do.

4           THE WITNESS:  Thank you.

5           And I was, we have here a son who the Government

6    is not picking him up.  The Government is supposed to be

7    singing --

8           MS. MOSKOW-SCHNOLL:  Objection, Your Honor.

9           THE WITNESS:  I will do anything.

10          THE COURT:  Okay.  I've got to take an

11   objection.

12          Yes.

13          MS. MOSKOW-SCHNOLL:  These aren't facts.

14          THE WITNESS:  Is facts.  Is related about what

15   I'm going to go to discuss with the Court.

16          THE COURT:  Then you need to try, if you can,

17   Mr. Awala, to separate in your mind the argument that you

18   want to make.

19          THE WITNESS:  Here is a child who is supposed to

20   be love.  I will do anything for love, for love, for love.

21   But on the other hand, what has been said to him is

22   good-bye.  Lovely songs that remind me of Elton John, songs

23   that remind me of my life.

24          MR. STRETTON:  Your Honor, can I speak?

25          THE WITNESS:  Excuse me.  Can you please let me

Awala - direct

1 │ testify by myself?

2 │        MR. STRETTON:  Can I just talk to him for a

3 │ second?

4 │        THE WITNESS:  No.

5 │        THE COURT:  Not if he doesn't want you to.  So

6 │ please have a seat.

7 │        THE WITNESS:  Here I am.  I can remember dating

8 │ back to when I was six years old.  I can remember Frank

9 │ Sinatra.  I can remember "you're nobody until somebody kills

10 │ you."

11 │        THE COURT:  Okay.

12 │        THE WITNESS:  I can remember Broadway.  And

13 │ these were places where, I treaded as a child in this

14 │ country.  I was born in Florida.

15 │        The very first question I am going to ask myself

16 │ is where were you born?

17 │        I was born in Miami, Florida.  Dade County.

18 │        My mother, her name is Dobras Callada Brown

19 │ (phonetic).  My father is Moses Tortise Awala.

20 │        Do you know that you were born in Miami,

21 │ Florida?  Precisely and exactly?

22 │        No.

23 │        Where did you live in Florida?

24 │        We lived in Carroll City.  3601 N.W. 210 Thirds.

25 │ All that information came up in court.

A - 208

1    Who owns the property?

2        It was my grandmother from my mother's side, I

3    guess I would say.  My biological grandmother.  Her name is

4    Jaci Poa Brown (phonetic).  She is Florida.  She is

5    originally from Charlton Melei, U.S. Virgin Islands.  We all

6    live in Florida at that time.

7        You once indicated you Mormon grandmother side.

8    We all sang in church, went to the Missionary Baptist Church

9    in Florida.  She was a choir member.

10        And my mother was also.  She was a musician.

11   She was a member of the Calenti, Miami.  It's a Spanish

12   group.  She is a member of that.

13        We traveled often.  I remember from the

14   pictures, as the pictures brings memories.  These things I

15   didn't know because I had disabilities as a child.  One, I

16   was born with leukemia and I had to go through chemotherapy.

17   There was a lot of things.  I was skinny as a child, been

18   fed and being brought to special care at the hospital.

19        All this information came up to me on around

20   2003.  And at that time, I was already here prior to that.

21   And prior to that, at the age of 13, I was brought back into

22   the United States when we went to the U.S. Embassy and

23   petitioned because I had my U.S. accent.  As far as from

24   seven years old to 12 years old, I had my U.S. accent.

25   Although I had spent, I only was in Nigeria 1980, I never

Awala - direct

1   knew Nigeria until 1980.

2          Now, before 1980 I was living in New York.

3   1977, I was taken out from New York to Ghana. Two years in

4   Ghana, I stay with my stepmother who was originally married

5   to my father in Africa. As you know, most Africans, when

6   they come into this country, they end up they may have a

7   wife over there prior to having somebody else in here. So

8   he came in here in 1968.

9          Before that, he was, he had a scholarship to go

10   study medicine in Cuba, and he left Cuba to come here. And

11   then he started working here, working with Brooklyn Navy

12   Yard in New York, driving trucks. And then he was on

13   part-time studies with some of the flight. He learned how

14   to fly planes. Then he subsequently became a pilot. And

15   unfortunately, you know, he got involved in bringing drugs

16   into the United States. And from the information that I

17   had, some of the documents that reflected that he was

18   actually working for the Federal Bureau of Investigation,

19   before he got killed in 1976 in Chicago, he got shot. He

20   was bringing heroin, smuggling heroin. And at that time, he

21   was also a co-pilot working for the Nigerian Airways.

22          And all that time, I was here at that time. I

23   went to school. I went to kindergarten, elementary school

24   here. I tried many times to get my school documents. I

25   wrote the North Carroll Elementary School in Florida. I can

Awala - direct

1   have the letter right here.  When it came back, when it came

2   back, the address was wrong.  And I wrote the Vital Office,

3   the Vital Statistics to sent me a couple addresses.  I wrote

4   those addresses and haven't been able to get a registration

5   backs, before this trial due to the long period of time.

6               At that time, I can remember as a child I did

7   songs.  I was a -- I sing Star Spangled Banner with my

8   elementary school.  We have four or five of about 15

9   students in that unit.  And it was, of course, 1976 as far

10  as I can remember from those pictures.  Because pictures,

11  like I said, pictures bring memories.  I can reflect on

12  myself at the time I was young and the things that I was

13  doing at that time.

14              So I'm going to move on with the question.

15  Before I do that, I would like for Mr. Stretton, do you have

16  a copy of my psychology report?

17              THE COURT:  Mr. Awala.

18              THE WITNESS:  Yes, Your Honor.

19              THE COURT:  That's not going to be asked about.

20  So move on to a new topic.

21              THE WITNESS:  My question, Your Honor, is the

22  psychological conduct evaluation.

23              THE COURT:  Mr. Awala, stop.  Stop.

24              THE WITNESS:  Okay.

25              THE COURT:  We're not talking about that.

Awala - direct

1        THE WITNESS:  All right.

2            And the next question is I remember when we went

3    Florida, Miami Beach.  I saw pictures of myself, my father

4    and my mother together all in one.  Miami Beach, Florida.

5            And I, when I came back around -- before that, I

6    came here in 1980 -- '83, yeah.  I came '83, attempting to

7    search for my mom.  And then, of course, unfortunately, I

8    was unable to.  I didn't have any means.  I was young.  I

9    was what you call under the age of no consent.  I didn't

10   know how to go about doing.

11           And this individual that brought me here at that

12   time, he has some friends in Spain.  They speak Spanish

13   there and he had some friends in Puerto Rico as well.  So he

14   flew me from Nigeria.  He went and got a visa.  He went to

15   U.S. Embassy, and he said he wanted to help me find my

16   parents.  All these records with the U.S. Embassy, that is

17   one of the reasons I agreed.  The U.S. Embassy is outside

18   the country, is capable of issuing relevant documents

19   leading to citizenship, alienship.

20           So they issued that document.  We came here, we

21   went to Virgin Islands.  We were futile, which means I

22   weren't able to locate.  All I hear was that as a passenger,

23   I can remember the old woman speaking Spanish, nothing is

24   impossible.  But at that time, I weren't able so we went

25   back home.

A-302

Awala - direct

1    And you have seen that the Government presented

2    a birth certificate dated 1983, as you see, when, of course,

3    I weren't born in 1983. Common sense.

4        There were no way for me to go to school in

5    Nigeria. They have the strict dedication. That may be what

6    they thought, what country in nationality. Your Honor, the

7    newspaper is a relevant document.

8        THE COURT: What is it you want to do?

9        THE WITNESS: Well, it just says U.S. dependents

10   in Africa. And it shows that $6 billion has been, from

11   Nigeria has bought us all out. So that tells us, a nation

12   that has not that much in resources, is common sense. They

13   have internal system and they have no witness. No witness

14   can articulate any fact that they knew me when I was born in

15   Nigeria, that were present at the time I was born. And they

16   came for my ceremony or they came from any program in

17   Nigeria?

18       MS. MOSKOW-SCHNOLL: Objection. He is arguing

19   now.

20       THE COURT: Overruled. Go ahead.

21       THE WITNESS: All of these elements relates to

22   me trying to -- not only am I trying to prove the fact I was

23   present in this country, I have documents that was submitted

24   to a specific agent of the Government I'm not allowed to

25   name.

$A - 303$

Awala - direct

1           THE COURT:  All right.  Mr. Awala, stop.  Now

2     you are outside the bounds of relevance based on the

3     pretrial rulings.  Move to another issue.

4           THE WITNESS:  I thought, just thought the jury

5     would want to know how can I prove --

6           THE COURT:  Mr. Awala.

7           THE WITNESS:  -- pictures of all the things I

8     have.

9           THE COURT:  Mr. Awala, I don't know how to be

10    any more clear with you.  Move to another topic.

11          THE WITNESS:  Okay.  I was born in, like I said,

12    Miami, Florida.  I wasn't able to view a circumcision

13    document which was issued eight days after my birth, dated

14    May 23rd, 1971, which also proved the fact that I was here

15    as a baby and circumcised in Florida.  And there are many,

16    many documents that prove that I was treated from the Quemba

17    (phonetic) here.  And when I read some of the issues about

18    adoptions and some of the issues about abortions and names

19    being obliterated, who knows what happened to my name.

20    Because those names I had, at least I can show you two or

21    three names that show that those names, I had trouble with

22    those names when I was a baby, as I was growing up.  At one

23    point, I had Beke Awala.  At one point, I have Gebekeloluwa

24    Awala.  And all these names, they do not match the birth

25    certificate.  The birth certificate was issued by my adopted

Awala - direct

1    mother when my grandmother passed away, Christiana Jafo
2    (phonetic).  That's my biological grandmother from my
3    father's side.

4         Now, prior to that, on or around 1947 -- I'm
5    going to take you back.  Actually, on or around 1945,
6    Christiana Jafo is my biological grandmother.  Now, she was
7    in France, and then she came down to the United States.  She
8    was a member of Red Cross, you know, Red Cross back then.
9    And then she came to, I call it Missionary, New York City as
10   far as 1945.

11        And those information, I got that from just
12   letters, letters, old letters, and those letters didn't
13   come to me until 2003 when I visited Ghana and I was in a
14   church.  And all I was doing was singing Amazing Grace at
15   that church.  And when I was done singing, immediately, the
16   pastor of that church came up and told me that there is some
17   people that wants to meet me.  Unfortunately, I can't sing
18   because I would have had him -- I know that.  As a child,
19   your voice, you don't lose singing voice, your original
20   voice.  Your lose your accent.  I lost the accent because I
21   wasn't here.  If I was here, just like if you hear someone
22   from Tennessee, is, you can tell them.  You pick someone
23   from New York, you listen to him, you hear it.  It's just a
24   direct proof of fact.  So I lost my accent as a result of
25   that.

Awala - direct

1    So if I was here, I probably, of course I would

2    have been able to retain my accent.  So they took me down.

3    And then this lady came up and said that she knew someone

4    who had been to Polytech with her that bears the same last

5    name and that's the Awala name.

6    Prior to that, Christiana Jafo, my biological

7    mother married Chester Hann (phonetic).  Chester Hann was

8    originally from Missouri in the United States here.  They

9    met at the McCauley because he was living in McCauley.

10   McCauley Center was used at this time for alleys back in

11   the days, according to what letters.  I learn about from

12   all that letter.

13   If you ever know Bowery Mission in New York

14   City, downtown, Bowery Mission, that area, that's where

15   they are.  And then Christiana got into a common like a

16   relationship, love, relationship, I guess, and Christiana

17   became pregnant of my father.

18   Now, when she left, she left around, I think

19   she left around that December of 1945 is when she left.

20   Because the dates on those letters indicated everything that

21   happened.

22   Now, when she got to France, she now start to

23   communicate with my biological grandfather, Chester Hann who

24   was originally from Missouri.  Those letters all came on

25   about eight or nine letters.  Now when I read those letters,

$\Lambda - 2 \Lambda 1$

Awala - direct

1   I saw communication.  That was how I learned my father was

2   born in France.  He was born in Paris, France.  So he wasn't

3   a Nigerian citizen, he was a French citizen.  So, well,

4   unfortunately, Chester Hann visited prior to that.  Prior to

5   the unfortunate situation, Chester Hann visited France and

6   went out casual with my biological grandmother, Christiana

7   Jafo and it was lovely, they had a good time.  And I

8   reflected on that because my father was about two years old

9   and that was 1947.  Okay?

10         Now, after that particular incident, for some

11  reason, I don't know what happened between them, the

12  relationship didn't go too well.  I think Mr. Chester Hann

13  also moved out of France to Australia.  The letter indicated

14  that as well.  So now when my biological grandmother was

15  through with France, she went back to Nigeria.  And as you

16  know, in Nigeria, you may not know, back in I think around

17  that time, I remember because my biological grandfather is

18  Chester Hann, but this Awala name that I carry right now is

19  not, is not my direct biological grandfather's name.  That

20  is my adopted grandfather.

21         The man that married Christiana Jafo who was a

22  Ghanian, he became my grandfather when I was basically moved

23  out to Nigeria.  I'm proud of that.  My father started to

24  use the same name so my father started using Awala himself.

25         Okay.  And the few things that tell a child that

Awala - direct

1    the child can reflect on, to know that he is not in the

2    environment he grew up and he knew, even though I had

3    problems before, I had an eye injury. As you can see, I

4    used to always think that the eye injury was caused by

5    some chemical or some type of a chemical in Nigeria and,

6    unfortunately, it was through the flood and some type of

7    earthquake, hurricane or strike. I was at home, I was five

8    years old, something hit my eye and that time I always

9    thinking it was Africa or someplace until 2003 when I saw

10   so many of this information. It was hospital treatments,

11   those documents and I learned that I was also injured and

12   that injury was from Florida, my head. That goes with that.

13           So, in 1976, I was only six years old. Prior

14   to that, I'm going to give you a little bit of story from my

15   birth which I do know, I affirm is from Miami, Dade County,

16   Florida. That is where my grandmother was living at. That

17   is where my mom was living at, at that time. And that was

18   where my father always drive his trucks when he come from

19   New York, Brooklyn Bridge. All those information come from

20   the pay stub, just come from pay stubs directly from the

21   Brooklyn Navy Yard. I wouldn't have never know if it wasn't

22   for that, those pieces of information that I saw.

23           So I was born after that. We leave. I remember

24   we go to -- you know, like I said, I saw pictures. These

25   things reflect back. I started to remember other things as

B-46

Awala - direct

1   I was a young kid.  There is absolutely no reason for me to
2   sit here and try to prove what is not real.  Is common
3   sense.

4              Anyway, I'm just going to leave that aside.  The
5   fact of the matter is every time I think about pulling up --
6   this is like a cure to injury, an injury that a child has
7   always has known to have had since a child, grew up having
8   that confusion, having that delusion, never having to know
9   where.  Every time they asked me, every time you see a three
10  year old baby, you say did you clean yourself?  Yes.  Did
11  you eat?  Yes.  Everything is yes, yes, yes.  At three, that
12  was exactly what I was doing.  Yes, yes.  Because I had no
13  particular specific knowledge of this incident, this --

14             But I knew I wasn't born in Nigeria.  I wasn't
15  born in Africa.  I knew I was alien and I knew I wasn't born
16  in England because I never saw double-deckers.  You know
17  those busses.  I never saw nothing like that when I was
18  seven, six.

19             All I saw was a bunch of New York taxis and I
20  know the buildings was different and the music I hear as a
21  kid.  I know I know James Brown.  And I know I know Jimmy
22  Hendrix, Woodstock, yes, because I love music.  My mother
23  was a musician.

24             And I know many things I see on TV.  I know we
25  had ABC, NBC, and all these programs.  And I know I used to

1   watch Sesame Street.  But unfortunately when I got to

2   Africa, I began to see a live Sesame Street, which is you

3   see, what is the name, elephant, real elephant, and I'm

4   scared and I'm looking at, what is this?  The Africans say,

5   oh, nothing to do for you.  And that's how they talk.  And

6   here I am sitting down, I see snakes, everything of an

7   animal nature around me.

8            I was used to seeing snow.  There is no snow

9   there.  When I got there, I looked.  I was only six years

10  old and I was looking around, there was no snow.  I knew

11  snow here.  I played with snow, a snowball, what you call

12  it.  There were no banks there.  There were no postal

13  service.  Matter of fact, one of the very major difference

14  things I distinguish was the lack of the postal boxes in

15  every section of the street.  Here, that is what I knew.

16  My grandmother always have big letters from the door.  And

17  the postal service, they ride bicycles.  I remember that.

18            The people, they don't wear a bra.  I'm sorry

19  to say that.  Different culture.  I'm used to seeing just

20  what I'm seeing right here.  I never had any reason to see

21  what I, you know, what I do not want to see.

22            So I'm just going to talk about the Chicago

23  incident was 1976.  It was December 26th, 1976.  That was

24  a Chicago trip.  And at that time, I remember the news Al

25  Capone, Al Capone.  Yeah.  I remember Cadillac.  I remember

B-48
Awala - direct

1    Chevy.  I remember all these cars.  When I got to Africa,

2    I didn't see nothing like that.  So definitely is a

3    difference.

4                This is called a road report.  This is a

5    magazine.

6                THE COURT:  It is a magazine and it's not

7    relevant.  It doesn't say anything relevant here so please

8    put it down.

9                THE WITNESS:  When a child is used to seeing

10   things of this nature, houses, of what we have here and you

11   take it to some type of a village and, you know, it remains

12   there.  I mean it stays in the heart of that child.

13                When I came back United States around 1983

14   finally before I got deported, I had all the opportunities

15   because every time I go for an employment, people always

16   tell me they found something in me that is not African, is

17   more American.

18                Even my original -- well, around 2002, I got

19   involved because I was doing music, singing around.  When I

20   sing -- I can't sing now.  I know if I sing, you can

21   distinguish my voice from an African-American singer.

22   Porsha, R. Kelly.  You name all those individuals.  When I

23   was in Europe doing my live shows, Alyssa Keyes, I meet all

24   of them.  They were like how come you sing like you sing,

25   but when you talk your accent is different?  That's how it

Awala - direct

1   is.

2                   MS. MOSKOW-SCHNOLL:  Objection.

3                   THE WITNESS:  People tell me I'm faking.

4                   THE COURT:  Hold on just a minute.

5                   Yes?

6                   MS. MOSKOW-SCHNOLL:  This is all hearsay.  It's

7   all irrelevant --

8                   THE WITNESS:  It is relevant.

9                   MS. MOSKOW-SCHNOLL:  -- what people think,

10  African accent.

11                  THE WITNESS:  It is relevant.

12                  THE COURT:  Sustained.  If you want to say

13  something about your past and say it without talking about

14  what other people said.

15          .       THE WITNESS:  All right.  And I remember when I

16  was about seven.  Like I said, it was 27 years ago.  I

17  remember the voice of the President Nixon, America, we're

18  going to -- Nixon, President Nixon, I can remember his

19  voice.  I cannot be anywhere else without knowing that's

20  Nixon's voice.  I can remember Vietnam.  I can remember the

21  things, the aftermath of Vietnam.  I remember all those

22  things.  Those things I didn't know much, i couldn't really

23  fuse myself into that particular atmosphere until the

24  information that I found from the shoebox.

25                  I'm going to take you back down to Ghana, the

B-50

Awala - direct

1   incident in Ghana 2003.  I sang Amazing Grace.  And I was

2   once lost but now I'm found, not knowing that God really had

3   found something for me.

4           THE COURT:  I need to see you folks at sidebar.

5   Come on down, Mr. Awala.

6           (Conference held at sidebar out of presence of

7   jury.)

8           THE COURT:  Okay.  How much longer do you think

9   you are going to want to talk, Mr. Awala?  Give me an idea.

10          THE WITNESS:  Do I have time, ten minutes to

11  speak about?  Just ten minutes.  That's it.

12          THE COURT:  What is it you want to speak about?

13  Here is the reason.

14          THE WITNESS:  It's pertaining to my approval.

15  It's me.  That's me.  That's my defense.  There is no other

16  way to prove my defense, Your Honor.  I have nothing to get

17  it for me.  I have nothing.

18          THE COURT:  All right.  Listen closely.  We've

19  let you testify.

20          THE DEPUTY CLERK:  A couple jurors need to go to

21  the bathroom.

22          THE COURT:  All right.  Why don't we go ahead

23  and take a break.

24          (Jury left courtroom.)

25          THE COURT:  Excuse me.

Awala - direct

1       THE DEFENDANT:  If I have the documents, you

2   would be able to see what you're telling me.

3       THE COURT:  Okay.  Mr. Awala, I know what your

4   positions are because I've spent a lot of time with you and

5   I read a lot of stuff you sent me.  Here is what I need you

6   to understand, okay?  I believe -- no, you need to stop

7   speaking and listen now.  I think the record will reflect

8   that you've been given a lot of leeway on the stand.  And

9   I'm prepared to give you, if you can tell me right now, give

10  me a proffer, tell me something about what else you want to

11  say that won't be repetitive and redundant.

12      THE DEFENDANT:  I won't be repetitive.

13      THE COURT:  Tell me what it is because so far

14  we've been over the Ghana.  You have to wait until I

15  speaking before you open your mouth.

16      THE DEFENDANT:  Okay.  So it's about my mother.

17  I just want my mother.

18      THE COURT:  Mr. Awala.

19      THE DEFENDANT:  I just want my mother.

20  (Defendant crying.)

21      THE COURT:  You've got to compose yourself or I

22  take you out of here.

23      THE DEFENDANT:  I just want my mother.

24      THE COURT:  All right.

25      MR. STRETTON:  Mr. Awala, stop.

B-52
Awala - direct

1       THE DEFENDANT: I just want my mother.

2       THE COURT: Do we need to take you out,

3   Mr. Awala?

4       MR. STRETTON: Compose yourself.

5       THE DEFENDANT: That's all I want. I just want

6   my mother. That's all I want.

7       THE COURT: Mr. Awala is taking a seat and I

8   want the record to reflect that he has burst into tears and

9   started calling for his mother.

10      THE DEFENDANT: I just want my mother.

11      MR. STRETTON: I can't ask permission to take

12  over? I ask his testimony be stricken.

13      THE COURT: Well, I won't strike his testimony

14  from the record.

15      MR. STRETTON: I ask I be allowed to withdraw

16  even as standby counsel. I don't think I can persist with

17  that kind of testimony.

18      THE COURT: And I'm not letting you withdraw

19  either.

20      MR. STRETTON: I understand that. I had to make

21  the request.

22      THE COURT: All right. Mr. Awala, can you

23  compose yourself and do you want to continue or do you want

24  me to have you removed from the courtroom? And I'll let

25  Mr. Stretton --

B-53
Awala - direct

1          THE DEFENDANT:  I am composed.

2          THE COURT:  All right.  If you are composed,

3    come over here and we'll finish talking.

4          MR. STRETTON:  Do you want a Kleenex?

5          THE COURT:  Yes, let's get a Kleenex for him.

6          Okay.  Now, here is the deal.  I have given

7    you an opportunity now to speak to the jury at some length.

8    They've heard about your maternal grandparents or your story

9    about them.  They heard about your parents and the story

10   about them.  They heard what you remember about your child-

11   hood in the United States.  It's getting repetitive.  We're

12   back to Ghana again and you're singing and I can't have it

13   get repetitive.  It's not fair to the jury.  Frankly, it's

14   not fair to you.

15         So if you can tell me what more it is you want

16   to tell this jury and tell me now what it is, if I determine

17   it's not repetitive and it's relevant, I'll let you keep

18   going.  If not, when the jury comes back, I'm just going to

19   tell them you have concluded your testimony on direct.  And

20   if the Government wants to cross, I'll let them, not that I

21   think that is a great idea, for what it's worth.

22         MS. MOSKOW-SCHNOLL:  I only have about three

23   questions, Your Honor.

24         THE COURT:  That's probably three questions too

25   many.

B-57

Awala - direct

1    THE COURT: All right. Please be seated.

2         I'll have brought into you shortly a copy of the

3    jury instructions -- just a moment -- as well as a verdict

4    form. You haven't seen the verdict form. It states simply

5    as to the single criminal charge against the defendant, we,

6    the jury in this case, unanimously find the defendant --

7    and then there is a space for them to mark not guilty and a

8    space for them to mark guilty, and a signature line for the

9    foreperson. And I'll give you a copy of this as well.

10         All right. Now, Mr. Awala, do you feel like

11   you've got your composure back?

12         THE DEFENDANT: Yes, sir.

13         THE COURT: Do you understand, sir, that I'm

14   giving you just a couple minutes on the stand to make that

15   last affirmation you want to make about citizenship?

16         All right. And then when you have made that,

17   I'll ask you to step down from the stand and I'll ask you

18   whether you rest your case or not. And I understand that

19   you will be saying you do rest your case; correct, sir?

20         THE DEFENDANT: Yes.

21         THE COURT: I'm sorry. I can't hear you.

22         THE DEFENDANT: Well, yes.

23         THE COURT: All right.

24         THE DEFENDANT: What do you mean by rest?

25         THE COURT: I mean you're done with your defense

Awala - direct

1   case and then the Government, if it had any rebuttal, would

2   be --

3                THE DEFENDANT:  If the Government have a

4   rebuttal, would I have an opportunity to say something after

5   that?  Would I have?

6                THE COURT:  You would be able to make argument

7   to the jury.

8                THE DEFENDANT:  Okay.

9                THE COURT:  But I'm talking about the phase

10  where we're putting evidence in.

11               THE DEFENDANT:  So when we make the argument,

12  where do we stand?  We stand right here.

13               THE COURT:  You stand right at the lectern; all

14  right?

15               All right.

16               MS. MOSKOW-SCHNOLL:  Your Honor, could I just

17  raise one issue?

18               THE COURT:  Yes.

19               MS. MOSKOW-SCHNOLL:  As part of Docket Item 141,

20  the defendant submitted a no record found statement from the

21  Florida Office of Vital Statistics saying they could not

22  find a birth certificate.  I would like to submit this

23  into evidence either in my rebuttal case -- actually, in

24  rebuttal.  I thought we could talk about it now that we're

25  on break.  It's certified.  It says it was certified,

1  submitted by the defendant, was part of an item.  He filed

2  it with the Court.

3          THE COURT:  All right.  Do you have a position,

4  Mr. Awala?

5          MR. STRETTON:  I would object to that, Your

6  Honor.

7          THE COURT:  Mr. Stretton, I can't let you.  I've

8  got to give the man his case.  It's his case.

9          THE DEFENDANT:  The only objection I have on

10 that is the fact that's not the end.  That's not the

11 complete -- like they have a process.

12         THE COURT:  I got you.

13         THE DEFENDANT:  You file.  When you ask for your

14 record, process of record, they don't find it, then they

15 refer you to a section.

16         THE COURT:  I'm about to rule in your favor.

17         THE DEFENDANT:  Okay.

18         THE COURT:  I'm granting your objection.  It's

19 not coming in.

20         MS. MOSKOW-SCHNOLL:  Okay.  Thank you, Your

21 Honor.

22         THE COURT:  All right.  Let's go.

23         MR. STRETTON:  Do you want him to take the box?

24         THE COURT:  Oh, yes.  I'm sorry.  Thank you.

25         Mr. Awala, go ahead and take the stand, if you

Awala - direct

1   would, please, sir.

2                (Witness resumes witness stand.)

3                (Jury returned.)

4                THE COURT:  Okay.  Let's be seated.

5                Mr. Awala, you've had one or two things that you

6   wanted to say to wrap up.  So now it's your opportunity to

7   do that, sir.

8                THE WITNESS:  Yeah.  I just wanted to close my

9   testimony by saying that I experienced a devastated child

10  upbringing from a period of 1975 to 1977.  I was threatened

11  to be taken to a foster care and because of the abuse, my

12  mother was extremely abused on drugs and we live in East New

13  York.

14                MS. MOSKOW-SCHNOLL:  Objection.

15                THE WITNESS:  Brooklyn.

16                THE COURT:  Sustained, Mr. Awala.

17                THE WITNESS:  Your Honor, this is relevant to

18  show --

19                THE COURT:  No, sir, it's not.  And everyone

20  might sympathize very well with an unfortunate childhood,

21  but it's not relevant.  The question isn't how you were

22  treated when you were young, it's where you were born and

23  whether you are a naturalized citizen.  That's the issue

24  and so you need to confine yourself to that, If you have an

25  affirmation to make.

Awala - direct

| 1 | THE WITNESS:  One thing, I did have a birth |
| 2 | date.  I did have a celebration of a birth date.  As far as |
| 3 | I remember my mom, she's tall.  And then those pictures |
| 4 | indicated I had at least one birthday in Brooklyn, New York, |
| 5 | East New York and I have a picture of me.  We went to the |
| 6 | Apollo Theater in New York.  And I was in Apollo Theater as |
| 7 | far as the 2004, I think before I got arrested, and I had |
| 8 | went through competition and they knew that I was there as a |
| 9 | child as well.  And I didn't won the competition.  I was |
| 10 | supposed to return to October for a much bigger opportunity |
| 11 | to go into American Idol, singing basically, and never was |
| 12 | able to go because I was engaged as a citizen.  And when I |
| 13 | got arrested in the situation as far as back as August 12th, |
| 14 | 2004, they never -- I never had any reason to be afraid of |
| 15 | living in this country. |
| 16 | When I came back, I had always had some type of |
| 17 | jobs.  When I came back, I wanted to start cleaning the |
| 18 | streets of United States.  I started doing trash jobs. |
| 19 | That's how much love I had, knowing I was part of the |
| 20 | society, at least knowing I was born in this society. |
| 21 | Any reasonable person, if they knew the outcome |
| 22 | of the situation, most aliens like that I'm not, when they |
| 23 | come back, they always use false names.  They do mainly |
| 24 | things without the use of their own proper identity.  I use |
| 25 | my own name.  And I drove with the right name.  When they |

Awala - direct

1    arrested me, the officer, I didn't possess no threats.  I

2    had no tussle.  I wasn't shaking.  I wasn't out of breath.

3    He told me to drive the truck by myself and I parked the

4    truck and then he said:  What's your name?  I gave him my

5    name.  I didn't have no reason to be afraid of nobody

6    because I came into the country legally and I was allowed to

7    reenter the country not as an alien but as a citizen.  Where

8    the records are, they know.

9              MS. MOSKOW-SCHNOLL:  Objection.

10             THE COURT:  All right.  Sustained.

11             Good enough.  Thanks, Mr. Awala.

12             THE WITNESS:  Might I say the last, please?

13             THE COURT:  If it's your last, yes.

14             THE WITNESS:  I observed in child playing

15   football.  In Africa, they have soccer.  Here, it was all

16   football.  At one point when I picked up the ball and start

17   running, they were looking at me like what the hell is the

18   trouble with this boy?  Because they do not play ball with

19   their own hands, they play with their feet.  These are

20   things that I know about.  Baseball.  And I was accustomed

21   to all this in the culture that came in to me as a child.

22   And that's a fact and I do want you to believe that I'm an

23   American citizen.

24             There are quite essential alternative means of

25   providing U.S. citizenship that I'm qualified for.  When I

B-63

Awala - cross

1  applied for my U.S. citizenship, I applied as someone who

2  was physically present in the United States before but was

3  out of United States into immeasurable circumstances.  And

4  when I applied for the birth certificate, copy of the birth

5  certificate they showed, they told me if I can get it this

6  way, I can get it delayed, I can get it to a Circuit Court,

7  and I had court dates for all this particular privilege but

8  I haven't been able to do it because I'm incarcerated --

9            THE COURT:  All right.

10           THE WITNESS:  -- on these charges.  And I'm

11  looking at 20 years.

12           THE COURT:  All right.  Stop.  Stop.  Mr. Awala,

13  stop.

14           Okay.

15           THE WITNESS:  I would never --

16           THE COURT:  Mr. Awala, you've got to stop.  I'm

17  giving the opportunity now for cross-examination, if you

18  choose to exercise it.

19           MS. MOSKOW-SCHNOLL:  I'll be very brief, Your

20  Honor.

21           THE COURT:  Please.

22                   CROSS-EXAMINATION

23  BY MS. MOSKOW-SCHNOLL:

24  Q.    Mr. Awala, isn't it true that in October 1997, before

25  you were deported, you were convicted of conspiracy to

                        A - 276

Awala - cross

1    commit bank fraud, credit card fraud and mail fraud in New

2    York?

3    A.    As I recall, yes.

4    Q.    Isn't it also true that in November of 1997, before

5    you were deported, you were convicted in New York of forgery

6    for using someone else's credit card to make a $3,500 cash

7    advance?

8    A.    That is correct.

9    Q.    Isn't it also true that in November 1997, before

10   you were deported, you were convicted in New York of

11   criminal possession of a forged instrument for using a

12   counterfeit New Jersey driver's license in the name Jessie

13   Polson?

14   A.    I can't recall that.  I don't see that.

15   Q.    I'll show you a certified record of your conviction

16   and maybe that will refresh your recollection.

17   A.    Well, this particular incident, I was not the only

18   person.  I was in the car with someone and that person had

19   that particular license with him, on him and he was the one

20   driving the car while I was a passenger on it.

21   Q.    Isn't it true you were convicted of that crime?

22   A.    Well, if you have a record of it, I think yes.

23   Q.    Let me show you this, right here.

24   A.    Like I said, all those period of time, I didn't --

25   it's not, this does not outweigh the innocence.  The rule

B-65

Awala - cross

1    609 allow you the benefit when you are dealing with

2    innocence, the use of your priors --

3                THE COURT:  Hold on.

4    A.    -- when is prejudice involved.

5    Q.    I wasn't clear.  My question was, were you convicted

6    of criminal possession of a forged instrument in 1997 in New

7    York?  That was my question.

8    A.    That's correct.

9    Q.    Okay.  Thank you.

10   A.    In this case, it isn't relevant.

11               THE COURT:  All right.

12   A.    Is not the probative body of my being an American

13   citizen.  I have no reason to sit here --

14               THE COURT:  Okay.  Mr. Awala, stop.

15   A.    -- for 20 years.

16               THE COURT:  Mr. Awala.

17   A.    I'm an American citizen.

18               THE COURT:  Mr. Awala, stop.

19               THE WITNESS:  I'm sorry.  The jury hears.

20               THE COURT:  Do you have any other questions,

21   Ms. Moskow-Schnoll?

22               MS. MOSKOW-SCHNOLL:  I don't.  Thank you, Your

23   Honor.

24               THE COURT:  All right.  Now, Mr. Awala, confined

25   only to the things that you were asked in cross-examination,

A - 99 P

Awala - redirect

1   only to those things you were asked in cross-examination

2   about prior convictions, is there anything else you want to

3   say to the jury?

4             THE WITNESS:  Yes, I just want to say that there

5   is part-time of false.  I have cases of individuals who have

6   had false situations where they came into the country.

7             MS. MOSKOW-SCHNOLL:  Objection, Your Honor.

8             THE WITNESS:  And they been themselves.

9             Please.

10            THE COURT:  No, I'm sustaining the objection.  I

11  guess I'm not communicating effectively.  You can't make

12  legal argument to the jury at this time.  Now is the time

13  for testimony about facts.  You were asked questions about

14  prior convictions.  And what I'm saying is if there is any

15  factual statement you want to make about those prior

16  convictions beyond which you have already --

17            THE WITNESS:  Yes.  My statement is that it was,

18  it's unfortunate, it has some negative impact on this

19  particular case because of the nature of that charge.  But

20  when we look at the claim that I brought before the Court,

21  that shouldn't even, that shouldn't even have any impact on

22  your ability to render an impartial verdict.

23            THE COURT:  Okay.  Well, I've give you a chance.

24            THE WITNESS:  It was honest.  Honest mistake.

25            THE COURT:  Mr. Awala, I'll give you a chance to

A - 229

Awala - redirect

1   make that argument, but that is argument and we'll save that

2   for argument later; okay?

3              You may step down, sir.

4              THE WITNESS:  This is the passport.

5              THE COURT:  No.  Mr. Awala -- Mr. Awala.

6              THE DEFENDANT:  I want my mother.  Give me my

7   mother.  I want my mother.  I want my mother.

8              THE COURT:  Have the jury out.

9              THE DEFENDANT:  I want my mother.  I want my

10  mother.

11             (Jury leaves courtroom.)

12             THE DEFENDANT:  I want my mother.  I'm an

13  American citizen.  I want my mother.  I want my mother.  I

14  just want my mother.  Give me my mother.  She is here

15  somewhere.  I want my mother.  I'm an American citizen.  I

16  came legally to this country -- stop me into this country.

17  I want my mother right now.  I want my mother.  You take my

18  passport.  I want my mother.  I want my mother.

19             (Proceedings reconvene in chambers at 10:42

20  a.m.)

21             (Following portion ordered sealed by the Court,

22  bound separately.)

23             (Proceedings reconvene in court out of presence

24  of jury at 10:51 a.m.)

25             THE COURT:  Be seated, please.  All right.

A - 220

1          (Mr. Stretton is on the phone with defendant.)

2          MR. STRETTON:  Your Honor, Mr. Awala is begging

3     to come back.  He says he will behave himself and act

4     appropriately.  He is willing to be chained to his chair, if

5     necessary, but he said he would like to come back.

6          He also said that he would only give up the jury

7     list, which is back at the jail, if he is allowed to come

8     back here tomorrow, but I can't find it here.  I haven't

9     looked at every document.

10         THE COURT:  Well, Mr. Awala is not really in a

11    position to negotiate what he will or won't give.  And, in

12    fact, I'll instruct the Marshal Service to be in touch with

13    the prison, do whatever they have to do to get that jury

14    list back immediately.

15         MR. STRETTON:  I'm going to check here again to

16    see if it's in here.

17         THE COURT:  All right.

18         MR. STRETTON:  Mr. Awala has instructed me to

19    come down to the jail right now, to bring his stuff to him.

20         THE COURT:  Well, that's not happening.  We're

21    going to proceed.  If the phone rings again, we'll

22    disconnect it because I won't have the remainder of the

23    proceedings interrupted.  The tenor of his statements to you

24    make it clear he is not of a frame of mind or in sufficient

25    control of his own behavior to be permitted back in the

A - 231

Awala was a Nigerian citizen and not a United States
citizen.  Instead, the government relied on the
statements of Mr. Awala at the time of his arrest in
2004 and at the time of his deportation in 1999 to
carry the day for them.  Mr. Awala contends his
statements were insufficient and the record does not
support a conviction minus his statements, which he
contends were improperly admitted into evidence without
the jury being instructed on the corpus delicti rule.

     As a result, Mr. Awala respectfully contends the
verdict was against the weight of the evidence and the
evidence was insufficient to support the verdict.

# ALIENS AND CITIZENS (§§ 2556-3421)

KeyCite: Cases and other legal materials listed in KeyCite Scope can be researched through West's KeyCite service on Westlaw®. Use KeyCite to check citations for form, parallel references, prior and later history, and comprehensive citator information, including citations to other decisions and secondary materials.

## VII. RIGHTS, PRIVILEGES, AND DUTIES OF ALIENS LIVING IN THE UNITED STATES [§§ 2287-2676]

### D. ACTIONS BY OR AGAINST ALIENS [§§ 2556-2593]

#### 1. Standing to Sue; Liability to Suit [§§ 2556-2562]

##### a. Actions by Aliens [§§ 2556-2560]

#### § 2556 Resident, including illegal, aliens

**Cases**

Immigration and Nationality Act did not provide jurisdictional basis for aliens' suits seeking to compel the District Director of Immigration and Naturalization Service (INS) and the INS to act on their pending applications for adjustment of status; statute created jurisdiction only over actions by the government. Cordoba v. McElroy, S.D.N.Y.2000, 78 F.Supp.2d 240.

#### 2. Particular Actions [§§ 2563-2570]

#### § 2563 Property actions

**Research References**

West's Key Number Digest, Aliens L.22 (1999).

#### § 2565 Jones Act actions

**Research References**

C.J.S. Admiralty § 77
C.J.S. Seamen §§ 151 to 160
Federal Procedure, L. Ed. § 29:232
Federal Procedure, L. Ed. §§ 30:87 to 30:129
Federal Procedure, L. Ed. § 45:2458
Federal Procedure, L. Ed. §§ 53:133, 53:280
West's Key Number Digest, Admiralty ⟨⟩=1/2(5), 1/2(6), 18, 20, 21; Federal Civil Procedure ⟨⟩=2512; Limitation of Actions ⟨⟩=24:4; Seamen ⟨⟩=1, 2, 4, 6, 11(1), 11(9), 29(11 to 29)(5); Shipping ⟨⟩=1, 8(1), 36(3); States ⟨⟩=18.57; Workers' Compensation ⟨⟩=2035
A.L.R. Digest, Admiralty § 1; Seamen §§ 3, 3.5; Shipping § 2
A.L.R. Index: Barges; Comparative Negligence; Death on the High Seas Act; Jones Act; Seamen; Ships and Shipping
Validity, Construction, and Application of Jones Act, 46 App. U.S.C.A. § 688—Supreme Court Cases, 170 A.L.R. Fed. 587.

---

Federal Procedural Forms, L. Ed. §§ 27:29 to 27:99, 27:114 to 27:113, 27:116 to 27:132, 27:137 to 27:148.
Federal Procedural Forms, L. Ed. § 61:82.
1 Nichol's Federal Administrative Practice § 1115.
13A Cyclopedia of Federal Procedure, 3d § 60.161.
16 Causes of Action 785, Cause of Action for Wrongful Discharge from Employment Retaliation for Exercising Workers' Compensation Rights § 19
2A West's Federal Forms §§ 1695, 1696, 1697, 1698.
3 Cyclopedia of Federal Procedure, 3d § 4.34.
4 Cyclopedia of Federal Procedure, 3d § 9.33.
6A West's Federal Administrative Practice §§ 9.1.1 to 9.4
Devitt, Federal Jury Practice and Instructions §§ 3.9.1.1 to 9.4
Wright & Miller, Federal Practice and Procedure §§ 3525, 3577.

#### § 2569 Actions under Torture Victim Protection Act

**Research References**

Trying to fit a square peg into a round hole: The Foreign Sovereign Immunities Act and human rights violations, 19 Whittier LR 4:707 (1999).

**Cases**

Any failure on part of Immigration and Naturalization Service (INS) to establish requisite good cause to justify making or supporting governing timeliness of petitions to reopen deportation proceedings, to allow aliens to seek relief under United Nation Convention Against Torture, did not establish that failure to show that it was more likely than not that he would face torture if he returned to Nigeria and stick of torture. Efe v. Ashcroft, 293 F.3d 899 (5th Cir. 2002).

Alien, who killed a police officer in a tax cab in Nigeria, did not establish his Convention Against Torture claim since he failed to show that it was more likely than not that he would face torture if he returned to Nigeria and stick of torture. Efe v. Ashcroft, 293 F.3d 899 (5th Cir. 2002).

---

© West, a Thomson business, 5/2004

---

*(Rotated side column, left:)*

### § 3151 No violation where re-entry was with Attorney General's consent

**Cases**

Defendant, charged with having been found illegally reentering the United States without the Attorney General's permission after having been deported subsequent to a conviction for an aggravated felony, cannot be convicted where he alleges that he "was at all times although" he failed to "explicitly allege" although "had not in fact" establish his prior allegation, since a person cannot be deported from the United States unless he or she is an alien, only an alien would have been "found" in the United States against the law, and only an alien needs permission of the Attorney General to reenter the United States. U.S. v. De La Pava, 268 F.3d 157 (2d Cir. 2001).

Statute providing for excludability of alien who was excluded from admission, deported, and who again sought readmission within one year of the deportation, unless in certain circumstances the Attorney General consented to the alien's reapplying for admission, did not impose a strict liability of one alien for admission, but was excluded from admission. Violation of statute imposing such penalties with impunity after the expiration of the one-year period, and thus exception under statute governing the offense of reentry by a deported alien, for an alien who was not required to obtain advance consent for reentry, did not apply to such alien. U.S. v. Morales-Puga, 187 F. Supp. 2d 685 (S.D. Tex. 2002).

#### (b) Burden of Proof [§§ 3153-3166]

##### (i) In General [§§ 3153, 3154]

### § 3153 Overview

**Cases**

Whether illegal reentry defendant was originally deported because of aggravated felony conviction was sentencing factor, not either element of offense which had to be charged in indictment, presented to jury and found beyond reasonable doubt. U.S. v. Garcia, 25 Fed.Appx. 381 (4th Cir. 2002).

Cultural anthropologist would not be allowed to offer opinion with respect to percentage of American Indian blood possessed by alien, who had been arrested and deported from United States without consent of Attorney General, where evidence developed by such expert consisted only of incomplete family tree and relatively inadmissible rumor social evidence; such expert would be allowed to testify only that alien possessed some Indian blood. U.S. v. Curnew, 788 F.2d 1335 (8th Cir. 1986).

In prosecution for reentering the United States after having been deported, government provided adequate evidence concerning defendant's entry into United States, in addition to defendant's confession, government established defendant's identity and deportation, and defendant's mere presence in United States was evidence of his reentry. U.S. v. Corona-Garcia, 210 F.3d (Cal.) 2000, 210 F.3d 973, certiorari denied

---

*(Far left rotated column:)*

### § 3149

levels in sentencing alien for illegal entry into the United States following deportation because of such offense. U.S. v. Estrada-Torres, 179 F.3d 776 (9th Cir. 1999).

Defendant's prior conviction under statute prohibiting reentry by removed alien was properly included in calculation of his criminal history category when sentencing him upon his guilty plea to one count of attempted entry after deportation, even though he was sentenced to "time served" under prior conviction, as opposed to a specific period of time, where, at the time he was sentenced to "time served," he had served 62 days between his arrest and sentence. U.S. v. Rodriguez-Lopez, 170 F.3d 1244 (9th Cir. 1999).

Defendant with prior felony theft conviction was not "found" in United States until after annulled definition of aggravated felony took effect and then only when federal court, which had jurisdiction for unlawful reentry into the United States following deportation, under statute authorizing 20-year sentence for previously deported alien who is unlawfully "found" in the United States and whose removal was subsequent to conviction for commission of an aggravated felony; it was not previous conviction that he would have been "found" earlier, when he was arrested on unrelated charges, had government performed weekend jail checks for illegal aliens and had not left him in the country. U.S. v. Benzono-Castillo, 176 F.3d 1300 (10th Cir. 1999).

Defendant's previous conviction for possession of cocaine was a felony under definition of "drug trafficking crime," and thus, defendant was subject to 20-year enhancement under section for illegally reentering the United States after conviction for an aggravated felony, as cocaine conviction was third-degree felony under Florida law, even though another provision of federal law, under the Controlled Substances Act as a misdemeanor. U.S. v. Simon, 168 F.3d 1271 (11th Cir. 1999).

### § 3150 Constitutionality of statutory provision

**Cases**

Conviction for being found in United States after deportation was not "status offense" violating defendant's due process rights; rather, offense required him to take affirmative act, that is, reentering United States without permission within five years of being deported. U.S. v. Tovias-Marroquin, 218 F.3d 455 (5th Cir. 2000).

Indictment for possession of cocaine had to be dismissed where defendant at the time he was interviewed by government agent regarding possible charge against him for unlawful reentry by removed felon after conviction, even though he was not represented by counsel, requested an attorney and was not then indicted, arraigned, or made initial appearance on unlawful reentry charge at time of interview. U.S. v. Moreno, 122 F. Supp. 2d 679 (E.D. Va. 2000).

20

Ten-year statute of limitations set forth in Torture Victim Protection Act (TVPA) applied to claims asserted under Alien Tort Claims Act (ATCA) against foreign government officials, where survivors of alien who had been killed by other detainee while they were being held in INS detention. Papa v. U.S., 281 F.3d 1004 (9th Cir. 2002).

Plaintiffs had standing to bring action under *Alien Tort Claims Act (ATCA)*, against former Chile's ruling party and prisoner, regardless of plaintiffs' citizenship; ATCA conferred standing only on aliens to bring suit, but United States citizens had standing to vindicate their rights in claims arising under laws of United States. *Estate of Cabello v. Fernandez-Larios*, 157 F. Supp. 2d 1345 (S.D. Fla. 2001).

Members and supporters of political party opposing Zimbabwe's ruling party established standing for injury, and extrajudicial killing under the Torture Victim Protection Act. *Tachiona v. Mugabe*, 216 F. Supp. 2d 262 (S.D.N.Y. 2002).

**Research References**

Against Torture was not defendant to judicial review. *Subliman v. Attorney General*, 212 F. Supp. 2d 413 (E.D. Pa. 2002).

## 3. Federal Court Actions (§§ 2571–2593)

### a. Jurisdiction (§§ 2571–2593)

**§ 2579 Jurisdiction over actions involving immigration laws**

**Cases**

Statute granted district courts jurisdiction over "all causes brought by the United States that arise out of the provisions of the United States law, ... did not provide jurisdiction over suit

Chilean official had standing to bring action under Torture Victim Protection Act (TVPA), against former Chilean military officer, alleging torture, crimes against humanity, and crimes arising in defending treatment. *Flores-Fernandez v. Fernandez-Larios*, S.D. Fla. 2002, 205 F. Supp. 2d 1325.

Forced laborers could establish claim against private corporation under Torture Victim Protection Act based on their assembly of slave logo, as corporation was not state actor, where company was not having sufficient state ties. S.D.N.Y. 2002, 201 F. Supp. 2d 14, affirmed 28 Fed. Appx. 17.

## § 2581 Jurisdiction under Federal Tort Claims Act

**Research References**

What constitutes "claim arising in a foreign country" under 28 U.S.C.A. § 2680(k), excluding such claims from Federal Tort Claims Act. 163 A.L.R. Fed. 187.

**Cases**

Plaintiff, who had originally presented a $75,000 administrative claim for personal injuries, who later amended her claim to increase her demand for damages to $500,000, met the jurisdictional prerequisite under the Federal Tort Claims Act (FTCA) complaint, even though condition of plaintiff's eye had worsened since she filed administrative claim, where plaintiff's loss of sight in her right eye plaintiff's ophthalmologist expressly warned her that the pressure in her eye did not have to allege that her indictment did not serve to define a separate immigration-related offense as prerequisite to more recent intraocular pressure and vision impairment was not reasonably foreseeable when plaintiff filed administrative claim. *Salinas-Olivar v. U.S.*, 149 F. Supp. 2d 1240 (S.D. Cal. 2001).

## § 2583 Jurisdiction under Alien Tort Claims Act

**Research References**

Act and the recognized Collecting section 29 U.S.C.A. and the Alien Tort Claims Act, 107 Yale L.J 2177 (1999).

**Cases**

Judgment orders of the Supreme Court of Indian government alleged that Alien Tort Claims Act (ATCA) seeking "civil remedy" pertaining to Bhopal toxic gas disaster settlement allowed disaster victims to receive their share of a settlement, imposed as a criminal penalty, but did not have any right to pursue civil remedies under the ATCA for violations of international law. *Bano v. Union Carbide Corp.*, 273 F.3d 120 (2d Cir. 2001).

Defendant, 257 F.3d 471 (2d Cir. 2002).

Even though a no human rights instrument related international regulations law various international human rights instrument asserted right of individuals to liberty, security, and freedom of movement and residence, and no treaty or provision of international law of Mexico nor to laws of United States. *Alvarez-Machain v. U.S.*, 266 F.3d 1045 (9th Cir. 2001).

comment on conviction for illegal reentry of someone who had previously committed an aggravated felony, and for deportation only after completion of the prison term. *Tapia-Garcia v. U.S.*, 53 F. Supp. 2d 370 (D.N.J. 1999).

District court would be required, in sentencing defendant for reentering the United States after illegal re-entry, to increase sentence pursuant to guidelines where defendant was convicted of prior aggravated felony, which was the indictment mentioned such conviction. *U.S. v. Avila-Hernandez*, 170 F.3d 271 (2d Cir. 1999).

Illegal reentry defendant's earlier conviction for conspiracy to perpetrate a checking and savings account theft scheme, was held to be an aggravated felony, where defendant pled guilty to conspiracy, on theory that had previously been deported following his conviction for aggravated felony, where defendant had been sentenced to four years imprisonment on that prior conviction. *U.S. v. Barda-Zamora*, 178 F.3d 728 (5th Cir. 1999).

## § 3149 Sentence enhancement or separate offense

**Cases**

Statutory subsection authorizing a sentence of up to 20 years for any alien who illegally reenters the United States after having been previously deported following conviction for an "aggravated felony," where the alien had an aggravated felony conviction, for purposes of the enhanced sentence for illegal reentry, did not serve to define a separate immigration-related offense. Immigration and Nationality Act, § 276(b)(2), 8 U.S.C.A. § 1326(b)(2); Amendment. *Torres v. U.S.*, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (U.S. 1998).

To determine whether statutory subsection authorizing sentence of up to 20 years for any alien who illegally reenters United States after having been previously deported, following conviction of an aggravated felony, merely as a sentencing factor upon alien's felony reentry, rather than an element of a separate, aggravated felony reentry offense, court looked to structure, subject matter, context and history of the statute. Immigration and Nationality Act, § 276(b)(2), 8 U.S.C.A. § 1326(b)(2); Amendment. *Torres v. U.S.*, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (U.S. 1998).

Sentence for illegally reentering the United States after having been deported subsequent to a conviction for commission of an aggravated felony, neither charged in the indictment for felony reentry or admitted in the plea of "guilty." *U.S. v. Mercedes*, 287 F.3d 47 (2d Cir. 2002).

Defendant who had pleaded guilty to illegally reentering after being having been deported was subjected to 16-level enhancement of offense level for having committed aggravated felony applicable under construction of "aggravated felony" applicable in determining alien's eligibility for relief from deportation, not federal felonies' distinct interpretation for illegal reentry from successfully challenging federal felony conviction from subsequently charged in indictment and prevent from increasing maximum sentence on the due process grounds. *U.S. v. Naya*, 189 F.3d 278 (5th Cir. 1999).

In sentencing for entering or being found in the United States, without permission after having been previously deported, the defendant's prior felony convictions had to qualify for a departure after Application Note 5 to the relevant Guidelines, which was to prevent him within the heartland of aggravated felonies contemplated by the Guidelines. *U.S. v. Raylor*, 284 F.3d 303 (4th Cir. 2002).

Defendant convicted of illegal reentry into the United States after being deported was found by immigration and Naturalization Service (INS) as he served two sentences for felony convictions which enhance the sentence; when he reentered United States and was completed until INS found him. *U.S. v. Reyes-Nava*, 169 F.3d 278 (5th Cir. 1999).

Any violation of California statute relating to transportation, importation or sale of marijuana was "illicit trafficking in a controlled substance," which was an "aggravated felony" for purposes of the federal statute providing increased penalty for illegal reentry from deported alien convicted from successfully challenging illegal reentry defendant with prior aggravated felony convictions from increasing maximum sentence for the offense, on the due process grounds had not be charged in indictment and prevent from increasing maximum sentence on due process grounds, to rule of Apprendi v. New Jersey and increasing offense level by 16 levels, rather element of a crime which must be charged in indictment. *Perez-Enriquez*, 295 F.3d 117 (9th Cir. 2002).

Security, 8 C.F.R. § 1103.7.

*c.  Notice of Disclosure of Records*
*[§§ 239, 240]*

### § 239 Subpoena to INS

**Statutes**

The Immigration and Naturalization Service was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. see 6 U.S.C.A. § 1103.7 was redesignated 8 C.F.R. § 1103.7.

Section of Anti-terrorism and Effective Death Penalty Act (AEDPA), eliminating any discretion the Attorney General previously had with respect to deportable aliens, did not apply retroactively to alien against whom deportation proceedings had already been commenced on date of IIRIRA's enactment. Such v. Reno, 184 F.3d 719 (6th Cir. 1999).

Exclusive jurisdiction provision of section of Immigration and Nationality Act (INA) governing judicial review of orders of removal applies only to certain separate and discrete actions in the deportation process, and thus cannot serve as a basis for denying jurisdiction over habeas corpus proceeding brought following entry of a removal order. Sandoval v. Reno, 183 F.3d 667 (8th Cir. 1999).

*d.  Freedom of Information Act (FOIA)*
*Requests [§§ 241–245]*

### § 241 Where to make request

**Statutes**

The Immigration and Naturalization Service was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. see 6 U.S.C.A. §§ 271 et seq.) and Bureau of Citizenship and Immigration Services (see 6 U.S.C.A. §§ 271 et seq.) and Bureau of Border Security (see 6 U.S.C.A. §§ 251 et seq.), both within the Department of Homeland Security.

### § 243 Waiver or reduction of fees

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service (INS) provide information regarding policies, procedures and operational guidelines under the newly established Bureau of Homeland Security, 8 C.F.R. § 1103.7 was redesignated 8 C.F.R. § 1103.7.

### § 244 Disposition of request

**Cases**

Freedom of Information Act (FOIA) did not require that Immigration and Naturalization Service (INS) provide information regarding policies, procedures and operational guidelines under the newly established Bureau of Homeland Security, 8 C.F.R. § 1103.7.

*e.  Privacy Act Proceedings [§§ 246–253]*

### § 246 Request for access to records

**Statutes**

The Immigration and Naturalization Service was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. see 6 U.S.C.A. §§ 271 et seq.) and Bureau of Citizenship and Immigration Services (see 6 U.S.C.A. §§ 271 et seq.) and Bureau of Border Security (see 6 U.S.C.A. §§ 251 et seq.), both within the Department of Homeland Security.

### § 247 Fees

**Regulations**

Title 8 of the Code of Federal Regulations

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. § 1103.7 was redesignated C.F.R. § 1103.7.

### § 249 Exempt records

**Regulations**

28 CFR § 16.99(k), enacted, added in 2003, involve additional types of exemptions available.

*6.  General Proceedings Involving Bond and*
*documents*

### § 255 Approval of bond and related documents

**Cases**

Federal district court did not have jurisdiction to consider alien's contention that he be entitled to individualized bond determination while waiting for deportation in administrative proceeding. Bolante v. Keisler, 506 F. Supp. 2d 958 (M.D. Pa. 1999)

*B.  DEPARTMENT OF JUSTICE*
*[§§ 259–271]*

*1.  Attorney General [§§ 259–268]*

### § 259 Powers and duties under migration laws

**Statutes**

8 U.S.C.A. § 1103 was amended in 2003 to substitute "Secretary" of Homeland Security for "Attorney General".

8 USCA § 1103 was amended in 2003 to substitute "Secretary" of Homeland Security for "Attorney General".

**Regulations**

8 C.F.R. § 2.1 was redesignated 8 C.F.R. § 2.1 was amended in 2003. 8 C.F.R. § 3.1(b) was added to 28 C.F.R. § 65.84(a), may execute writs contingency agreements with state or local enforcement agencies regarding assistance under 8 U.S.C.A. § 1103(a)(8), which may authorize, in the event that the Attorney General determines that such assistance is required during a period of a declared mass influx of aliens. Such contingency agreement must not authorize state or local law enforcement officers to perform any functions of immigration officers. The geographic scope defines that a mass influx of aliens is imminent or occurring and specifically authorize such performance is the boundaries of the mass influx will be defined by the Attorney General. In addition, the Attorney General will define the inclusive time period of a mass influx of aliens by declaring the beginning and the end of it by evolving developments. Also as necessary, the geographic area authorized to amend and redefine by new definition, as necessary, the geographic area defined by the Attorney General to expand or decrease the boundaries. This authority may not be further delegated.

---

General, did not apply to pending cases. San-doval v. Reno, 166 F.3d 225 (3d Cir. 1999).

Habeas jurisdiction continues to exist under transitional rules of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in cases involving purely legal challenges to deportation orders raised by criminal aliens, and that habeas jurisdiction is capacious enough to include constitutional and statutory challenges of those challenges cannot be considered on direct review of a petition for judicial review. Requena-Rodriguez v. Pasquarell, 190 F.3d 299 (5th Cir. 1999).

Immigration and Naturalization Service (INS) acted reasonably in determining that alien who violated his due process rights in his continued detention following his immigration and Naturalization Service (INS) following deportation order violated his due process rights, was governed by permanent provision of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which authorized detention but making it discretionary beyond 90-day period, not by earlier provisions of Anti-Terrorism and Effective Death Penalty Act (AEDPA) requiring detention of all aliens convicted of aggravated felonies, where the immigration order had become final long before IIRIRA's effective date. Thus, court did not determine that alien in custody prior to IIRIRA's effective date were, as a class, subject to mandatory detention, but subsequently taken. Zadvydas v. Underdown, 185 F.3d 279 (5th Cir. 1999).

Alien's due process rights were violated by retroactive application of provision of Anti-terrorism and Effective Death Penalty Act (AEDPA) precluding eligibility for discretionary waivers of deportation to individuals convicted of aggravated felonies, in light of significant evidence that availability of waiver influenced his decision, prior to AEDPA's enactment, to plead guilty to aggravated felony, including the fact that, in entering his plea, he would have been aware that he had the longest sentence he could have received while retaining eligibility for discretionary waiver, fact that sentence was considerable downward departure, and fact that there were legally and criminally relevant before government. Hidomov v. INS, 224 F.3d 692 (7th Cir. 2000).

Alien's due process rights were not violated by retroactive application of section of Anti-terrorism and Effective Death Penalty Act (AEDPA) added certain drug offenses to list of deportable offenses which made criminal aliens ineligible for discretionary waivers, where alien contested deportability, in that he entitled to waiver was an alien and government presented certified copies showing he had been convicted of covered criminal offenses. Musto v. Perryman, 193 F.3d 888 (7th Cir. 1999).

Anti-terrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) did not preclude habeas review of pure questions of law raised by lawful permanent resident, challenging his eligibility for relief from deportability, in that his claim raised questions over challenges to certain exercise of Attorney General, section of Antiterrorism and Effective previously

---

had with respect to deportable aliens applied retroactively to aliens against whom deportation proceedings had already been commenced on date of IIRIRA's enactment. Shah v. Reno, 184 F.3d 719 (8th Cir. 1999).

Deportation proceedings commence, whether for purposes of the Antiterrorism and Effective Death Penalty Act (AEDPA) or the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), with the filing of an order to show cause (OSC) with the Immigration Court, rather than with the service of an OSC upon the alien, even if the Immigration and Naturalization Service (INS) contemporaneously lodges a detainer against the alien. Arizmendi-Montuya v. Sondick, 321 F.3d 1116, 185 A.L.R. Fed. 705 (9th Cir. 2002).

Anti-Terrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) eliminating eligibility for discretionary waivers of deportation for individuals convicted of aggravated felony, in his due process right to meaningful judicial review of his claim that Immigration Judge (IJ) denied him due process by inducing him to plead guilty to aggravated felony by assuring him he was eligible for relief from deportation; alien collaterally attacked validity of deportation order in district court in habeas corpus instinct, thus availing himself of judicial review in light of statutes, procedures and operational guidelines right to judicial review was squarely before Court of Appeals. U.S. v. Herrera-Blanco, 232 F.3d 715 (9th Cir. 2000).

Anti-terrorism and Effective Death Penalty Act (AEDPA) [as amended] pursuant to which the alien, by reason of having committed aggravated felony is ineligible to seek waiver of deportation, applied to alien who had been convicted of aggravated felony prior to AEDPA's effective date, and alien who had placed in deportation proceedings until after AEDPA's effective date, and he had not pled guilty and had exercised his right to trial U.S. v. Herrera-Blanco, 232 F.3d 715 (9th Cir. 2000).

Federal court jurisdiction to hear petitions under general habeas statute challenging deportation was not eliminated or altered by, singularly or in combination, section of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) barring judicial review over challenges to certain exercises of Attorney General, section of Antiterrorism and Effective

© West, a Thomson business, 5/2004

24

## § 260 Powers regarding INS

### Cases

Attorney General was authorized by Congress to cross-designate Border Patrol agents as "officers" with enforcement powers, Attorney General's power to delegate any of his functions to any employee of the Department of Justice, by general delegation statute, by Congress, as substituted for "Attorney General." Than No. 2 of 1973, U.S. v. Perkins, 177 F.Supp. 2d 204 (W.D. Tex. 2001).

## § 261 Powers regarding disciplinary actions against attorneys

### Statutes

8 U.S.C.A. § 1103 was amended in 2003 to substitute "Secretary of Homeland Security" for "Attorney General."

## § 262 Relationship of powers to those of Secretaries of Labor and State

### Statutes

8 U.S.C.A. § 1103 was amended in 2003 to substitute "Secretary of Homeland Security" for "Attorney General."

## § 263 Immigration Emergency Fund

### Regulations

28 C.F.R. § 65.80 was amended in 2002 to provide that the regulations also set forth procedures for implementing U.S.C.A. § 1101 note providing for presidential determination of the existence of an immigration emergency, and for payments from the Immigration Emergency Fund or other funding available for such purposes, to state and local governments for assistance provided in meeting an immigration emergency.

## § 266 — Assistance required by the Attorney General

### Regulations

28 C.F.R. § 65.83(d), added in 2002, permits the Attorney General to authorize any state or local law enforcement officer, with the consent of the head of the department, agency, or

establishment under whose jurisdiction the individual is serving, to perform or exercise certain delegated... [text illegible]

## C. EXECUTIVE OFFICE FOR IMMIGRATION REVIEW [§§ 272–305]

### I. Director [§ 272]

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. As a result, Part 3 was redesignated 8 C.F.R. Part 1003.

## § 272 Powers, delegation and relegation of authority.

### I. Director [§ 272]

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. As a result, Part 3 was redesignated 8 C.F.R. Part 1003.

### 2. Board of Immigration Appeals (BIA)

#### a. In General [§§ 273–278]

#### Regulations

The 8 C.F.R. § 3.1(a), as amended in 2002, now provides for the Board of Immigration Appeals in the Department of Justice, subject to the general supervision of the Director, Executive Office for Immigration Review. The Board Members must be attorneys appointed by the Attorney General. A vacancy, or the absence or unavailability of a Board member, will not impair the right of the remaining members to exercise all the powers of the Board.

8 CFR § 3.1(a)(1), amended in 1998, now provides that there will be in the Department of Justice a Board of Immigration Appeals... The Board shall consist of a Chairman, a Vice Chairman, and thirteen other members. The Board Members must exercise their independent judgment and discretion in considering and determining the cases... [text illegible]

---

© West, a Thomson business.

---

rectly identifies the governing legal principle, but unreasonably applies it to the facts of the particular prisoner's case. Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

An unreasonable application or clearly established federal law by a state court, as used under Antiterrorism and Effective Death Penalty Act (AEDPA), is different from an incorrect... application. Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

Focus of inquiry into whether a state court decision involved an unreasonable application of clearly established federal law, for purposes of federal habeas relief under Antiterrorism and Effective Death Penalty Act (AEDPA), is on whether the state court's application of clearly established federal law is objectively unreasonable. U.S.C.A. 2254(d)(1). Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).

Under Antiterrorism and Effective Death Penalty Act (AEDPA), it is not enough for a federal habeas court to conclude that a state court decision applied clearly established federal law erroneously or incorrectly; rather, that application must also be unreasonable. U.S.C.A. 2254(d)(1). Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).

When the district court, acting sua sponte, recharacterized a federal prisoner's pro se postconviction motion under Rules of Criminal Procedure, the Board will be reduced... [text illegible]. Castro v. U.S., 124 S. Ct. 786, 157 L. Ed. 2d 806 (2003).

Antiterrorism and Effective Death Penalty Act (AEDPA) section eliminating availability of discretionary relief from deportation, precluded a federal court from exercising jurisdiction over... INS v. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001).

Section of Antiterrorism and Effective Death Penalty Act (AEDPA), as interpreted by Board of Immigration Appeals (BIA), to deny discretionary relief from deportation... Cantu v. Reno, 181 F.3d 615 (5th Cir. 1999).

Following passage of Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), any challenge to a criminal alien to an interpretation of the immigration laws or to the constitutionality of such laws as applied to the alien must be raised before the Board of Immigration Appeals (BIA) before it is justiciable. Catney v. I.N.S., 178 F.3d 190 (3d Cir. 1999).

District court had jurisdiction, in habeas claim of alien who have been ordered deported based on commission of drug crime, to consider alien's due process claim that Attorney General violated section of Antiterrorism and Effective Death Penalty Act (AEDPA) striking provision for discretionary relief as to pending cases. Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999).

District courts continue to have habeas jurisdiction to hear challenges by aliens who have been ordered deported for having committed certain crimes listed in Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), notwithstanding section of Antiterrorism and Effective Death Penalty Act (AEDPA) striking relief to pending cases. Sandoval v. Reno, 166 F.3d 225 (3d Cir. 1999).

---

## § 1485

fies the requirements described in one or more of the paragraphs (a) through (f), (i), or (o) of this section, for a nonimmigrant's application. And if a district director determines that an unexpired visa and a passport valid for the amount of time as specified in § 211.1 or § 211.2 are not required in the exercise of his or her discretion, may, on a case-by-case basis, waive the documentary requirements, if satisfied that the nonimmigrant cannot present the required documents because of an unforeseen emergency. The district director or the Deputy Commissioner may, at any time revoke a waiver previously authorized pursuant to this paragraph and notify the nonimmigrant in writing to that effect.

8 C.F.R. § 212.1(g), as amended in 2002, now provides that a district director seeking admission to the United States must present an unexpired visa and a passport valid for the amount of time as specified by a valid biometric border crossing card, issued by the DOS on Form DSP-150, at the time of application for admission, unless the nonimmigrant satisfies the requirements described in one or more of 8 C.F.R. § 212.1(a)—(f), (i), or (o). Upon a nonimmigrant's Application for Waiver of Passport and/or Visa, a district director may, in the exercise of his or her discretion, on a case-by-case basis, waive the documentary requirements, if satisfied that the nonimmigrant cannot present the required documents because of an unforeseen emergency. The district director or the Deputy Commissioner may, at any time, revoke a waiver previously authorized and notify the nonimmigrant in writing to that effect.

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

### § 1486 Obtainable through joint action of INS and consular officers

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

### § 1487 Revocation of waiver

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

### (4) Visa Waiver Pilot Program [§ 1488]

### § 1488 Generally

Statutes

8 USCA § 1187, as amended in 2000, is worded in terms of "program" rather than "pilot program."

Regulations

22 CFR § 41.2(l) was amended in 2002 by

---

executive functions and what proportion would be nonimmigrant. Chang v. Immigration Serv., U.S. Dept. of Justice I.N.S., 48 F. Supp. 2d 22 (D.D.C. 1999).

District court did not have authority to order Secretary of State to issue passport to applicant based on applicant's receipt of an unsigned, undated letter marked "approved," where applicant's passport was not marked approved by appropriate official. Rivera v. Albright, N.D.Ill.1999, 76 F.Supp.2d 862.

### (2)  Transit Without Passport and Visas [§§ 1481—1484]

### § 1481 Generally

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

### § 1482 Limitations for certain foreign nationals

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

### § 1483 Unavailability for certain foreign citizens and foreign nationals

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

### § 1484 Foreign government officials

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

### (3)  Waiver of Documents for Unforeseen Emergency [§§ 1485—1487]

### § 1485 Generally

Regulations

8 CFR § 212.1(g), amended in 2002, provides that a nonimmigrant seeking admission to the United States must present an unexpired visa specified in the Act, or a valid amount of time specified in the Act, or a valid biometric identification card at the time of application for admission, unless the nonimmigrant satis-

---

---

## 3B AM JUR 2D SUPP

tion Appeals could rely solely on judgment of conviction to reverse alien's burden of showing eligibility for deportation relief, considering whether alien had in fact conspired to export firearms, and thus was subject to removal even though statute under which he was convicted encompassed export of both firearms and ammunition and only forfeiture and not fines, imposition as judgment of conviction stated that alien was ambiguously that alien conspired to export both firearms and ammunition. Kuhali v. Reno, 266 F.3d 93 (2d Cir. 2001).

Alien's federal conviction for transporting illegal aliens within United States remained valid for purposes of determining whether conviction was deportable offense, even during judicial review under Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), applies retroactively, Perez v. Elwood, 294 F.3d 552 (3d Cir. 2002).

### § 1826 Retrospective operation of ground

Cases

Amended definition of "conviction," with respect to an alien, as set forth in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), applies retroactively. Perez v. Elwood, 294 F.3d 552 (3d Cir. 2002).

### § 1827 Five-year period applicable to commission of single crime of moral turpitude

Cases

Alien, who was no longer ineligible for reentry under the five-year bar, could not be permanently barred from reentry under subsection rendering inadmissible aliens who made fraudulent representation to obtain a visa. Li v. Eddy, 324 F.3d 1109 (9th Cir. 2003).

### § 1829 What constitutes "crime involving moral turpitude"; factors considered

### § 1830 — Illustrative cases

Cases

Alien's conviction for assault with a dangerous weapon under District of Columbia law was deportable offense, although alien was deportable, because his conviction was for an aggravated felony, offense of assault with dangerous weapon under District of Columbia law included elements of simple assault, along with use of weapon that was likely to produce death or serious bodily injury. Yousefi v. U.S. I.N.S., 260 F.3d 318 (4th Cir. 2001).

### § 1832 — Particular crimes not involving moral turpitude

Cases

Alien's conviction for burglary was not crime of moral turpitude, for purposes of transitional rule of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) precluding appeal by alien deportable by reason of having committed two crimes of moral turpitude, which was the only plausible one, because burglary was not sentenced to only 179 days, as required by one-year requirement for crime of moral turpitude. Alberto Gonzalez v. I.N.S., 215 F.3d 906 (9th Cir. 2000).

### § 1833 What constitutes requisite conviction

Cases

'migration judge and Board of Immigra-

---

for determination of whether alien was entitled to discretionary relief from deportation, consideration of which had previously been denied via an erroneous retroactive application of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA); the alien did not argue that he had spent less than five years in prison for aggravated felony convictions. Familia-Garcia v. Ashcroft, 2003 WL 21649449 (S.D. N.Y. 2003).

tion, even inasmuch as state court ruling had not been presented to agency, and, while alien presumably could have brought amendment to the court's attention by motion to reopen, such motion would not now be binding. Lakowski v. I.N.S., 279 F.3d 644 (6th Cir. 2002).

### § 1835 — Effect of expungement of conviction

Cases

Board of Immigration Appeals' (BIA) construction of statute defining "conviction," for purposes of determining whether alien is removable for having been convicted of aggravated felony, as precluding recognition of subsequent state rehabilitative expungements of convictions, was permissible; under BIA's interpretation was not only plausible one, and entitled to Chevron deference; although BIA's interpretation was silent about expungement, and could well be interpreted as only implicitly what might be effect of later expungement. Murillo-Espinoza v. I.N.S., 261 F.3d 771 (9th Cir. 2001).

As was matter of equal protection, benefits of Federal First Offender Act, under which expungement of first-time simple possession drug offenses will protect against deportation, must be extended to aliens whose offenses —

Even assuming Court of Appeals had jurisdiction to review removal order, it lacked jurisdiction to consider alien's argument that state court's amendment of his sentence to felony with full credit, to provide that conviction was entered nunc pro tunc for imposition of felony and/or para-removal order, inasmuch as state court ruling had not been presented to agency, and, while alien presumably could have brought amendment to...

© West, a Thomson business

---

© West, a Thomson business, 5/2004

---

2004 Cumulative Supplement

**§ 1488**

**Cases**

Alien who, as prerequisite to being allowed to participate in the list of countries designated to participate in the Visa Waiver Program (VWP), by changing all references to refer, enter the United States under the approved Visa Waiver Pilot Program (VWPP) by adding paragraph to require that an alien during or after seeking admission into the United States.

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

*Alien who, as prerequisite to being allowed to enter the United States under the approved Visa Waiver Pilot Program (VWPP), waived her right to contest her deportation except on basis of asylum, also waived her right to contest the immigration and naturalization decision to terminate her application for suspension of her deportation proceedings which it had mistakenly brought against her. Wigglesworth v. I.N.S., 319 F.3d 951 (7th Cir. 2003).*

Waiver Pilot Program (VWPP) and the Visa Waiver Program (VWPP) have been admitted under Visa authorized 90-day period are not entitled to deportation hearing; any rights to such hearing would be the wholly statutory and administrative, and Congress, through its statutory scheme for immigration and naturalization Service (INS) decision to terminate formal deportation proceedings, and those authorities did not to grant any such rights. Auguste v. Reno, 140 F.3d 1373 (11th Cir. 1998).

Even aliens who entered United States under Visa Waiver Pilot Program (VWPP) enter as a tourist for 90-day maximum period without waived his due process right to a deportation hearing, except for seeking asylum, although alien signed form waiving his right to a contest deportation determination, alien remained in United States following expiration of 90-day period, and alien did not claim that his waiver was minor and involuntary. Polizzi v. Jenifer, 317 F. Supp. 2d 811 (E.D. Mich. 2002).

Assuming that alien who entered United States under Visa Waiver Pilot Program (VWPP), which allowed aliens from certain countries to enter as a tourist for 90-day period, such that the signing of waiver was not voluntary, due process right was not violated, where his detention in excess of 90-day period, and order of deportation, which he requested, after the process right was not violated, where his detention in excess of 90-day period, and order of deportation, which he requested, after his staying deportation was imminent. Polizzi v. ", 217 F. Supp. 2d 811 (E.D. Mich. 2002).

---

**(b)  Revocation of Visa (§ 1489)**

**§ 1489 Generally**

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

---

**(6)  Particular Categories of Nonimmigrants (§§ 1490–1496)**

**§ 1490  Canadian nationals and certain Bahamian nationals and British subjects**

**Regulations**

8 C.F.R. § 212.1(a), as amended in 2003, implements the visa waiver for Canadian citizens, British subjects in Bermuda, and certain aliens from other islands.

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

---

**§ 1491  British, French, and Netherlands nationals and nationals of certain Caribbean Islands**

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

---

**§ 1492  Bearers of Mexican diplomatic or official passports**

**Statutes**

8 U.S.C.A. § 1101(a)(15)(F) and 8 U.S.C.A. § 1101(a)(15)(J), regarding students, were amended in 2002, as to aliens when the Border Crossing Cards. It adds the requirement that the biometric identifier on any BCC presented must be matched to the Mexican alien presenting the BCC at time of admission before the alien will be permitted to enter the United States.

**Regulations**

8 C.F.R. § 212.1(c)(3), added in 2002, provides for the use of biometric BCCs by Mexican nonimmigrants. Under 8 C.F.R. § 212.1(c)(1)(i), now provides that the purpose of applying for a Mexican passport or other official Mexican document that a Mexican can consular officer own the United States side of a passport, or a B-1/B-2 Visa/BCC tional who is applying for a B-1/B-2 Visa/BCC and who meets the conditions for waiver of the passport requirement in § 41.32(a)(b)(i)(i)

---

lation based upon his marriage to United States citizen, where immigration judge, by insisting that it was appropriate to testify to bona fides of marriage even though she was photographing, and fingerprinting requirements of admission 8 C.F.R. § 264.1(b) that relate to the maintenance of nonimmigrant status as advise alien of other evidence that he could produce to prove bona fides of marriage, by suggesting that alien would not be entitled to procedural rights if she were still in love, gave vented alien from producing relevant evidence in support of his application. Ageyman v. I.N.S., 296 F.3d 871 (9th Cir. 2002).

Alien who obtained lawful permanent resident status through a fraudulent marriage, but subsequently married a lawful permanent resident, could be forgiven the fraud and maintain lawful permanent resident status through a waiver of deportation. alien was not precluded for purposes of seeking waiver of deportation. Pena v. I.N.S., 236 F.3d 1055 (9th Cir. 2001).

---

**d.  Alien Involved in Smuggling Other Aliens (§ 1823)**

Immigration and Nationality Act (INA) not violate alien's rights under Equal Protection of alien, as INS's appeal to the Board of Immigration Appeals (BIA) was not based on frivolous grounds. Ochoa v. Gonzales, 406 record reflected that INS timely filed its operating brief before the BIA. De Araujo v. I.N.S., 16 Fed. Appx. 624 (9th Cir. 2001).

**3.  Aliens Convicted of Criminal Offenses (§§ 1824–1862)**

**§ 1823 Generally**

**Cases**

Immigration and Nationality Act (INA) not violate alien's rights under Equal Protection. Clause by rendering him ineligible for discretionary relief. Fonseca-Faneron v. U.S. Atty. Gen., 246 F.3d 1317 (11th Cir. 2003).

---

**§ 1815 Estopped against government**

**Cases**

Immigration and Naturalization Service (INS) was not estopped from pursuing deportation of alien, as INS's appeal to the Board of Immigration Appeals (BIA) was not based on frivolous grounds. Ochoa v. Gonzales...

---

**b.  Alien Present in Violation of Law (§§ 1817, 1818)**

**§ 1817 Generally**

**Cases**

Alien who overstayed in the U.S. after entry on a tourist visa, and who then left U.S. soil even by flying to Canada, was a removable alien and remained in the country illegally until his trip to Canada constituted a leaving of the U.S. Yoon v. Ashcroft, 55 Fed. Appx. 702 (6th Cir. 2003).

---

**a.  General Crimes (§§ 1824–1840)**

**§ 1824 Generally**

**Cases**

Alien's Massachusetts conviction for indecent assault and battery was a conviction for a "crime involving moral turpitude" within meaning of statute authorizing deportation of alien convicted of two or more crimes, each element of such crimes, lack of consent was element of such felony was "deportable," within meaning of statute providing for deportation of alien who, at any time after admission, is convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. Mugijemana v. I.N.S., 181 F.3d 87 (1st Cir. 1999).

Alien who was subject of removal proceedings as an aggravated felon and deportable by reason of having committed an aggravated felony was "deportable," within meaning of statute providing for detention of alien who is deportable, and thus could be mandatorily detained, as opposed to the issue having been determined; that alien had been incarcerated in excess of five years, and thus, remand to the Board Immigration Appeals (BIA) was not warrant...

---

**c.  Alien Who Violated Status or Whose Status Terminated (§§ 1819–1822)**

**§ 1819 Generally**

**Regulations**

8 C.F.R. § 214.1(f), as amended in 2002.

---

© West, a Thomson business, 5/2004

Case 1:07-cv-00110-SLR    Document 2-2    Filed 02/22/2007    Page 116 of 147

of an alien which revealed that alien had been deported did not require suppression of alien's identity or his immigration and Naturalization Service (INS) file in subsequent prosecution for illegal re-entry into the United States. U.S. v. Roque-Villanueva. 175 F.3d 345 (5th Cir. 1999).

### 8. Right to Purchase and Own Firearms and Ammunition [§§ 2334, 2335]

#### § 2324 Federal law

**Regulations**
8 CFR § 178.11 was annotated in 2002 to add definitions for "admitted to the United States for lawful hunting or sporting purposes," "alien," "friendly foreign government," "hunting license or permit lawfully issued in the United States," and "nonimmigrant alien."

### B. EMPLOYMENT RIGHTS [§§ 2328-2527]

### 1. Employment Authorization [§§ 2328-2356]

### a. Aliens Authorized to Accept Employment [§§ 2328-2345]

### (1) Employment Incident to Status [§§ 2328-2332]

#### § 2328 Classes of aliens who may be employed

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

**Cases**
Practice of employer in requiring prospective employees to produce two items of identification to establish eligibility for employment did not create additional burdens to any class of applications or constitute differential treatment of authorized aliens and citizens, and thus did not result in discrimination, showing of which would be required to establish that practice violated "document abuse" provision of Immigration Reform and Control Act, which prohibits employer from requesting more or different documents from prospective employees than required to satisfy Act's requirements. Robison Fruit Ranch, Inc. v. U.S., 147 F.3d 798 (9th Cir. 1998).

Special Agricultural Worker (SAW) applicant demonstrating availability of relative to harvest seasonal crops, who were explicitly admitted into country for purpose of performing agricultural work, satisfied purpose-of-admission requirement set forth in Ninth Circuit for good-hand decision for exemption from Federal Insurance Contributions Act (FICA). In re Sun World Intern., Inc., 217 B.R. 281 (C.D. Cal. 1998).

#### § 2329 Nonimmigrants

#### § 2330 — Employment of nonimmigrants with specific employer

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

### (2) Who Must Apply for Employment Authorization [§§ 2333-2338]

#### § 2333 Generally

**Regulations**
8 C.F.R. § 214.2(f) was amended in 2002 to revise special requirements for admission, extension, and maintenance of status of students and exchange visitors.

In 1998, the Commissioner of the Immigration and Naturalization Service temporarily suspended the F-1 student visa and certain requirements in 8 CFR § 214.2(f)(9) governing on-campus and off-campus employment for nonimmigrant aliens who have been admitted to the United States in F-1 classification.

8 C.F.R. § 214.2(m) was amended in 2002 to revise special requirements for employment for F-1 and M-1 students.

8 CFR § 274a.12(c)(23), added in 2000, also provides for aliens who apply for employment authorization who are Irish peace process cultural and training program visitors (Q-2), pursuant to § 214.2(q)(15) of this chapter and in this status may only accept listed employment as specified.

8 C.F.R. §274a.12(b) and (c), as amended in 2002, provide for enrollment in an approved institution for one full academic year.

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 208 was redesignated 8 C.F.R. Part 1208. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212. 8 C.F.R. Part 236 was redesignated 8 C.F.R. Part 1236. 8 C.F.R. Part 240 was redesignated 8 C.F.R. Part 1240, except for 8 C.F.R. § 240.25. Further, 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245. 8 C.F.R. Part 248 was redesignated 8 C.F.R. Part 1248 and 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

#### § 2334 Aliens subject to pending deportation or exclusion proceeding

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

States and who are also classified as either Q-2 or Q-3 nonimmigrants may be included in the application.

#### § 2282 Grant of application; conditions of new classification

**Regulations**
8 CFR § 248.3(d), added in 2000, provides that any alien classified as a Q-2 nonimmigrant who requests a change to another nonimmigrant classification, must file Form I-539, with appropriate fee, to the Nebraska Service Center. Any spouse or minor children of the principal alien who are in the United States and who are also classified as either Q-2 or Q-3 nonimmigrants may be included in the application.

#### § 2283 Denial of application; denial or subject to administrative appeal

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 103 was redesignated 8 C.F.R. Part 1103. 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

### VII. RIGHTS, PRIVILEGES, AND DUTIES OF ALIENS LIVING IN THE UNITED STATES [§§ 2287-2676]

### A. CONSTITUTIONAL AND STATUTORY RIGHTS [§§ 2287-2555]

### 1. In General [§§ 2287-2290]

#### § 2287 Allegiance and obedience to, and rights and protection under, U.S. laws

**Statutes**
8 USCA § 1101a(15)(U) was added as part of the Violence Against Women Act of 2000 to establish a new U visa for nonmaterial witness non-immigrant classification.

#### § 2288 Rights, privileges, duties, and obligations under treaties

**Cases**
Coast Guard's seizure of defendant beyond territorial waters of United States aboard vessel sailing under Brazilian flag did not violate any treaty between United States and Brazil, and therefore district court had personal jurisdiction over defendant in prosecution for alleged violation of United States immigration laws despite potential violation of international law arising from government's failure to secure Brazil's consent to intercept vessel and detain defendant. U.S. v. best, 304 F.3d 308 (3d Cir. 2002).

### 2. Overview of Constitutional Rights [§§ 2291-2295]

#### § 2291 Aliens as lacking right to enter and remain in United States

**Cases**
Continued detention of excludable alien

while Immigration and Naturalization Service (INS) attempted to secure his deportation to the People's Republic of China did not deny his due process of law or constitutional guarantee against cruel and unusual punishment, where alien was never admitted to the United States and was only in the country legally, he had neither a statutory nor constitutional right to immigration parole. Zheng v. I.N.S., 207 Supp. 2d 550 (E.D. La. 2002).

#### § 2292 Constitutional rights of aliens in United States

**Research References**
Advising the nonitizen client, 12 Am J Fam L 122 (1999).

**Cases**
Prohibitions against providing material support or resources to foreign terrorist organization, which are contained in Antiterrorism and Effective Death Penalty Act (AEDPA), did not, within First and Fifth Amendments, giving Secretary of State "unfettered discretion" to limit citizens' right to associate with certain foreign organizations. Humanitarian Law Project v. Reno, 205 F.3d 1130 (9th Cir. 2000).

Because an alien's continued eligibility from deportation was not a liberty or property interest warranting due process protection, immigration judge's error in failing to advise alien of his eligibility for such relief did not render his deportation proceeding constitutionally unfair so as to permit alien to collaterally attack in prosecution for illegal re-entry alien after deportation. U.S. v. Sotelo-Mendoza, 23 F. Supp. 2d 671 (W.D. Tex. 2002).

#### § 2294 Limitations on certain rights

**Regulations**
8 CFR § 236.6, added in 2002, provides that no person, including any state or local government entity or any privately operated detention facility that houses, maintains, provides services, or otherwise holds any detainee on behalf of the Service, and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, can disclose or otherwise permit to be made public the name of or other information relating to such detainee. Such information will be under the control of the Service and will be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders. Insofar as any detainee or other records contain such information, such documents will not be public records.

#### § 2295 Provisions applicable to citizens only

**Cases**
Aliens' deportation would not operate to deprive them of citizens' constitutional rights to reside in United States. Noriega-Lopez v. Ashcroft, 71 Fed. Appx. 151 (3d Cir. 2003).

### 3. Due Process [§§ 2296-2299]

#### § 2296 Summary of Fifth and Fourteenth Amendment rights

**Cases**
In context of immigration hearing, due pro-

cess requires that aliens threatened with deportation are provided right to full and fair hearing that allows them reasonable opportunity to present evidence on their behalf. Al-Khidr v. Ashcroft, 330 F.3d 587 (3d Cir. 2003).

Continued detention of alien who was excludable under Immigration and Naturalization Act, but whose country of origin had refused to allow his return, violated alien's due process rights, where alien was repeatedly denied parole on basis of some vague references in his file that listed years-old convictions for firearm, attempted robbery, and bail jumping offenses, and no inquiry was made to ascertain whether threat to community posed by alien. Rosales-Garcia v. Holland, 322 F.3d 386 (6th Cir. 2003).

Alien had no property or liberty interest in "right" to discretionary relief from deportation, and required to support Fifth Amendment due process claim. Chim Ngav v. I.N.S., 192 F.3d 390 (3d Cir. 1999).

Immigration Judge (IJ) did not demonstrate bias, so as to deny alien due process, in urging into her personal life and moral character by asking questions at conclusion of hearing, inasmuch as she had relieved the INS of that burden when he conceded his excludability during immigration proceedings. Selami v. INS, 423 F.3d 854 (7th Cir. 2002).

An alien held in a lawful manner deprived of the process when the Immigration and Naturalization Service (INS) failed to give him adequate and timely notice before his entry was effected. U.S. v. Jauregui, 314 F.3d 961 (8th Cir. 2002).

Since discretionary relief from deportation is a privilege created by Congress, denial of such relief cannot violate a substantive due process right protected by the due process clause. Munoz v. Ashcroft, 339 F.3d 950 (9th Cir. 2003).

Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent. Ramirez-Alejandre v. Ashcroft, 319 F.3d 365 (9th Cir. 2003).

Aliens enjoy due process right to the effective assistance of counsel in deportation proceedings. Obaya v. U.S. Atty. Gen., 342 F.3d 1216 (11th Cir. 2003).

Fifth Amendment guarantees aliens due process of law in deportation proceedings. Chacon-Corral v. Weber, 259 F. Supp. 2d 1151 (D. Colo. 2003).

Physical presence in the United States alone, by grace of the executive giving tempo-

rary harborage, does not extend the constitutional protection over every person legally admitted. U.S. ex rel. Soto-Ramirez v. U.S. 228 F. Supp. 2d 566 (M.D. Pa. 2002).

### 4. Equal Protection (§§ 2300–2305)

#### § 2300 Fourteenth Amendment guarantees

**Cases**

Practice of employer in requiring prospective employees to establish eligibility for employment by means of application to establish additional burden to any class of application or constitute differential treatment of authorized aliens and citizens and of which would be required to establish that thus did not violate document and citizens and of which would be required to establish that would satisfy Act's requirements. Zavala v. Wal-Mart Stores, Inc. 393 F. Supp. 2d 295 (D.N.J. 2005).

### § 2302 — Review standards for classifications based on alienage

**Cases**

Rule prohibiting alien who illegally reentered country following deportation from applying for discretionary relief from deportation was rationally related to government's interest in discouraging individuals from entering country illegally, because illegal reentries put safety of aliens and law enforcement at risk. Aguilera-Perez v. Gonzales v. Ashcroft, 342 F.3d 667 (7th Cir. 2003).

Under rational basis review applicable on any basis or classification that distinguishes aliens who legally entered the United States from those who fingerprinting occurred only after INS agent interviewed alien, distinction made by government need only articulate rational reason for making distinction, and need not

© West, a Thomson business, 5/2004

provide any evidence to support rationality of classification. Robledo-Gonzales v. Ashcroft, 342 F.3d 667 (7th Cir. 2003).

Departure Control checkpoint at Virgin Islands airport, at which passengers bound for continental United States were temporarily detained by Immigration and Naturalization Service (INS) for proof of citizenship, violated equal protection rights of passenger who allegedly provided inadequate documentation, since there was no rational basis for distinguishing between United States territories and noncontiguous states, which were not subject to detention requirement. U.S. v. Pollard, 209 F. Supp. 2d 525 (D.V.I. 2002).

### § 2304 Fifth Amendment provisions

**Cases**

Construing Immigration and Naturalization Act to bar discretionary relief to aliens in exclusion proceedings, but not those in deportation proceedings, violated equal Protection Clause guaranteed by the Fifth Amendment. Wallace v. Reno, 39 F. Supp. 2d 101 (D. Mass. 1999).

### § 2311 Provisions and effect of Hate Crime Statistics Act

**Research References**

Hate Crimes and Liability for Bias-Motivated Acts, 57 Am. Jur. Proof of Facts 3d 1.

### 6. Right to Be Free From Unreasonable Searches (§§ 2312–2320)

### § 2314 Basis for search or questioning—reasonable suspicion

**Cases**

Defendant's fingerprints were obtained by exploiting defendant's illegal detention following illegal traffic stop, instead of by means sufficient to purge taint of initial illegality, in absence of evidence that fingerprints were obtained during routine booking procedure, requiring that fingerprints be suppressed, being suppressed being full illegal alien found in United States after deportation; defendant did not consent to fingerprinting, fingerprints were obtained as result of subsequent investigation, and interviewed only after INS agent apprised alien of grounds for suspicion that he was illegal alien, and he thereafter admitted as much, fingerprints taken of apparent defendant upon entering to search for suspected terrorist, agents inevitably would have

had justification for sweep to search apartment occupied by defendant, where INS agent's arrest of defendant, for purpose of effecting fraud and misuse of visas and fraud in connection with identification documents, agents would have asked defendant for identification, registration card, which he could not produce, arrested defendant and been entitled to conduct search of small apartment to protect arresting officers, and agents could have immediately located that alien identification document. U.S. v. Quaye, 23 F.3d 656 (6th Cir. 2002).

### § 2316 — Probable cause

**Cases**

Border patrol officer had reasonable cause to arrest defendant, for purpose of violating statute providing that officer may arrest person without a warrant if officer has reason to believe such person has committed felony, where informant told officer that such person was committing felony, and informant, confirmed information from confidential informant, confirmed by immigration and Naturalization Service (INS) that defendant was committing felony of transporting aliens, provided probable cause for commission of felony, and also provided probable cause for arrest by commission of felony and deportation. U.S. v. Orozco-Velasquez, 282 F.3d 1530 (8th Cir. 2002).

### § 2317 Airport inspections

**Cases**

Immigration and Naturalization Service (INS) agents acted within their statutory authority in looking through defendant's luggage while he was temporarily detained in Hawaii, and after they had been informed by INS agents stationed in Guam that defendant might be involved in smuggling aliens in their attempt to enter United States illegally. U.S. v. Teal, 292 F.3d 690 (9th Cir. 2002).

Immigration and Naturalization Service (INS) Departure Control checkpoint at Virgin Islands airport, at which passengers bound for continental United States were temporarily detained for proof of citizenship, constituted unreasonable seizure in violation of passenger's interest in individual liberty and expectation of privacy that clearly outweighed any public interest in detaining passengers, since there was no individual immigration law enforcement problem in policing Virgin Islands' international border, checkpoint was ineffective in its avowed purpose of catching illegal aliens, and there was nothing impractical about requiring reasonable suspicion based on particularized study of passengers walking through airport before accosting them. U.S. v. Pollard, 209 F. Supp. 2d 525 (D.V.I. 2002).

**Cases**

Border patrol agent's allegedly illegal stop

### § 2318 — Suppression of evidence of illegal activities unrelated to immigration status

2004 Cumulative Supplement

was appropriate to sua sponte reopen deportation proceedings to consider application for adjustment of status, it failed to consider factors in alien's favor, that his adherence to the misinformation provided by Immigration and Naturalization Service (INS) officer caused status violation, since he reasonably believed, given that he did not take advantage of procedural avenues to delay deportation, that he was not represented by counsel at time in question, and that marriage upon which he based application was not fraudulent, and therefore INS's failure to consider all of this in bringing deportation proceedings to quick conclusion. Saccgo-Gonzalez v. I.N.S., C.A.9 (Cal.) 2002, 308 F.3d 825, rehearing en banc granted.

## § 322 Ruling on motion

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security, 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003

8 C.F.R. § 3.2(c), as amended in 2002, also provides that any motion for reconsideration or to reopen of a decision rendered by the Board member ... is referred to as the screening panel for disposition by a single Board member, unless the screening panel member determines, in the exercise of judgment, that the decision for reconsideration or reopening should be assigned to a three-member panel under specified standards.

### 3.  Office of Chief Immigration Judge; Immigration Judges (§§ 323–325)

#### a.  In General (§§ 323–325)

## § 323 Powers and duties

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security, 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

### Cases

Immigration Judge's failure to advise alien of his right to appeal bail amount, before he waived appeal of denial of application for waiver of deportation, did not violate due process; alien understood his right of appeal and freely chose to waive it rather than remain in custody, knowing that he would forever lose his adjustment of residence status. U.S. v. Cortilez-Beltran, 192 F.3d 1311 (9th Cir. 1999.

## § 324 Immigration judges; powers and duties

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland

Security, 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

### Cases

Federal court jurisdiction over stowaway alien's plea that his asylum application be heard by immigration judge (IJ) in hearing instead of by Immigration and Naturalization Service (INS) in informal interview was not precluded by section of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) depriving courts of jurisdiction to hear alien's claim arising from decision or action by Attorney General to commence proceedings, adjudicate cases, or execute removal orders. Selgeka v. Carroll, 184 F.3d 337 (4th Cir. 1999.

District court lacked jurisdiction to order deportation of drug trafficking, inasmuch as IJ had exclusive jurisdiction, under IIRIRA provided that hearing before immigration judge ... exclusive procedure for determining whether alien ... should be removed. U.S. v. Miguel, 184 F.3d 1289 (11th Cir. 1999.

## § 325 — Disqualification

### Cases

Even assuming that alien charged with illegal re-entry after removal was able to show that Immigration and Naturalization Service (INS) officer who presided over removal procedure was regularly involved in investigation and prosecution of immigration offenses, no prejudice could be inferred. In support of permitting alien to collaterally attack prior order, where sufficient to undermine validity of alien's deportation, or discretion to grant alien, as an aggravated felon, relief from deportation. U.S. v. Garcia-Martinez, 228 F.3d 956 (9th Cir. 2000.

#### b.  Listing of Free Legal Services (§§ 326–330)

## § 326 Maintenance and availability of listing

### Regulations

8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003. 8 C.F.R. Part 292 was redesignated 8 C.F.R. Part 1292.

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security, 8 C.F.R. § 11 was redesignated 8 C.F.R. § 1011.1.

## § 327 Application for listing

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security, 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003; 8 C.F.R. Part 292 was redesignated 8 C.F.R. Part 1292.

## § 328 Approval or denial of listing

### Regulations

Title 8 of the Code of Federal Regulations

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security, 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216.

### (2)  Orphan Petitions and Advanced Processing Applications (§§ 660–726)

#### (a)  Introduction (§§ 660–662)

## § 660 Eligibility for adoption

### Statutes

8 USCA § 1101(b)(1)(F), was redesignated 8 USCA § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i) was adopted abroad, or is coming to the United States for adoption, by the adoptive parent, or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(F)(i) except that the child was under the age of 18 years at the time the petition was filed.

## § 661 — Child already in United States

### Statutes

8 USCA § 1101(b)(1)(F), was redesignated 8 USCA § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i) was adopted abroad, or is coming to the United States for adoption, by the adoptive parent or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(F)(i) except that the child was under the age of 18 years at the time the petition was filed.

## § 662 Who may file petition

### Statutes

8 USCA § 1101(b)(1)(F), was redesignated 8 USCA § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i) was adopted abroad, or is coming to the United States for adoption, by the adoptive parent or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(F)(i) except that the child was under the age of 18 years at the time the petition was filed.

#### (b)  Form of Filing (§§ 663–666)

## § 663 Petition—filed alone

## § 665 — Fees required with no approved or pending advanced processing application

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security, 8 C.F.R. § 103.7 was redesignated 8 C.F.R § 103.7.

8 C.F.R. § 103.7(b)(1), amended in 2000, re-

flects that not all Form I-129 petitions must be accompanied by a $500 filing fee. The regulation now provides that only certain LIFE applicants must be submitted with the $500 filing fee.

8 C.F.R. § 103.7(b)(1), amended in 2001, added fees for Premium Processing Service and for adjustment under LIFE Legalization.

8 C.F.R. § 103.7(b)(1), amended in 2002, added fees for filing an application to classify an alien as a nonimmigrant, victim of a severe form of trafficking in persons and alien immediate family members, as defined in 8 C.F.R § 214.11.

8 C.F.R. § 103.7(b)(1), as amended in 2003, changes the base fee and additional fees required under Form I-129 for a nonimmigrant worker. It also provides certain fee exemptions.

## § 666 Advanced processing application

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security, 8 C.F.R. § 103.7 was redesignated 8 C.F.R § 103.7.

8 C.F.R. § 103.7(b)(1), amended in 2000, reflects that not all Form I-129 petitions must be accompanied by a $500 filing fee. The regulation now provides that only certain LIFE applicants must be submitted with the $500 filing fee.

8 C.F.R. § 103.7(b)(1), amended in 2001, added fees for Premium Processing Service and for adjustment under LIFE Legalization.

8 C.F.R. § 103.7(b)(1), amended in 2002, added fees for filing an application to classify an alien as a nonimmigrant, victim of a severe form of trafficking in persons and alien immediate family members, as defined in 8 C.F.R § 214.11.

8 C.F.R. § 103.7(b)(1), as amended in 2003, changes the base fee and additional fees required under Form I-129 for a nonimmigrant worker. It also provides certain fee exemptions.

#### (c)  Supporting Documentation (§§ 674–675)

##### (i)  Advanced Processing Application (§§ 674, 675)

## § 674 Required documentation

8 C.F.R. § 204.3(c)(1)(iv), (vi), regarding fingerprint cards, were removed in 1998.

##### (ii)  Petition for Identified Orphan (§§ 676–683)

## § 677 Petition filed after approval of advanced processing application

### Statutes

8 USCA § 1101(b)(1)(F), was redesignated 8 USCA § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i) was adopted abroad, or is coming to the United

© West, a Thomson business, 5/2004

2004 Cumulative Supplement

## § 680 Petition filed concurrently with advanced processing application

States for adoption, by the adoptive parent, or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(F)(ii) except that the child was under the age of 18 years at the time the petition was filed.

## § 702 Generally

**Regulations**

8 CFR § 204.4(f)(1)(iv), regarding fingerprint cards, was removed in 1998.

### (g) State Preadoption Requirements [§§ 702–705]

## § 704 Special circumstances

**Statutes**

8 USCA § 1101(b)(1)(F) was redesignated § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i), was adopted abroad, or is coming to the United States for adoption, by the adoptive parent, or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(F)(i) except that the child was under the age of 18 years at the time the petition was filed.

### (iii) Adjudication and Decision [§§ 707–724]

### (iv) Revocation of Approved Application or Petition [§ 725]

## § 725 Automatic revocation, revocation based on subsequent information

**Regulations**

Title 8 of the Code of Federal Regulations

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1205.

## § 727 Filing petition

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1205.

### (3) American Petitions [§ 726–747]

#### (a) In General [§§ 726–728]

**Regulations**

8 CFR § 204.4(d)(1), amended in 1998, provides for a Form I-360, Petition for Amerasian, Widow or Special Immigrant, filed on behalf of an Amerasian child of a United States citizen, to be filed without completed fingerprint cards, and requires sponsors of Amerasian children to appear at a Service office, or other location designated by the Service, for fingerprinting in accordance with the new fingerprinting procedures being established in 8 CFR § 103.2(e).

## § 735 Abandonment and revival of petition

**Regulations**

8 CFR § 204.4(d)(1), amended in 1998, provides for a Form I-360, Petition for Amerasian, Widow or Special Immigrant, filed on behalf of an Amerasian child of a United States citizen, to be filed without completed fingerprint cards, and requires sponsors of Amerasian children to appear at a Service office, or other location designated by the Service, for fingerprinting in accordance with the new fingerprinting procedures being established in 8 CFR § 103.2(e).

## § 788 One- and two-stage processing [§§ 729–735]

**Regulations**

8 CFR § 103.7(b)(1), amended in 2001, added fees for Premium Processing Service and for adjustment under LIFE Legalization.

8 CFR § 103.7(b)(1), amended in 2002, added as a "T nonimmigrant," victims of a severe form of trafficking in persons and their immediate family members, as defined in 8 CFR § 214.11.

8 CFR § 103.7(b)(1), as amended in 2003, changes the base fee and additional fees required under Form I-129 for a nonimmigrant worker. It also provides certain fee exemptions.

### (b) Information and Determinations [§§ 729–735]

## § 315 Disclosure of judicial and criminal proceedings

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

**Cases**

Statute which criminalizes reentry into United States by previously deported aliens was permissible exercise of Congress's sweeping powers over immigration matters. U.S. v. Hernandez-Guerrero, 147 F.3d 1075 (9th Cir. 1998).

## § 316 Filing requirements

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

## § 317 Briefs and requests for oral argument

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

## § 318 Effect of departure from United States

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

## § 319 No automatic stay of deportation

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

**Cases**

Congress intended that the automatic stay of deportation and the work authorization for illegal aliens seeking legalization under the

## § 320 Consideration of motion to reopen

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003. 8 C.F.R. § 3.1(a)(1), amended in 1999 provides that in addition, a single Board Member may exercise such authority as the Chairman, or Vice Chairman, may delegate to remand the matter to the Regional Service Center Director where the matter be remanded to the Service for further consideration of the appeal.

**Cases**

Board of Immigration Appeals (BIA) abused its discretion when, in determining whether it

© West, a Thomson business, 5/2004

founded fear of persecution sufficient to support an asylum claim, the Board of Immigration Appeals (BIA) properly found that they were entitled to satisfy the standard for withholding of removal. Najjar v. Ashcroft, 257 F.3d 1262 (11th Cir. 2001).

## § 1895 — Referral for credible fear interview

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. Part 235.7.

## § 1896 — Detention pending credible fear interview

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. Part 235.7.

## § 1897 Interviews

**Cases**
Attorney General's regulation under which asylum applications of alien stowaways were heard by Immigration and Naturalization Service (INS) officers in informal interviews, while allowing other asylum applicants to be heard by immigration judges (IJ), violated neither stowaways due process rights and directing Attorney General to establish "a procedure" for asylum claims. Selgeka v. Carroll, 184 F.3d 337 (4th Cir. 1999).

## § 1898 — Removal without further review absent credible fear of persecution

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

## § 1900 Claim to lawful permanent resident, refugee, or asylee status, or citizenship

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. Part 235.7.

## § 1901 — Verified lawful permanent residents

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211, and 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7.

## § 1902 — Verified refugee or asylum status

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7.

## § 1903 — Review of order

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7.

**Cases**
On appeal from deportation order, alien's supplemental excerpt of record, purportedly supplying an omission form the record, would not be considered, except for allowing addition of the hearing transcript, where other documents contained in the supplemental excerpt of record were not part of the administrative record upon which the deportation order was based. Altawil v. I.N.S., 179 F.3d 791 (9th Cir. 1999)

*(u) Review; Collateral Attack [§§ 1904–1906]*

## § 1905 Supervisory review of immigration officers' orders

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7.

## § 1906 Limit on collateral attacks

**Cases**
Alien who was previously deported for crimes involving moral turpitude was not completely deprived of judicial review of immigration judge's determination to deport him, and thus denial of opportunity to collaterally attack previous deportation upon a subsequent deportation proceeding was not a violation of his right to due process, although his subsequent deportation did not, on their face, claim that was later called into question as to the applicability, whereas alien had access to judicial review of that decision but waived such review, and deportation hearing was not on direct review when subsequent case was decided; its

---

Section of Immigration and Nationality Act (INA), precluding court jurisdiction to review final order of removal against alien who is removable by reason of having committed one of certain criminal offenses, deals with operation of certain decisions by Board of Immigration Service (INS) and Board of Immigration Appeals (BIA), not substantial constitutional issues from being raised in Court of Appeals. Richardson v. Reno, 180 F.3d 1311 (11th Cir. 1999).

Provision of Anti-Terrorism and Effective Death Penalty Act (AEDPA), excluding permanent resident aliens, but not excludable aliens, convicted of certain crimes ineligible for waiver of deportation did not arbitrarily distinguish between types of aliens, in violation of permanent resident alien's equal protection rights; Congress could have determined that deportable criminal aliens posed more acute problem than excludable aliens, and directed its legislative efforts accordingly. Mattis v. Reno, 44 F. Supp. 2d 379 (D. Mass. 1999).

In deportation analysis, there was no rational basis for distinction in treatment in section of the Immigration and Nationality Act that barred discretionary cancellation of deportation to legal permanent residents convicted of aggravated felonies while permitting discretionary relief for aggravated felons who were not convicted of same aggravated felony, and thus section was unconstitutional, where distinction rewarded those guilty of illegal entry and aggravated felony by treating them better than those guilty of aggravated felony and guilty only of aggravated felony, and could constitutional relief was based. Roman v. Ashcroft, 181 F. Supp. 2d 808 (N.D. Ohio 2002).

Application of Antiterrorism and Effective Death Penalty Act (AEDPA) section, which expanded list of crimes of moral turpitude, ineligible for discretionary waiver of deportation, to aliens in deportation proceedings, but not to those in exclusion proceedings, violated equal protection, there was no rational basis for allowing aliens who faced discretionary relief while denying same opportunity to aliens who remain in country and became deportable for same convictions. Mercado-Bonilla v. Reno, 47 F. Supp. 2d 1219 (D. Or. 1999).

## § 1963 Application requirements

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003, 8 C.F.R. § 103.7 was redesignated 8 C.F.R. § 1103.7, 8 C.F.R. Part 240 was redesignated 8 C.F.R. Part 1240, except for 8 C.F.R. § 240.25.

8 CFR § 1103.7(b)(1), amended in 2002, added fees for filing an application to classify an alien as a T nonimmigrant, victims of a severe form of trafficking in persons and their immediate family members, as defined in 8 CFR § 214.11.

**Cases**
Even if Court of Appeals had jurisdiction to review Board of Immigration Appeals's (BIA) denial of alien's application for cancellation of removal, alien waived any substantial objections to BIA's ruling by failing to raise them in his appellate brief. Halah v. Ashcroft, 316 F.3d 897 (8th Cir. 2003).

Board of Immigration Appeals (BIA) did not violate alien's due process rights in interpreting hardship standard than "extreme hardship standard that applied under provisions of the Immigration and Naturalization Act as being higher standard than "extreme hardship standard that applied under prior law, and discretionary denial of alien's application for cancellation of removal, did not violate alien's due process rights; this interpretation comported with statutory language and congressional intent. Ramirez-Perez v. Ashcroft, 336 F.3d 1001 (9th Cir. 2003).

## § 1964 Certain nonpermanent residents

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 208 was redesignated 8 C.F.R. Part 1208.

**Cases**
Alien was ineligible for cancellation of removal on ground that his removal would cause hardship to his mother who, he alleged, was a lawful permanent resident of the United States, where he presented no evidence of his mother's permanent-resident status, and Immigration and Naturalization Service (INS) records showed that his mother was not a lawful permanent resident. Molina-Estrada v. I.N.S., 293 F.3d 1089 (9th Cir. 2002).

## § 1965 — Special rule for battered spouse or child

**Statutes**
8 USCA § 1229b(b)(2) was amended as part of the Violence Against Women Act of 2000 to provide immigration-related access in cases of removal and suspension of deportation under the Violence Against Women Act of 1994 for battered immigrant women.

## § 1966 Adjustment of status

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 240 was redesignated 8 C.F.R. Part 1240, except for 8 C.F.R. § 240.25.

## § 1967 Aliens ineligible for relief

**Cases**
The Board of Immigration Appeals' (BIA)

© West, a Thomson business. 5/2004

denial of eligibility for cancellation of removal due to undocumented alien's expunged state drug conviction did not violate the alien's right to equal protection rights, the state court's sentence of ten years of probation for the alien's first-time drug offense, of which the alien served two years before the conviction was expunged, was significantly longer than the one-year-or-less sentence of probation required for defendants to be eligible for the cancellation of removal proceedings under the Federal First Offender Act (FFOA), and thus provided a rational basis for the BIA to treat an alien who received FFOA relief. Vasquez-Velezmoro v. U.S. I.N.S., 281 F.3d 693 (5th Cir. 2002).

The Board of Immigration Appeals (BIA) did not err in denying undocumented alien's cancellation of removal due to his expunged state drug conviction; alien differently than an alien who received FFOA relief. Vasquez-Velezmoro v. U.S. I.N.S., 281 F.3d 693 (5th Cir. 2002).

Alien's conviction was aggravated felony listed in prior cases for determining whether failed to apply consistent standard it established. An alien convicted of aggravated felony did not qualify for a cancellation of removal, further-more alien was ineligible because he failed to assert his claim "before the Board of Immigration until after the alien had been removed, where alien was inadmissible for determining whether removal was arbitrary and capricious; BIA had been convicted of a particularly serious crime was a "danger to community." Shanbhoue v. Ashcroft, 247 F. Supp. 2d 201 (D. Conn. 2003).

Alien's conviction for possession with intent to distribute cocaine was aggravated felony that rendered him statutorily ineligible for cancellation of removal. Ogega v. Reno, 2003 WL 289464 (S.D. N.Y. 2003).

§ 1968 Special rules relating to continuous residence or physical presence—termination of continuous period

Alien's substantive due process rights were not violated by retroactive application to her of transitional stop-time rule of Illegal Immigration Reform and Immigrant Responsibility Act (IIRA), which provided that, for purposes of determining eligibility for suspension of deportation, ended on date of service of order to show cause, despite contention that order to show cause, despite contention that alien had attained required seven years of continuous residence while pending hearing and thus was ineligible for relief; relief had not yet been granted and was only conditional, required application for relief did not constitute an unconstitutional retroactive application of new rule, and deportation was prospective relief because it did not impair any vested rights, and since the stop-time rule was rationally related to alien's case; generalized uncertainty underlying rule was not violated by retroactive application to deter alien's case; remove incentive for aliens to delay deportation proceedings, did not apply to alien's case. Pinho v. I.N.S., 249 F.3d 183 (3d Cir. 2001).

Application of the stop-time rule, which charged how the continuous physical presence test was calculated for purposes of counting the length of deportation, to aliens pending deportation did not constitute an unconstitutional retroactive application of new rule, and start anew after the service of an order to show cause so as to allow an alien to accrue the time necessary to be eligible for relief, and, in order to show cause was based on a permissible construction of the statute; Immigration and Naturalization Service. Pinho v. I.N.S., 249 F.3d 183 (3d Cir. 2001).

Board of Immigration Appeals' (BIA) interpretation of Illegal Immigration Reform and Immigrant Responsibility Act (IIRA) as to con-

Alien's state misdemeanor offense of illegally selling marihuana for money were punishable as felonies under federal law, and thus, were within immigration statute's definition of "aggravated felony" and made the alien ineligible for cancellation of removal. Copeland v. Ashcroft, 246 F. Supp. 2d 183 (W.D.N.Y. 2003).

Alien found deportable due to conviction for possession of a weapon was not eligible for waiver of deportation under former provision of the Immigration and Nationality Act (INA), in effect at the time of his order of deportation, which allowed immigrants found deportable an opportunity for a discretionary hearing where they could urge waiver of deportation on compassionate grounds. Worrell v. Ashcroft, 207 F. Supp. 2d 61 (W.D.N.Y. 2002).

Alien's conviction for sale of marijuana in violation of New York Penal Law constituted an "aggravated felony" which disqualified him from eligibility for cancellation of removal. Maunara v. Ashcroft, 206 F. Supp. 2d 386 (W.D.N.Y. 2002).

§ 1888 Record of proceedings

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7.

§ 1889 Detention and parole of aliens in expedited removal

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7.

Cases

Application of the stop-time rule, which charged how the continuous physical presence test was calculated for purposes of counting the length of deportation, to aliens pending deportation did not constitute an unconstitutional retroactive application of law; separation of powers was not violated by retroactive application of rule, to remove incentive for aliens to delay deportation proceedings. Pinho v. I.N.S., 249 F.3d 183 (3d Cir. 2001).

§ 1890 Additional charges of inadmissibility

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7.

Cases

Statute making alien who has committed serious nonpolitical crime before entering country ineligible for asylum did not require balancing alien's criminal acts against the risk of persecution he would face in his home country. Immigration and Nationality Act, § 243(h)(2)(C), as amended, 8 U.S.C.A. § 1253(h)(2)(C). I.N.S. v. Aguirre-Aguirre, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999).

(iii) Asylum Seekers §§ 1892–1903)

§ 1892 Generally

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 208.9 was redesignated 8 C.F.R. Part 1208 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7; 8 C.F.R. Part 207 was redesignated 8 C.F.R. Part 1207; 8 C.F.R. Part 208 was redesig-nated 8 C.F.R. Part 100, consisting of 28 C.F.R. § 200.1.

Cases

Court of Appeals, in reviewing determination of Board of Immigration Appeals (BIA) that alien was not entitled to withholding of deportation based on his expressed fear of persecution for earlier political activities in his home country, should give deference to the BIA's determination, as to which it was the agency's construction of the statute, which is administered; court should have asked whether statute was silent or ambiguous with respect to specific issue and, if so, whether the agency's answer was based on a permissible construction of the statute. Immigration and National-

statutory provision governing removal of aliens who are not permanent residents, rather than procedure set out in statute governing criminal aliens, Immigration and Naturalization Service (INS) followed proper procedure in denying alien relief, where alien was not a permanent resident. Hypolite v. Blackman, 57 F. Supp. 2d 128 (M.D. Pa. 1999).

§ 1888 Record of proceedings

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235, except for 8 C.F.R. § 235.7.

ity Act, § 243(h)(1), as amended, 8 U.S.C.A. § 1253(h)(1). I.N.S. v. Aguirre-Aguirre, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999).

Board of Immigration Appeals (BIA) was not required to conclude that violence and destructive conduct were "serious" and "nonpolitical" crimes committed by alien, despite alien's claim that he had committed such crimes in his home country, holding of deportation on ground that he had committed serious nonpolitical crime in his home country, was ineligible for withholding of deportation on ground that he had committed serious nonpolitical crime before entering United States. Immigration and Nationality Act, § 243(h)(2)(C), as amended, 8 U.S.C.A. § 1253(h)(2)(C). I.N.S. v. Aguirre-Aguirre, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999).

In determining that alien, despite fears of persecution if returned to his home country, was ineligible for withholding of deportation on ground that he had committed serious non-political crime before entering United States, Board of Immigration Appeals (BIA) properly concluded that the violence and destructive civil acts of alien's crimes, and their impact on civilians, outweighed alien's political objectives, and that the acts were so "atrocious" as to be disproportionate; BIA was not required to give more express consideration to the "necessity" and "success" of alien's actions. Immigration and Nationality Act, § 243(h)(2)(C), as amended, 8 U.S.C.A. § 1253(h)(2)(C). I.N.S. v. Aguirre-Aguirre, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999).

U.N. Handbook on Refugees interpretative aid, but it is not binding on the Attorney General, the Board of Immigration Appeals (BIA), or United States courts in determining serious nonpolitical crime before entering country. Immigration and Nationality Act, § 243(h)(2)(C), as amended, 8 U.S.C.A. § 1253(h)(2)(C). I.N.S. v. Aguirre-Aguirre, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999).

Whereas withholding of deportation is mandatory unless the Attorney General determines that alien is ineligible, asylum is discretionary relief, and if the alien proves his eligibility, asylum is committed to the Attorney General's discretion. Immigration and Nationality Act, §§ 208, 243(h)(1), as amended, 8 U.S.C.A. §§ 1158, 1253(h)(1). I.N.S. v. Aguirre-Aguirre, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999).

Whereas withholding of deportation only bars deporting an alien to a particular country or countries, a grant of asylum permits an alien to remain in the United States and to apply for permanent residency after one year. Immigration and Nationality Act, §§ 208, 243(h)(1), as amended, 8 U.S.C.A. §§ 1158, 1253(h)(1). I.N.S. v. Aguirre-Aguirre, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999).

§ 1894 "Credible fear of persecution"

Cases

Where aliens failed to demonstrate a well-

**ALIENS AND CITIZENS**

transport and actually transporting illegal aliens was duplicitous, inasmuch as attempting to transport, which required specific intent, and actual transportation, which required general intent, were separate and distinct crimes. U.S. v. Ramirez-Martinez, 273 F.3d 903 (9th Cir. 2001).

### § 3207 Jury selection, instructions, and verdict

**Cases**

Jury instruction that immigration and Naturalization Service (INS) had exclusive authority to issue a certificate of citizenship was not improper in trial in which defendant had asserted that he was a United States citizen and thus did not commit illegal reentry; district court made clear that jury was required to decide whether government had proven alienage, and it was insufficient to assume jury knew that, due to differing burdens of proof, INS's conclusion that defendant was not a citizen was not decisive for purposes of criminal trial. U.S. v. Martin-Cuevas, 147 F.3d 889 (5th Cir. 1998).

Jury instruction that arguments by counsel were not evidence did not cure prejudicial effect of prosecutor's references to out-of-court statements by non-witness aliens, that none of aliens ever mentioned riding with another driver before being transported as passengers by defendant, in prosecution for transporting illegal aliens, in furtherance of alien's violation of law, where defendant's entire defense was based upon his own uncontradicted testimony that he provided transportation to the aliens only because he believed their vehicle broke down, as stated by their driver. U.S. v. Hernandez, 189 F. Supp. 2d 1272 (D.N.M. 2002).

### (b) Evidence [§§ 3208–3215]

### § 3213 Admissibility of videotaped depositions

**Cases**

Demonstrating unavailability through good faith efforts to procure witnesses is required under statute allowing introduction of videotaped deposition in prosecution for transporting illegal aliens. U.S. v. Santos-Pinon, 146 F.3d 734 (9th Cir. 1998).

Statute allowing introduction of videotaped deposition in prosecution for transporting illegal aliens, "notwithstanding any provision of the Federal Rules of Evidence," was not unconstitutional on its face regarding right to confrontation on ground that it did away with

good faith efforts standard of establishing unavailability, as statute said nothing about abrogating constitutional requirement of establishing unavailability, and thus could easily be read to comport with Constitution. U.S. v. Santos-Pinon, 146 F.3d 734 (9th Cir. 1998).

### § 3214 Admissibility of evidence in particular cases

**Cases**

Error in submitting interrogatory on financial gain component of offense in prosecution for transporting undocumented aliens within the United States, which was irrelevant due to fact that defendant was charged under aiding and abetting theory, was harmless, where with or without financial gain component defendant's maximum statutory sentence was five years, and defendant received sentence within guideline range. U.S. v. Nolasco-Rosas, 286 F.3d 762 (5th Cir. 2002).

Illegal aliens discovered during illegal search would inevitably have been discovered, and thus their testimony was admissible prosecution for harboring aliens, for commercial gain; defendant's store where aliens were found was under police surveillance, one alien was waiting on customers in portion of store which was open to public, and aliens had voluntarily agreed to be interrogated at that search. U.S. v. Singh, 261 F.3d 530 (5th Cir. 2001).

District court acted within its discretion in determining that potentially probative value of evidence that defendant's index finger was badly defaced, which allegedly tended to prove that defendant sought to evade the Border Patrol's identification system, was not outweighed by possible prejudice to the defendant, and thus that evidence was admissible in prosecution of defendant for illegal entry into the United States, and for smuggling aliens. U.S. v. Gonzalez-Torres, 273 F.3d 1181 (9th Cir. 2001).

District court did not abuse its discretion in determining that admission of diagram demonstrating how passenger was hidden in automobile's spare-tire compartment, and in comparing testimony by Customs inspector, was not unduly prejudicial in alien smuggling trial. U.S. v. Pena-Gutierrez, 222 F.3d 1080 (9th Cir. 2000).

### § 3215 Sufficiency of evidence in particular cases

**Cases**

Convictions for aiding and abetting in the transportation of undocumented aliens within the United States were supported by testimony of aliens, who admitted entering the country illegally, and that before they entered vans which they were transported they saw truck which had description of truck in which defendant was later stopped, and by evidence that citizens' band (CB) radio found in defendant's truck was tuned to same frequency as radios in vans used to transport aliens, and that when stopped defendant had exercised right to U.S. v. Nolasco-Rosas, 286 F.3d 762 (5th Cir. 2002).

© West, a Thomson business, 5/2004

Jury finding that defendant acted before of-
fense of bringing to United States undocu-
mented alien for financial gain was complete,
as required for conviction for aiding and abet-
ting such offense, was supported by sufficient
evidence, including evidence that alien made
arrangements with someone other than defen-
dant to be transported from Mexico to United
States and directed to trust across the bor-
der; alien then contacted defendant, who found
fellow ... of people, that group found de-
fendant, waiting for it in van, soon after it
crossed border, and that defendant admitted
agreeing to transport illegal aliens. U.S. v.
Parra-Martinez, 273 F.3d 903 (9th Cir.
2001).

### (c) Witnesses [§§ 3216–3218]

### § 3216 Generally

**Cases**

The fact that there was a regulation desig-
nating ports of entry did not preclude testi-
mony that Immigration and Naturalization Ser-
vice (INS) agent with 11 years of experience
that location in question in alien smuggling
prosecution was not a designated port of entry.
U.S. v. Cassas, 292 F.3d 253 (2d Cir. 2002).

### § 3217 Admissibility of deposition testimony of witnesses no longer in United States

**Cases**

Where a properly informed illegal
aliens in the United States were provided due
process or right to counsel to deportation of 18
out of 20 illegal alien witnesses before he was
provided with an attorney, and before the
waived his right to delay deportation, where
he signed waiver, written in Spanish, of his
right to delay deportation, and waiver form
also informed him of his right to a government-
appointed lawyer to assist him in that deci-
sion, defendant failed to show that any of
deported witnesses could have provided excul-
patory evidence. U.S. v. Favela-Favela, 41
Fed. Appx. 185 (10th Cir. 2002).

### § 3218 — Videotaped depositions

**Cases**

Construing unavailability through good
faith efforts to procure witnesses as required
under statute allowing introduction of video-
taped deposition in prosecution for transport-
ing illegal aliens. U.S. v. Santos-Pinon, 146
F.3d 734 (9th Cir. 1999).

Statute allowing introduction of videotaped
deposition in prosecution for transporting ille-
gal aliens, "notwithstanding any provision of
the Federal Rules of Evidence," was not un-
constitutional on its face regarding right to
confrontation ... and away with
good faith efforts to establish witness
unavailability, as statute said nothing about
abrogating constitutional requirement of
establishing unavailability, and thus could
easily be read to comport with constitution.
U.S. ... Santos-Pinon, 146 F.3d 734 (9th Cir.
1999).

### Sentencing [§§ 3219–3226]

### § 3219 Generally

**Research References**

Construction and Application of United
States Sentencing Guidelines § 2L1.1 (18
U.S.C.A. § 2L1.1), involving offenses for
Smuggling, Transporting, or Harboring Un-
lawful Aliens, 136 A.L.R. Fed. 613.

**Cases**

District court did not clearly err in determin-
ing, for sentencing purposes, that 29 illegal
aliens were smuggled into United States in course of
conspiracy under which defendant would al-
low their children to accompany undocu-
mented aliens across border, in order to leave
United States ... policies toward families with
young children, based upon agent's testimony
that children were "coached" for use in smug-
gling operations if stopped ... transactions. U.S. v. Cabrera, 288 F.3d 163 (5th Cir.
2002).

Defendant's three convictions of bringing un-
authorized aliens to United States for private
financial gain counted as three instances of
smuggling, and defendant was subject to
five-year minimum sentence applicable to
third or subsequent conviction of such of-
fense, where he had been charged with three
separate transactions. U.S. v. Test, 292 F.3d
690 (9th Cir. 2002).

### § 3220 Upward departure from Sen-tencing Guidelines

**Research References**

Validity, construction, and application of
§ 274a(1)(A)(ii) of Immigration and Nation-
al Act (8 U.S.C.A. § 1324a(1)(A)(ii)), making
it unlawful to transport alien who has entered
United States in violation of law, 139 A.L.R.
Fed. 139.

### § 3225 Downward departure from Sentencing Guidelines

**Cases**

District court did not clearly err in finding
that offense of illegally transporting aliens was
not committed "other than for profit," and thus
decrease under Sentencing Guidelines was
not warranted; defendant admitted that
he drove van containing illegal alien because
he had been promised forgiveness of his debt
to "coyote," which he owed for having himself
been smuggled into United States. U.S. v.
Juan Manuel, 222 F.3d 480 (8th Cir. 2000).

### (d) Administrative and Judicial Forfeiture [§§ 3227–3243]

### (3) Seizure and Forfeiture of Conveyances [§ 3227–3260]

### § 3229 Officers authorized to make seizures

**Research References**

Federal Procedure, L. Ed. § 73:395
Federal Procedure, L. Ed. §§ 48:151, 179
48:1489, 48:1492
West's Key Number Digest, United States
⇐7864, 7865.1, 78120, 78125, 78151,
96

foreign health-care workers do not apply to an alien who seeks to enter the United States for the purpose of performing labor as a nurse who presents specified proof of qualifications.

**Regulations**
8 CFR § 204.12 and 8 CFR § 245.18, added in 2000, established the procedure under which a physician who is willing to practice full-time in an area designated by the Secretary of Health and Human Services as having a shortage of health care professionals or in a facility operated by the Department of Veterans Affairs may obtain a waiver of the job offer requirement that applies to alien beneficiaries of second preference employment-based immigrant visa petitions. This rule explains the requirements the alien physician must meet in order to obtain approval of an immigrant visa petition and, once the physician has completed the requirements, to obtain adjustment to lawful permanent residence status. This regulatory change is necessary to help implement the waiver provisions of the federal immigration law. 8 C.F.R. Part 204 and 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

**§ 426 International organizations of officers and employees, and immediate family members**

**Regulations**
8 CFR § 204.13(a), added in 2001, provides rules that the International Broadcasting Bureau of the United States Broadcasting Board of Governors (BBG), or a grantee of the BBG, can petition for an alien (and the alien's accompanying spouse and children) to work as a broadcaster, as defined, for the BBG or a grantee of the BBG. New 22 CFR § 42.33(h) and fourth preference eligibility. 8 CFR § 204.13(b) regulates the number of petitioners who may apply each year. 8 CFR § 204.13(c) provides the forms for the petitions, while 8 CFR § 204.13(d) provides for supplemental evidence to accompany the form.

22 CFR § 42.32(d)(5), added in 2001, involves entitlement to special immigrant status of certain United States international broadcast-ing employees.

**(2) Diversity Immigrants (§§ 436-439)**

**§ 438 Petitions**

**Regulations**
As amended in 2001, 22 CFR § 42.33(b)(1) provides that an alien claiming to be entitled to immigrant status on the basis of being a diversity immigrant visa must file a petition for such consideration, which petition must consist of a sheet of paper on which is typed or legibly printed in the Roman alphabet the petitioner's name; date and place of birth (including city and country of birth); native, if other than the country of birth; name(s), date(s), and place(s) of birth of the

petitioner's spouse and any children, including legally-adopted and stepchildren, regardless whether they are living with the petitioner or intend to accompany or follow to join the petitioner, and current mailing address. Further, 22 CFR § 42.33(b)(2) was redesignated 22 CFR § 42.33(a). New 22 CFR § 42.33(h)(2) provides that the petitioner must personally sign his or her signature to the sheet of paper, using his or her native alphabet. 22 CFR § 42.33(b)(3) requires that the alien affix to the entry a photograph of himself or herself and photographs of his or her spouse and each child and set forth detailed requirements for such photographs. 22 CFR § 42.33(i) was redesignated 22 CFR § 42.33(j).

**§ 439 — Approval and validity of petitions**

**Regulations**
22 CFR § 42.33(g) was redesignated 22 CFR § 42.33(h) in 2001. New 22 CFR § 42.33(j) involves allocation of visa numbers.

**c. Numerical Quotas (§§ 441-455)**

**(1) Worldwide Quotas (§§ 441-443)**

**§ 441 Family-sponsored immigrants**

**Statutes**
8 U.S.C.A. § 1151(f), added in 2002, provides rules for determining whether certain aliens are immediate relatives. New 8 U.S.C.A. § 1153(h) provides rules for determining whether certain aliens are children.

**(2) Per-Country Quota Levels (§§ 444-448)**

**§ 445 Special rules for spouses and children of permanent resident aliens**

**Statutes**
8 U.S.C.A. § 1151(f), added in 2002, provides rules for determining whether certain aliens are immediate relatives. New 8 U.S.C.A. § 1153(h) provides rules for determining whether certain aliens are children.

**(3) Nonquota Immigrants (§§ 456-463)**

**§ 456 Immediate relatives of U.S. citizens**

**Statutes**
8 USCA § 1154(a)(1)(A)(vi) was added as part of the Violence Against Women Act of 2000 in an effort to remedy problems with the immediate relative provisions of the Violence against Woman Act of 1994.

**Regulations**
22 CFR § 42.21(b) was redesignated in 2002 to add to the definition of "immediate relatives" the widows and children whose spouses' parents were the victims of the terrorist acts of September 11, 2001. New 22 CFR § 42.21(c) involves special relative immigrant status of children of U.S. citizens slain in these terrorist acts.

**§ 460 Commuters**

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

**§ 461 Employees of American University of Beirut**

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

**2. Relatives of Citizens or Permanent Residents (§§ 464-792)**

**a. Family Definitions for Immigrants (§§ 464-517)**

**(1) Validity of Marriage (§§ 464-476)**

**§ 473 Sham marriage doctrine**

**Research References**
Validity, construction, and application of 8 U.S.C.A. § 1325(c), prohibiting knowingly entering into marriage to avoid immigration laws, 159 A.L.R. Fed. 497.

**§ 474 — Rebutting charge of sham**

**Cases**
Alien who obtained permanent resident status through a fraudulent marriage, but subsequently married a lawful permanent resident, was not foreclosed from maintaining lawful permanent resident status; thus, Attorney General had discretion to grant waiver of deportation, alien was not forced to rely on his relationship with his former wife for purposes of seeking waiver of deportation. Virk v. I.N.S., 295 F.3d 1055 (9th Cir. 2002).

**(4) Child (§§ 483-516)**

**(a) Related Derivative Definitions (§§ 483, 484)**

**§ 483 Derivative definition of parent**

**Regulations**
22 CFR § 40.1(n) was redesignated 22 CFR § 40.1(o) in 2000.

**§ 484 Derivative definition of son or daughter**

**Regulations**
22 CFR § 40.1(q) was redesignated 22 CFR § 40.1(r) in 2000.

**(c) Legitimization (§§ 492-505)**

**§ 493 Child born out of wedlock**

**Cases**
Additional proof-of-paternity requirement

imposed for citizenship by birth whenever the citizen parent of a child who is born out of wedlock and abroad is a child's father, as opposed to the mother, did not represent unconstitutional denial of equal protection based on sex of citizen parent; desire to promote early ties to United States citizen relatives and reduction in the mother and father's out-of-wedlock children are not similarly situated supported requirement, whenever the citizen parent is the father, that child be legitimated that father formally acknowledge his paternity by oath, or that father's paternity be established by competent court prior to child's majority. (Per Justice Kennedy, with the Chief Justice concurring, and four Justices concurring in judgment.) Miller v. Albright, 118 S. Ct. 1428, 140 L. Ed. 2d 575 (U.S. 1998).

Child who was allegedly born out of wedlock to alien mother and citizen father had standing in order to challenge constitutionality of statute governing the citizenship of children who were born abroad and out of wedlock to parents, one of whom was citizen and other alien, such as here, where child did not request that court grant her citizenship, but instead sought a declaratory judgment that statute was unconstitutional and a finding by court that she was a citizen from birth. (Per Justice Stevens, with the Chief Justice concurring, and four Justices concurring in judgment.) Miller v. Albright, 118 S. Ct. 1428, 140 L. Ed. 2d 575 (U.S. 1998).

**§ 503 Effect of abolition of distinction between legitimate and illegitimate children**

**§ 504 — Effect of timing of legislation and age of child**

**Cases**
Immigration and Naturalization Service (INS) did not violate Administrative Procedure Act (APA) by denying alien's petition for preferred visa status as an immigrant investor after granting almost identical petitions to others, based on INS's publication of four prior public interpretive letters declining to rely on his relationship between the two petitions since the alien did not, at the time the INS decided the other investors' petitions since issuance of the precedent decisions or denial alien's petition did not involve rulemaking prior to approving/representing the INS's prior interpretation of the statute because the INS was free to change its interpretation no notice and comment period was required. R.L. Inv. Ltd. Partners v. I.N.S., 86 F. Supp. 2d 1014 (D. Haw. 2000).

**§ 506 Basic requirements for recognized adoption**

**(d) Adoption (§§ 506-514)**

**Statutes**
8 USCA § 1101(b)(1)(E) was redesignated USCA § 1101(b)(1)(E)(i) in 1999. Under new USCA § 1101(b)(1)(E)(ii) an adopted child also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in 8 USCA § 1101(b)(1)(E)(i), was adopted by the adopting parents or parents of that sibling, and is otherwise described in 8

2004 Cumulative Supplement

© West, a Thomson business

U.S.C.A. § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

## § 507 Strict age limit

Statutes
8 U.S.C.A. § 1101(b)(1)(E) was redesignated 8 U.S.C.A. § 1101(b)(1)(E)(i) in 1999. Under new 8 U.S.C.A. § 1101(b)(1)(E)(ii) an adopted child is also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in new 8 U.S.C.A. § 1101(b)(1)(E)(i) or 8 U.S.C.A. § 1101(b)(1)(F)(i) except that the child was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8 U.S.C.A. § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

## § 508 Two-year period of residence and legal custody

Statutes
8 U.S.C.A. § 1101(b)(1)(E) was redesignated 8 U.S.C.A. § 1101(b)(1)(E)(i) in 1999. Under new 8 U.S.C.A. § 1101(b)(1)(E)(ii) an adopted child is also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in new 8 U.S.C.A. § 1101(b)(1)(E)(i) or 8 U.S.C.A. § 1101(b)(1)(F)(i) except that the child was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8 U.S.C.A. § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

## § 510 Deprivation of rights of natural or prior adoptive parents

Statutes
8 U.S.C.A. § 1101(b)(1)(F) was redesignated 8 U.S.C.A. § 1101(b)(1)(F)(i). Under new 8 U.S.C.A. § 1101(b)(1)(F)(ii) an orphan petition can also be made if the child is a natural sibling of a child described in 8 U.S.C.A. § 1101(b)(1)(F)(i) except that the child was under the age of 18 years at the time the petition was filed.

## § 511 Adoption in foreign country

Statutes
42 U.S.C.A. §§ 14901 et seq., added in 2000 and comprising the Intercountry Adoption Act of 2000, was enacted to (1) provide for implementation of the Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption; (2) protect the rights of, and prevent abuses against, children, birth families, and adoptive parents involved in adoptions subject to the Convention; and (3) improve the ability of the Federal Government to assist United States citizens and residents of other countries party to the Convention seeking to adopt children from the United States.

Statutes
8 U.S.C.A. § 1101(b)(1)(F) was redesignated 8

### (e)   Orphan [§§ 515, 516]

## § 515 Eligibility as dependent on approved visa petition

Statutes
8 U.S.C.A. § 1101(b)(1)(F) was redesignated 8

---

U.S.C.A. § 1101(b)(1)(F)(i). Under new 8 U.S.C.A. § 1101(b)(1)(F)(ii) an orphan petition can also be made if the child is a natural sibling of a child described in 8 U.S.C.A. § 1101(b)(1)(F)(i) except that the child was under the age of 18 years at the time the petition was filed.

## § 516 Orphan child defined

Statutes
8 U.S.C.A. § 1101(b)(1)(F) was redesignated 8 U.S.C.A. § 1101(b)(1)(F)(i). Under new 8 U.S.C.A. § 1101(b)(1)(F)(ii) an orphan petition can also be made if the child is a natural sibling of a child described in 8 U.S.C.A. § 1101(b)(1)(F)(i) except that the child was under the age of 18 years at the time the petition was filed.

Cases
Alien was not an "orphan" on basis that she was a child of a "sole parent"; "incapable of providing proper care," "incapable of caring," who was listed on birth certificate as same as, with alien's biological mother, and thus had not severed all parental relationship, and therefore complicated providing ample financial support to all of them, and the alien's mother and the mother were unable to care for the alien's number or care, there was no father. Rogan v. Reno, E.D.N.Y.1999, 75 F.Supp.2d 63.

### f.   Family-Sponsored, Fourth Preference Eligibility [§§ 535–541]

## § 518 Immediate relative defined [§§ 517–520]

Statutes
8 U.S.C.A. § 1154(a)(1)(A)(vi) was added as part of the Violence Against Women Act of 2000, in an effort to remedy problems with implementation of the immigration provisions of the Violence against Women Act of 1994.

## § 541 Siblings by means of adoption

Statutes
8 U.S.C.A. § 1101(b)(1)(E) was redesignated 8 U.S.C.A. § 1101(b)(1)(E)(i) in 1999. Under new 8 U.S.C.A. § 1101(b)(1)(E)(ii) an adopted child is also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in 8 U.S.C.A. § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

### g.   Deriving Status from immigrant sponsor or parent

## § 542 Deriving Status [§§ 542–545]

Cases
In considering minor alien's argument that

---

1999, also includes nurses who are coming temporarily to the United States to perform services as registered nurses, who meet certain qualifications, and will practice in health professional shortage areas for a specified period.

Cases
8 U.S.C.A. § 1182(r), added in 1999, provides that certain requirements for uncertified foreign health-care workers do not apply to an alien who seeks to enter the United States for the purpose of performing labor as a nurse who will present specified proof of qualifications.

### F.   CONGRESS [§§ 388, 389]

## § 388 Powers regarding immigration laws

Cases
In exercise of its broad power over naturalization and immigration, Congress regularly makes rules as to aliens that would be unacceptable if applied to citizens. Demore v. Hyung Joon Kim, 123 S. Ct. 1708, 155 L. Ed. 2d 724, 187 A.L.R. Fed. 633 (U.S. 2003).

# III.   SEEKING ADMISSION TO THE UNITED STATES; NONIMMIGRANTS, IMMIGRANTS, REFUGEES, AND ASYLEES [§§ 402–1446]

## A.   IMMIGRANTS [§§ 402–1100]

### 1.   Overview [§§ 402–463]

#### a.   Definition and Classification of Immigrants [§§ 402–406]

## § 402 "Immigrant" and "immigrant visa" defined

Statutes
8 U.S.C.A. §§ 1101(a)(15)(T), 1184(o), added in 2000, involve aliens who are or have been victims of severe forms of trafficking in persons as defined in 22 U.S.C.A. § 7102.

8 U.S.C.A. § 1101(a)(15)(U) was added as part of the Violence Against Women Act of 2000 to establish the nonimmigrant classification to establish a "material witness" non-immigrant classification.

#### (ii)   Fourth Preference Special Immigrants [§§ 420–434]

## § 420 Generally [§§ 420–434]

Statutes
8 U.S.C.A. § 1101(a)(15)(T)(ii), amended in 1999.

---

applications for Special Agricultural Worker (SAW) status, by failing to provide interpreters and by employing certain presumptions, were subject to judicial review in district court, despite statute generally prohibiting judicial review of determinations respecting applications for adjustment of status, inasmuch as each claim asserted unconstitutional practice, and INS's failure to make adequate record of SAW decision would effectively prevent a court of appeals, with respect to denial of deportation, with respect to denial of SAW status, Adams v. INS, 184 F.3d 168 (2d Cir. 1999).

## § 412 Members of the professions holding advanced degrees or aliens of exceptional ability

Statutes
8 U.S.C.A. § 1153(b)(2)(B), amended in 1999, provides further that the Attorney General will waive the requirement that the services of the alien physician be sought by the employer, if the physician agrees to work full time as a physician in an area designated as having a shortage of health care professionals or at a health care facility under the jurisdiction of the Secretary of Veterans Affairs if it is determined that the physician's work in the area or at such facility is in the public interest.

## § 425 Foreign medical graduates

Statutes
8 U.S.C.A. § 1101(a)(15)(H)(i), amended in 1999, provides for an alien who is coming temporarily to the United States to perform services as registered nurses, who meet certain qualifications, and will practice in health professional shortage areas for a specified period.

8 U.S.C.A. § 1182(r), added in 1999, provides that certain requirements for uncertified

## § 408 Priority workers

Statutes
8 U.S.C.A. § 1154(d)(1) subparagraphs (C) through (E) were redesignated subparagraphs (E) through (J) as part of the Violence Against Women Act of 2000. The new 8 U.S.C.A. § 1154(a)(C), (D) involve battered immigrant women.

#### (i)   First through Third Preference [§§ 408–419]

## § 402 Priority workers

Statutes
8 U.S.C.A. §§ 1101(a)(15)(O), 1184(o), added in 2000, involve aliens who are or have been victims of severe forms of trafficking in persons as added in 22 U.S.C.A. § 7102.

### b.   Quota Immigrants [§§ 407–440]

#### Preference Allocations [§§ 407–435]

#### c.   Employment-Based Immigrants [§§ 408–435]

8 CFR § 204.13(a), added in 2001, provides that the International Broadcasting Bureau of the Broadcasting Board of Governors (BBG), or a grantee of the BBG, can petition for an alien (and the alien's accompanying spouse and children) who may broadcast as defined, for the Broadcasting Board of Governors (BBG) or grantee of the BBG. The International Broadcasting Bureau will be the petitioner, the alien will be beneficiary. 8 CFR § 204.13(c) regulates the number of 8 CFR petition, the fourth preference eligibility; 8 CFR § 204.13(e) provides that petitioners who may apply; while 8 CFR § 204.13(d) provides for supplemental evidence to accompany the form.

Regulations
8 CFR § 204.13(a), added in 2001, provides

---

2004 Cumulative Supplement

© West, a Thomson business  5200

## § 1950  Burden of proof on INS in cases of deportable aliens

### Cases

Board of Immigration Appeals (BIA) had substantial evidence to conclude that proceedings against illegal alien commuting to United States were not rendered unfair by failure of Immigration and Naturalization Service (INS) to produce persons transported by alien; alien had opportunity to cross-examine INS agent who testified to such persons' statements that alien had picked them up in Mexico, other evidence buttressed agent's testimony and undermined alien's credibility, and alien did not dispute that INS attempted to locate and produce persons whom alien had transported. Gonzalez-Gonzalez v. INS, 322 F.3d 804 (6th Cir. 2003).

Alien's constitutional due process rights were violated where he was not accorded a hearing to determine whether he should continue to be detained as a mentally ill removable alien who was dangerous to the community; the hearings process would bear the burden of establishing by clear and convincing evidence that alien posed a risk to the community sufficient to justify his continued detention, and a new evaluation would be required to detect every six month period to continue his detention. Fequiere v. Ashcroft, 279 F.3d 1325 (11th Cir. 2003).

## § 1951  Proof of conviction

### Cases

Alien's admission of drug conviction under oath established alien's conviction for deportation purposes; statute specifying permissible forms of proof of criminal conviction did not establish the sole means of establishing criminal conviction, but permitted other forms if probative. Pequiere v. Ashcroft, 279 F.3d 1325 (11th Cir. 2003).

## § 1953  Burden of proof where alien present in the United States without being admitted or paroled

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1240 was redesignated 8 C.F.R. Part 1240, except for 8 C.F.R. § 240.25.

## § 1954  Burden of proof where relief from removal sought

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 240 was redesignated 8 C.F.R. Part 1240, except for 8 C.F.R. § 240.25.

### Cases

Alien failed to meet his burden of proving that, as result of his desertion from Chinese military, he was more likely than not to be tortured if removed to China, and that removal thus would not be permitted under Convention Against Torture (CAT), where he submitted no evidence that military deserters generally are tortured in China, and, although he stated he was beaten after desertion attempt and told again that he would be beaten if he deserted again, he failed not establish that previous beatings was anything more than deviant practice. Wang v. Ashcroft, 320 F.3d 130 (2d Cir. 2003).

Even if inadequacies in the record proceedings amounted to fundamental procedural errors, alien, who was convicted of an aggravated felony, could not show that those events prejudiced him because he could not make even a plausible showing that he might have been prejudiced by military relief; because alien's removal would not cause injustice or extraordinary familial difficulty, he would not be able to make the required showing of "extreme hardship" necessary for a waiver. U.S. v. Gonzalez-Antonio, 278 F.3d 124 (2d Cir. 2002).

Defendant's profferred reasons for relief from deportation order, that he wanted to stay in the United States, and that litigation and related appeal, and to collect on a pending workers' compensation claim, were insufficient to establish plausible grounds for relief from deportation, as required to show due process violation in reopening proceeding, and thus denial of motion to dismiss indictment for offense of following deportation, was warranted. U.S. v. Gaviria-Abuabara, 659 F.2d 167, 59 Fed. R. Evid. Serv. 817 (6th Cir. 2002).

## § 1955  Notice of decision

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1003. 8 C.F.R. Part 240 was redesignated 8 C.F.R. Part 1240. 8 C.F.R. § 240.25.

## § 1956  Record

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1240, except for 8 C.F.R. § 240.25.

## § 1957  Motion to reconsider

### Cases

Alien's petition for review of the Board of

---

### d.  Initiation of Removal Proceedings  [§§ 1922–1926]

## § 1922  Notice to appear

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003. 8 C.F.R. Part 208 was redesignated 8 C.F.R. Part 1208. 8 C.F.R. Part 235 was redesignated 8 C.F.R. Part 1235. 8 C.F.R. Part 200, consisting of 28 C.F.R. § 200.1,

8 C.F.R. § 239.1(a), as amended in 2003, provides that any immigration officer, or supervisor thereof, performing an inspection of an arriving alien at a port-of-entry may issue an notice to appear to such alien. In addition, the following officers, or officers acting in such capacity, may issue a notice to appear: (1) District directors; (2) Deputy district directors; (3) Chief patrol agents; (4) Deputy chief patrol agents; (5) Assistant chief patrol agents; (6) Patrol agents in charge; (7) Assistant patrol agents in charge; (8) Field operations supervisors; (9) Special operations supervisors; (10) Supervisory border patrol agents; (11) Service center directors; (12) Deputy service center directors; (13) Assistant service center directors for examinations; (14) Supervisory asylum adjudications officers; (15) Supervisory asylum officers; (16) Officers in charge (except foreign); (17) Assistant officers in charge (except foreign); (18) Special agents in charge; (19) Deputy special agents in charge; (20) Assistant special agents in charge; (21) Assistant special agents in charge; (22) Resident agents in charge; (23) Supervisory special agents; (24) Directors of investigations; (25) District directors; (26) Deputy assistant district directors for investigations; (27) Director of detention and removal; (28) Field office directors; (29) Deputy field office directors; (30) Supervisory deportation officers; (31) Supervisory detention and deportation officers; (32) Directors or assistant directors of field operations; (33) District field directors; (34) Deputy or assistant district directors of field operations; (35) District field officers; (36) Port directors; (37) Deputy port directors; or (38) Other officers or employees of the Service or of the United States who are so delegated the authority as provided by § 2.1 of this chapter to issue notices to appear.

### Cases

To comport with due process requirements, the notice afforded aliens about deportation proceedings must be reasonably calculated to reach them. Singh v. INS, 340 F.3d 802 (9th Cir. 2003).

Aliens received adequate notice of deportation proceeding when Immigration and Naturalization Service (INS) personally served written notice upon their mother in their presence, in court at master calendar hearing, advising them of next hearing date, and Immigration Judge (IJ) thus could conduct removal in absentia hearing in absentia when aliens failed to appear at next hearing. Reyes-Garcia v. INS, 222 F.3d 1203 (9th Cir. 2000).

Entry of in absentia deportation order, after notice of deportation hearing was sent to defendant's former address, was not fundamentally unfair, and alien thus could not collaterally attack deportation order during prosecution for illegally reentering United States on ground that he was deprived of due process; defendant had been adequately warned of his responsibility to keep his address current and failed to do so. U.S. v. Hinojosa-Perez, 206 F.3d 832 (9th Cir. 2000).

Requiring that applicable forms issued by Immigration and Naturalization Service (INS) be printed in both English and Spanish was not appropriate injunctive remedy for inadequate notice of deportation procedures provided to aliens charged with document fraud; although multilingual forms would be an effective means of ensuring adequate notice, as was appropriate to an INS determine how best and most fairly to communicate the necessary information to aliens, rather than to simply so provide forms for as to reach all aliens. Walters v. Reno, 145 F.3d 1032 (9th Cir. 1998).

Immigration and Naturalization Service (INS) did not deprive alien of reasonable opportunity to be present at deportation hearing, so as to violate due process clause, when, even in proceeding which alien was sent, the INS sent notice of hearing to second address, and failed to change document to reflect first address, even though her signature appeared directly over second address. U.S. v. Gutierrez, 140 F.3d 1287 (9th Cir. 1998).

Immigration and Naturalization Service (INS) complied with alien's due process rights in sending notice of removal hearing to address relative that gave to INS in form submission, rather than to address the INS peared on handwritten note in her INS along with notation "staying with cous." inasmuch as note did not satisfy statutory requirement that alien's notice of change of address be in writing, note did not state that alien was residing with cousin, and that was no proof as to when note was made of file. Dominguez v. U.S. Atty. Gen., 284 F.3d 1258 (11th Cir. 2002).

## § 1924 — Cancellation of notice to appear

### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 239 was redesignated 8 C.F.R. Part 1239.

## § 1925  Securing of counsel

### Cases

Alien who sought to reopen deportation proceeding after the expired filing deadline for appealing decision of Immigration Judge to exclude and deport him could not establish ineffective assistance of his former counsel, where alien failed to file affidavit setting forth his contract with counsel regarding scope of counsel's representation on appeal,

## § 1925

and alien failed to tie the disciplinary her complaint against alien's former counsel. Xu Yong Lu v. Ashcroft, 259 F.3d 127 (3d Cir. 2003).

## § 1926 Prompt initiation of removal required

**Cases**

Federal district court did not have jurisdiction to review Attorney General's decision to transfer alien from one locale to another to commence removal proceedings, absent evidence that transfer interfered with ongoing relationship with alien's attorney or precluded alien from presenting witnesses. Da Rosa Silva v. INS, 263 F. Supp. 2d 1005 (E.D. Pa. 2003).

## c. Removal Proceedings [§§ 1927–1934]

### (1) In General [§§ 1927–1961]

## § 1927 Immigration Judges to conduct proceedings

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1240, except for 8 C.F.R. Part 1240, was redesignated 8 C.F.R. Part 1240.

## § 1928 Withdrawal and substitution of Immigration Judge

**Regulations**

Title 8 of the Code of Federal Regulations

## § 1930 Exclusive procedures

**Cases**

Exclusive jurisdiction provision of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), under which an alien could not challenge his removal order until entry of final removal order, did not deprive federal courts of jurisdiction over redress sought by alien. Tapia-Garcia v. U.S., 53 F. Supp. 2d 370 (S.D.N.Y. 1999).

## § 1931 Withdrawal of application for admission

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1240, except for 8 C.F.R. Part 1240, was redesignated 8 C.F.R. Part 1239.

## § 1932 Motion to dismiss

**Regulations**

8 C.F.R. § 239.2(c), as amended in 2003, provides that after commencement of proceedings, ICE counsel, or any officer enumerated in 8 C.F.R. § 239.2(a) may move for dismissal of the matter on the grounds set out under 8 C.F.R. § 239.2(a).

## § 1933 Motion to remand

**Regulations**

8 C.F.R. § 239.2(d), as amended in 2003, provides that after commencement of the hearing, ICE counsel, or any officer enumerated in 8 C.F.R. § 239.2(a) may move for remand of the

## § 1948 Evidence

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1240, except for 8 C.F.R. Part 1240.25.

**Cases**

When an alien's continuing presence in the United States is in violation of the immigration laws, the Government does not offend the Constitution by deporting him for the additional reason that he believes him to be a member of an organization that engages in terrorist activity. Reno v. American-Arab Anti-Discrimination Committee, 119 S. Ct. 936, 142 L. Ed. 2d 940 (U.S. 1999).

## § 1949 Burden of proof on alien

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1240, except for 8 C.F.R. Part 1240.25.

© West, a Thomson business, 5/2004

ALIENS AND CITIZENS

Attorney was discretionary decision not subject to appellate review. Immigration and Nationality Act, § 276, 8 U.S.C.A. § 1326. U.S. v. Molina-Valenzuela, 63 Fed. Appx. 808 (9th Cir. 2002).

District court's improper classification of alien's four prior California convictions for convictions under the instance (DUI), and one California felony conviction for DUI following prior DUI offenses, as aggravated felonies, use of convictions as basis for enhancement of his sentence after he was convicted of illegally entering, attempting to enter, and being found in the United States following deportation, did not require reversal of illegal aliens did not present mutually exclusive defenses requiring severance of trial, defendant's ignorance defense was minimally inconsistent with codefendant's ignorance defense, defendant's trial testimony did not conflict with codefendant's statements to law enforcement, codefendant did fill little to her or present, confess did not testify, present any evidence incriminating him, or cross-examine him, and court issued limiting instructions and separate verdicts forms for each defendant to minimize any prejudice. U.S. v. Angwin, 271 F.3d 786 (9th Cir. 2001).

Alien was prejudiced by due process violation occurring when he waived right to appeal deportation order, and his due process rights thus were violated, where immigration judge stated to group of detainees "you all understand that you will have the right to appeal," to which detainees answered yes, judge stated to group that anyone who wished to fight his or her case should raise hand, and no detainee did so, and judge asked alien individually whether he understood his rights, to which he responded "yes," and whether there was anything he'd like to say, to which he responded "no." U.S. v. Zarate-Martinez, 133 F.3d 1194 (9th Cir. 1998).

**2.   Aiding Illegal Entry of Aliens**
**[§§ 3187–3272]**

**a.   Smuggling and Harboring Aliens**
**[§§ 3187–3260]**

**(1)   Elements of Offenses; Defenses**
**[§§ 3187–3199]**

## § 3187 Overview

**Research References**

Validity, Construction, and Application of § 274a(1)(A)(iv) of Immigration And Nationality Act (8 U.S.C.A. § 1324(a)(1)(A)(iv)), Making it Unlawful to Induce or Encourage Alien to Come to, Enter, or Reside in United States. 137 A.L.R. Fed. 227.

Validity, Construction, and Application of §§ 274(a)(1)(A)(i) and 274(a)(2) of Immigration and Nationality Act (8 U.S.C.A. § 1324(a)(1)(A)(i), (a)(2)), Making it Unlawful to Bring Alien to United States. 136 A.L.R. Fed. 511.

Construction and Application of United States Sentencing Guideline § 2L1.1, Involving Sentences for

Smuggling, Transporting, or Harboring Unlawful Aliens, 136 A.L.R. Fed. 613.

**Cases**

Doctrine of "official restraint" does not apply to prosecution for smuggling aliens, since that United States, and a defendant thus can be convicted of smuggling aliens even if the aliens smuggled were never free from governmental restraint. U.S. v. Gonzalez-Torres, 273 F.3d 1181 (9th Cir. 2001).

Defendants charged with aiding and abetting the bringing of illegal aliens for financial gain and transportation of illegal aliens did not require reversal of illegal aliens did not present mutually exclusive defenses requiring severance of trial, defendant's ignorance defense was minimally inconsistent with codefendant's ignorance defense, defendant's trial testimony did not conflict with codefendant's statements to law enforcement, codefendant did fill little to her or present, confess did not testify, present any evidence incriminating him, or cross-examine him, and court issued limiting instructions and separate verdicts forms for each defendant to minimize any prejudice. U.S. v. Angwin, 271 F.3d 786 (9th Cir. 2001).

## § 3188 Bringing in aliens

**Research References**

Construction and Application of United States Sentencing Guideline § 2L1.1 (18 U.S.C.A. § 2L1.1), Involving Sentences for Smuggling, Transporting, or Harboring Unlawful Aliens, 136 A.L.R. Fed. 613.

**Cases**

Statute prohibiting bringing aliens into United States for commercial advantage or personal financial gain does not necessarily exclude from its scope a defendant who brings aliens into the United States solely in return for his own entry or transportation, although defendant was entitled to argue that his actions did not constitute commercial advantage or private financial gain. U.S. v. Perez-Valdez, 182 F.3d 331 (5th Cir. 1999).

Defendant "brought" aliens to United States, for purposes of her conviction for bringing in and harboring certain aliens, even though defendant did not actually pilot airplane and she did not speak to aliens; defendant guided aliens to aircraft that was heading to United States, she walked slowly until aliens caught up to her in airport and less quickly led them on flight to United States, aliens' testified that defendant was pointed out as their escort and that she changed pace once she fell in behind her, and defendant saw two baggage claims under aliens' aliases hidden in her underwear. U.S. v. Yoshida, 303 F.3d 1145 (9th Cir. 2002).

## § 3189 Transporting or moving aliens within United States

**Research References**

Construction and Application of United States Sentencing Guideline § 2L1.1 (18 U.S.C.A. § 2L1.1), Involving Sentences for Smuggling, Transporting, or Harboring Unlawful Aliens, 136 A.L.R. Fed. 613.

## § 3189

**Cases**

Fact that defendant's illegal reentry into the United States occurred prior to his state court misdemeanor conviction and sentence did not preclude using the misdemeanor conviction to add two points to his criminal history at sentencing for unlawful reentry by a deported alien, where the indictment charged, and defendant pled guilty to, being found in the United States after deportation, and defendant was serving criminal probation sentence for the misdemeanor conviction when he was found in the United States. U.S. v. Bustos-Garay, 283 F.3d 1200 (10th Cir. 2002).

## § 3190 — Employment-related transportation

**Cases**

Requirement, for conviction for illegal transportation of illegal aliens, that defendant transported aliens "in furtherance of" their illegal presence in United States was not satisfied when no evidence showed that defendant profited or intended to profit from transporting two undocumented aliens or that he sought to conceal them during trip, and when evidence showed that aliens were transported for relative and defendant did not profit. U.S. v. Barajas-Chavez, 134 F.3d 1444 (10th Cir. 1998).

## § 3194 Concealing or harboring aliens

**Research References**

Validity, construction, and application of 8 U.S.C.A. § 1324(a)(1)(A)(iii), making it unlawful to harbor or conceal illegal alien. 137 A.L.R. Fed. 255.

Construction and Application of United States Sentencing Guideline § 2L1.1 (U.S.S.G. § 2L1.1), Involving Sentences for Smuggling, Transporting, or Harboring Unlawful Aliens, 186 A.L.R. Fed. 613.

**Cases**

For purposes of penalty provisions of harboring statute, defendant in prosecution for conspiracy to transport an illegal alien, and harboring an illegal alien, was liable for any serious bodily injury caused by physical abuse by his wife, charged as a coconspirator, of the alien wife, in that wife's abuse was foreseeable to defendant, and in furtherance of the conspiracy, the purpose of which was to obtain free labor, as shown by evidence that

30

defendant said nothing when he saw that wife pulled out the alien's hair in clumps, causing her head to bleed, because she did not like the way the alien was washing the family dog, and that when the alien complained of hunger, defendant about his wife's abuse, he would tell the alien to pray for his wife, and that some day the abuse would stop. U.S. v. Bonetti, 277 F.3d 441 (4th Cir. 2002).

Complaint alleged that fruit growers had knowledge of illegal "harboring "and/or "smuggling" of undocumented workers sufficiently alleged predicate act of knowingly hiring undocumented workers, as required to state claim under Racketeer Influenced and Corrupt Organizations Act (RICO), in that complaint, even though easily contained such allegation. Mendoza v. Zirkle Fruit Co., 301 F.3d 1163 (9th Cir. 2002).

## § 3195 — Employment exception

**Cases**

Statute proscribing harboring an illegal alien could be applied to an employer, despite existence of separate statute, with lesser penalties, proscribing unlawful employment of aliens, under which employer could have been prosecuted; Congress intended the harboring statute to apply to employers and amended statute to eliminate prior express sanction of employers. U.S. v. Kim, 193 F.3d 567 (2d Cir. 1999).

## § 3196 Encouraging or inducing entry of aliens

**Research References**

Validity, Construction, and Application of § 274(a)(1)(A)(iv) of Immigration And Nationality Act (8 U.S.C.A. § 1324(a)(1)(A)(iv)), Making it Unlawful to Induce or Encourage Alien to Come to, Enter, or Reside in United States. 137 A.L.R. Fed. 225.

Validity, Construction, and Application of §§ 274(a)(1)(A)(i) and 274(a)(2) of Immigration and Nationality Act (8 U.S.C.A. § 1324(a)(1)(A)(i) and (2), Making it Unlawful to Bring Alien to United States, 186 A.L.R. Fed. 511.

### (2) Arrest, Prosecution, and Sentencing [§ 3200–3226]

### (a) Overview [§ 3200–3207]

## § 3200 Arrest

**Cases**

Immigration and Naturalization Service (INS) agents acted within their statutory authority in looking through defendant's briefcase and luggage after his flight had landed in Hawaii, and after they had been informed by INS agents stationed in Guam that defendant might be involved in smuggling aliens, inasmuch as agent had reasonable cause to believe that defendant had rendered himself inadmissible by aiding and abetting aliens in their attempt to enter United States illegally. U.S. v. Teal, 282 F.3d 690 (9th Cir. 2002).

## § 3203 Indictment or information

**Cases**

Indictment charging both attempting to

## § 225 Law students and law school graduates

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1292.

## § 226 Reputable individuals

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1292.

## § 227 Recognized organization

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1292.

## § 228 — Application for recognition

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1292.

## § 229 — Withdrawal of recognition

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1292.

## § 230 — Accreditation of representatives

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1292.

## § 231 Other representatives

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1292.

### c. Appearance; Substitution [§ 232]

## § 232 Generally

**Statutes**

The Immigration and Naturalization Service was phased out by the Homeland Security Act of 2002 (P.L. 107-296). Its duties were turned over by this newly established Bureau of Citizenship and Immigration Services (see 6 U.S.C.A. § 271 et seq.) and Bureau of Border Security (see 6 U.S.C.A. §§ 251 et seq.), both within the Department of Homeland Security.

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1292.

### 5. Procedures Involving INS Decisions and Records [§§ 233-235]

### a. In General [§§ 233-235]

## § 233 Precedent decisions

**Statutes**

The Immigration and Naturalization Service was phased out by the Homeland Security Act of 2002 (P.L. 107-296). Its duties were taken over by the newly established Bureau of Citizenship and Immigration Services (see 6 U.S.C.A. § 271 et seq.) and Bureau of Border Security (see 6 U.S.C.A. §§ 251 et seq.), both within the Department of Homeland Security.

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. § 103.3 was redesignated 8 C.F.R. § 1103.3.

8 C.F.R. § 103.3(c), as amended in 2003, added a new sentence. The Secretary of Homeland Security or specific officials of the Department of Homeland Security designated by the Secretary with the concurrence of the Attorney General, may file with the Attorney General decisions relating to the administration of the immigration laws of the United States for publication as precedent decisions ... and upon approval of the Attorney General as to the lawfulness of such decision, the Director of the Executive Office for Immigration Review will cause such decisions to be published in the same manner as decisions of the Board and the Attorney General.

8 C.F.R. § 103.3(e), added in 2003, provides that proceedings before the Board of Immigration Appeals, and the Attorney General are governed by part 1008 of 8 C.F.R. chapter V. 8 C.F.R. § 103.37(g) provides the rules for decisions as precedents. and 8 C.F.R. § 103.37(i) provides for the publication of Secretary's precedent decisions.

## § 234 Officials authorized to certify records or nonexistence thereof

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland...

---

## ALIENS AND CITIZENS § 96

Death Penalty Act (AEDPA) striking specific preservation of habeas corpus jurisdiction provision of Immigration and Nationality Act (INA), AEDPA's ... precluding court review of deportation order, ... legislation to consider by reason of having committed criminal offense, and IIRIRA section disallowing appeal of deportation by alien deportable for having committed one of certain criminal offenses. Gutierrez-Vidal v. Greene, 190 F.3d 1135 (11th Cir. 1999).

Immigration and Nationality Act (INA) did not violate alien's rights under Equal Protection Clause by rendering him ineligible for waiver of deportation where he was deportable for conviction of crime. Farquharson v U.S. Atty. Gen., 246 F.3d 1317 (11th Cir. 2001).

For purposes of immigration cases, habeas corpus jurisdiction under federal habeas statute was not eliminated when Congress enacted provision of Antiterrorism and Effective Death Penalty Act (AEDPA) eliminating the Immigration and Naturalization Act (INA) allowing review of an order of deportation by habeas corpus. Mayers v. U.S. Dept. of I.N.S., 175 F.3d 1289 (11th Cir. 1999).

Antiterrorism and Effective Death Penalty Act (AEDPA) ... category of criminal convictions that would render an alien ineligible for waiver of deportation did not apply retroactively to cases pending on date of enactment, since it was silent on question of retroactivity but several of AEDPA's other immigration provisions contained explicit retroactivity language. Mayers v. U.S. Dept. of I.N.S., 175 F.3d 1289 (11th Cir. 1999).

Provision of Antiterrorism and Effective Death Penalty Act (AEDPA), which rendered deportable aliens convicted of certain offenses ineligible for discretionary relief from deportation, did not apply retroactively to alien whose deportation proceedings and applications for relief were pending at the AEDPA was enacted. Gutierrez-Perez v. Fasano, 37 F. Supp. 2d 1166 (S.D. Cal. 1999).

District court lacked habeas jurisdiction to review three discretionary decisions of the Attorney General to deny alien's bond, his application for relief from deportation, and his application for asylum. Chavez v. U.S. I.N. S., 39 F. Supp. 2d 585 (W.D. La. 1999).

Alien who pleaded guilty to crimes prior to the passage of Antiterrorism and Effective Death Penalty Act (AEDPA) would be eligible for a waiver of deportation under Immigration and Nationality Act (INA) as amended by Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), if such waiver is extant under pre-AEDPA law if he actually and rea-

sonally relied upon existence of the waiver provision in making the decision to enter a guilty plea. Sango-Dema v. District Director, I.N.S., 122 F. Supp. 2d 213 (D. Mass 2000).

The District court that jurisdiction to consider "power base of law" passing to petitions of aliens subject to deportation orders, including writs of habeas corpus ... on the ground that Congress did not intend Antiterrorism and Effective Death Penalty Act's (AEDPA) restrictions on discretionary relief from deportation to apply retroactively in aliens in pending deportation proceedings at the time of enactment. Mojica v. Reno, 52 F. Supp. 2d 195 (D. Mass. 1999).

Antiterrorism and Effective Death Penalty Act's (AEDPA) restriction on the availability of discretionary relief from deportation could not be retroactively applied to resident alien whose deportation case was commenced before enactment of AEDPA. Machado v. I.N.S., 33 F. Supp. 2d 88 (D. Mass 1999).

Antiterrorism and Effective Death Penalty Act (AEDPA) statute prohibiting discretionary relief from deportation to aliens convicted of drug offenses did not violate due process rights of alien, whose drug conviction predated the amendment, where applying the amendment to alien's discretionary relief application post-dated the amendment, operated only prospectively towards aliens. Tien v I.N.S., 55 F. Supp. 2d 422 (D.N.J. 1999).

District court was not statutorily stripped of jurisdiction to conduct habeas review of the order of deportation before statute was enacted. Farquharson v. I.N.S., 31 F. Supp. 2d 403 (D. N.J. 1999).

District court had jurisdiction over habeas petition brought by alien convicted of drug offense whose petition predated the Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) from seeking judicial review of his deportation order. Farquharson v. I.N.S., 31 F. Supp. 2d 403 (D.N.J. 1999).

Antiterrorism and Effective Death Penalty Act's (AEDPA) elimination of eligibility for discretionary relief from deportation for lawful permanent residents convicted of an enumerated offense did not apply retroactively to alien who pled guilty after AEDPA's enactment. Sena v. Reno, 51 F. Supp. 2d 349 (S.D.N.Y. 1999).

Removable alien was not entitled to raise his constitutional claims regarding his detention in habeas proceeding since he failed to exhaust his administrative remedies by resort to procedures for discretionary relief available under the Immigration and Naturalization Service (INS) district director ... appealing any adverse decision to Board of Immigration Appeals (BIA). Rodriguez v. McElroy, 53 F. Supp. 2d 587 (S.D.N.Y. 1999).

Following enactment of Antiterrorism and Effective Death Penalty Act (AEDPA) and Ille-

gal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which severely limited judicial review from removal of an alien, did not apply to alien who was convicted and sentenced to incarceration prior to removal but no longer reasonably to be considered merely a collateral consequence of alien defendant's guilty plea, and therefore guilty plea that would automatically result in legal alien defendant's removal as unintelligently and involuntarily made (knowing of the collateral consequences, of which he reasonably was unaware). U.S. v. El-Nobani, 145 F. Supp. 2d 906 (N.D. Ohio 2001).

Provision of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), limiting review of attorney General's discretionary judgment, did not deprive district court of jurisdiction to review, by petition for habeas corpus, alien's challenge to his mandatory detention pending removal proceedings; Act did not expressly repeal unequivocal revocation of habeas corpus jurisdiction. Con v. Zemski, 54 F. Supp. 2d 437 (E.D. Pa. 1999).

Antiterrorism and Effective Death Penalty Act's (AEDPA) elimination of judicial relief for deportable aliens, while permitting relief for others, violated alien's right of equal protection; two classes of deportable aliens were not similarly situated, and, even if they were, there was a rational basis for dissimilar treatment. Hermanez v. Reno, 56 F. Supp. 2d 754 (D. Tex. 1999).

District court had jurisdiction to review alien's habeas corpus petition challenging final order of deportation based on his conviction of a drug-related offenses did not violate Equal protection possession, notwithstanding jurisdictional bar of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Celibe v. Gonzalez v. Garcia, 38 F. Supp. 24 497 (W.D. Tex. 1999).

Section of Antiterrorism and Effective Death Penalty Act (AEDPA) barring waivers of deportation for aliens convicted of certain drug-related offenses applied retroactively to alien's application for waiver, though alien's conviction on which deportation was based had occurred before enactment of AEDPA, since waiver application was filed after effective date of AEDPA. Cedilio-

Gonzalez v. Garcia, 38 F. Supp. 2d 479 (W.D. Tex. 1999).

Habeas jurisdiction did not exist over alien's claim that deportation was barred because INS (Immigration and Naturalization Service) violated constitutional due process requirements in the administrative process, challenge to the secret evidence used in excluding alien, where alien failed to seek it in the court of appeals after the issuance of a final order in the administrative process, challenge to the secret evidence, challenge to the final order; challenge to final order; challenge to the exclusive jurisdiction of courts of appeals. Hudam v. Reno, 54 F. Supp. 2d 588 (E.D. Va. 1999).

Habeas jurisdiction existed over excludable alien's claims regarding immigration and Naturalization Service's (INS) decision to incarcerate alien indefinitely and deny release on any conditions. Hudam v. Reno, 54 F. Supp. 2d 588 (E.D. Va. 1999).

## § 47 — Exclusion and/or denial of relief from deportation for alien terrorists and aliens who entered the United States without inspection

### Cases

Where a federal habeas corpus statute grants federal courts authority to decide whether given post-removal-period detention of alien is statutorily authorized, courts are not required to defer to executive branch's view as to whether implicit reasonableness limitation of post-removal-period detention is satisfied, although executive view must be taken into account. Immigration and Nationality Act, § 241(a)(6), as amended, 8 U.S.C.A. § 1231(a)(6); 28 U.S.C.A. § 2241(c)(3). Zadvydas v. Davis, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (U.S. 2001).

Rule of Cage v. Louisiana that a jury instruction is unconstitutional if there is a reasonable likelihood that the jury understood it to allow conviction without proof beyond a reasonable doubt, was not a new rule of constitutional law, and thus alien was entitled to review under the Supreme Court's previously unavailable. West v. Vaughn, 204 F.3d 53 ; 28 U.S.C.A. § 2244(b). Tyler v. Cain, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (U.S. 2001).

With regard to provision of the Antiterrorism and Effective Death Penalty Act (AEDPA) allowing successive habeas petition to be considered if based on new rule of constitutional law, made retroactive to cases on collateral review, the Supreme Court holds it to be retroactively applicable to cases on collateral review" only if the Supreme Court holds it to be "made retroactive to cases on collateral review." Antiterrorism and Effective Death Penalty Act (AEDPA), § 106(b)(2)(A), 28 U.S.C.A. § 2244(b)(2)(A); West v. Vaughn, 204 F.3d 53. Tyler v. Cain, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (U.S. 2001).

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 292 was redesignated 8 C.F.R. Part 1003. 8 C.F.R. Part 292 was redesignated 8 C.F.R. Part 1292.

**Subpart G, 8 CFR §§ 3.101–3.109, added in 2000,** entitled Professional Conduct for Practitioners, 8 CFR § 3.101 contains general provisions. 8 CFR § 3.102 provides grounds for discipline. 8 CFR § 3.103 describes situations and procedures calling for immediate suspension and summary disciplinary proceedings and the duty of disciplinary counsel. 8 CFR § 3.104 provides the disciplinary proceeding. 8 CFR § 3.105 provides for the notice of intent to discipline, while 8 CFR § 3.106 contains hearing and disposition provisions. 8 CFR § 3.107 provides reinstatement provisions. 8 CFR § 3.108 Finally, 8 CFR § 3.109 provides for discipline of government attorneys.

8 CFR § 292.2 was extensively amended in 2000 and adopted as final rule effective July 2000. 8 CFR § 292.2 provides this final rule. This change allows for the adjudicating official or the Board to impose disciplinary sanctions as described in paragraph (a)(1) of this section against any practitioner who is an attorney or his or her client within the meaning of provision of the of the chapter, with the exception of paragraphs (b) and (f) of that section, but these categories are not consistent with application of the rules and disposition provisions. 8 CFR § 3.107 provides reinstatement provisions. 8 CFR § 3.108 Finally, 8 CFR § 3.109 provides for discipline of government attorneys.

### b. Who May Represent Individuals before the INS (§§ 224–231)

#### Statutes

The Immigration and Naturalization Service was replaced by the Department of Homeland Security, 8 U.S.C. § 291 et seq., and Bureau of Citizenship and Immigration Services (see 6 U.S.C.A. § 271 et seq.) and Bureau of Customs and Border Protection (see 6 U.S.C.A. § 211 et seq.) within the Department of Homeland Security.

#### Regulations

Title 8 of the Code of Federal Regulations Part 1003 was redesignated 8 C.F.R. Part 1003 in 2003.

Subpart G, 8 CFR §§ 3.101–3.109, added in 2000, established Professional Conduct for Practitioners—Rules and Procedures, 8 CFR § 3.101 contains general provisions. 8 CFR § 3.102 provides grounds for discipline. 8 CFR § 3.103 describes situations and procedures calling for immediate suspension and summary disciplinary proceedings and the duty of disciplinary counsel. 8 CFR § 3.104 provides the disciplinary proceeding. 8 CFR § 3.105 provides for the notice of intent to discipline, while 8 CFR § 3.106 contains hearing and disposition provisions. 8 CFR § 3.107 provides reinstatement provisions. 8 CFR § 3.108 Finally, 8 CFR § 3.109 provides for discipline of government attorneys. 8 C.F.R. Part 1292 was redesignated 8 C.F.R. Part 1292 in 2003.

### § 222 Service of papers on attorney or representative

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 292 was redesignated 8 C.F.R. Part 1292.

### § 223 Authority of representative

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 292 was redesignated 8 C.F.R. Part 1292.

### § 224 Generally

### § 221 Amici curiae

#### Regulations

Title 8 of the Code of Federal Regulations

the decision is not appropriate for affirmance without opinion, and the assignment of the case for review by a three-member panel as provided by 8 C.F.R. § 3.1(a)(1), amended in 2001, now provides that the Board will consist of a Chairman, two Vice Chairman, and twenty other members. Each additional member may now exercise such authority in disposing of the following matters: a Service motion to remand an appeal from the denial of a visa petition where the Regional Service Center Director requests consideration by the Board, for further consideration of the appellant's arguments or evidence raised on appeal; a case where remand is required because of a defective or missing transcript; an appeal by the Service of a reasonable cause decision under 8 C.F.R. § 241.14(h)(4) of this chapter; and other procedural or ministerial issues as provided by the Chairman.

8 C.F.R. § 3.1(a)(1), as amended in 2002, permits a single member of the Board to act, but no longer deals with motions to reopen a decision rendered by a single Board member.

8 C.F.R. § 3.1(d)(1-a), regarding summary dismissals, was redesignated 8 C.F.R. § 3.1(d)(2) in 1999.

8 C.F.R. § 3.1(d)(2), as amended in 2002, provides that a single Board member or panel may summarily dismiss any appeal or portion of any appeal under specified circumstances, including when the Board or a member thereof is persuaded that the appeal is filed for an improper purpose, such as to cause unnecessary delay, or that the appeal lacks an arguable basis in fact or in law unless the filing party establishes that it is supported by a good faith argument for extension, modification, or reversal of existing law; the Board's case management system plan must promptly identify cases that are subject to dismissal. A decision rendering any appeal will constitute the final decision of the Board. The filing by an attorney or representative of an appeal that is summarily dismissed under 8 C.F.R. § 3.1(d)(2)(i) may constitute frivolous behavior. Summary dismissal is not permitted by 8 C.F.R. § 3.1(d)(2)(i) does not limit the other grounds and procedures for disciplinary action against attorneys or representatives.

### Cases

Evidence sustained finding by Board of Immigration Appeals (BIA) that alien was not statutorily eligible for asylum based on persecution she suffered as 15-year-old allegedly as a result of her support for deposed Haitian President Jean-Bertrand Aristide, although individuals allegedly threw rocks at her house and killed her family's dog after suspected member of Ton Ton Macoutes heard her expressing support for Aristide, alien belonged to no political organizations and never marched in pro-Aristide demonstrations. Civil v. I.N.S., 140 F.3d 52 (1st Cir. 1998).

Finding that "statutory conditions" relied on by Board of Immigration Appeals (BIA) in asylum proceeding do not automatically trump specific evidence presented by alien seeking to establish well-founded fear of persecution upon return to country of origin. Fergiste v. I.N.S., 138 F.3d 14 (1st Cir. 1998).

Board of Immigration Appeals (BIA) was required to state its reasons for its decision in asylum proceedings once alien established past persecution. Fergiste v. I.N.S., 138 F.3d 14 (1st Cir. 1999).

Alien's initial notice of appeal filed with Board of Immigration Appeals (BIA) was not sufficient to substitute for a brief, and therefore BIA's summary dismissal of her appeal did not violate due process, even if she represented that she would file a separate written brief or statement, and she received a notice as to when her brief was due. Dev v. I.N.S., 68 Fed. Appx. 777 (9th Cir. 2003).

### g. Oral Argument; Decision; Review [§§ 304-307]

### § 304 Oral argument

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

8 C.F.R. § 3.1(e), as amended in 2002, provides that when an appeal has been taken, a request for oral argument, if desired, must be included on the Notice of Appeal. A three-member panel of the Board shall hear oral argument, as a matter of discretion, at such date and time as is established upon the Board's case management plan. Oral argument must be held at the offices of the Board unless the Deputy Attorney General or the Attorney General designee authorizes oral argument to be held elsewhere. The Service may be represented before the Board by an officer of the Service. No oral argument will be allowed in a case that is assigned for disposition by a single Board member.

#### Cases

Citizen of Laos failed to establish objective basis for asylum based on his claimed persecution, and he thus was not eligible for asylum, even though he offered evidence that he helped develop proposal presented to national assembly which resulted in others being sent to prison camps, where he was never arrested or detained, he was allowed to obtain visa to travel to United States, and his family and property remained unmolested in Laos. Savaskug v. I.N.S., 179 F.3d 516 (7th Cir. 1999).

### § 305 Findings and decision and service thereof

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

8 C.F.R. § 3.1(d)(3), as amended in 2002, provides that the Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, will be reviewed only

---

consular office considering the visa application. Under such circumstances, such an alien is inadmissible and will require a waiver of inadmissibility except for the grounds for which a waiver is sought, the consular officer will transmit the Form I-601 to the Service for decision.

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 345 was redesignated 8 C.F.R. Part 1245.

### § 780 Medical report for alien with mental disorder

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1212.

### § 781 Assurances and bond

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1212.

### § 783 Processing of application; right to appeal

#### Regulations

8 C.F.R. § 212.7(d), added in 2002, provides that the Attorney General, in general, will not favorably exercise discretion under the Act to consent to an application or reapplication for a visa, or admission to the United States, or adjustment of status, with respect to immigrant aliens who are inadmissible under the Act on criminal activity or national security crimes, except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of the application for adjustment of status or an immigrant visa or admission as an immigrant would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion under section 212(h)(2) of the Act.

### (2) Overcoming Exclusion of Relatives for Indigency [§§ 785-790]

### § 786 Affidavits of support

#### Research References

The new affidavit of support and other 1996 amendments to the immigration and welfare provisions designed to prevent aliens from becoming public charges, 21 Creight LR 8741 (1999).

#### Statutes

8 USCA § 1154(a)(1)(A)(vi) and 8 USCA § 1154(a)(1)(B)(iv) were added as part of the Violence Against Women Act of 2000 in an effort to provide improved access to immigration protections of the Violence against Women Act of 1994.

8 USCA § 1154(a)(1)(A)(iii) was amended in 2000 to provide improved access to immigration protections of the Violence against Women Act of 1994 for battered immigrant women.

8 USCA § 1182(a)(4) was amended in 2002 to permit substitution of an alternative close family sponsor in case of the death of the petitioner.

### § 787 — Who may submit affidavit support

#### Statutes

8 USCA § 1183a(f)(6) was amended in 2002 to permit substitution of an alternative close family sponsor in case of the death of the petitioner.

### 3. Employment-Based Immigrants; Labor Certification [§§ 792-1015]

### a. First Through Fifth Preference Eligibility [§§ 792-848]

### (1) Introduction [§§ 792-794]

### § 793 Necessity of job offer for preference categories

#### Statutes

8 USCA § 1153(b)(2)(B), amended in 1999, provides further that the Attorney General will grant a waiver on behalf of any alien physician with respect to whom a petition for preference classification has been filed if the physician agrees to work full time as a physician in an area designated as having a shortage of health care professionals or at a health care facility under the jurisdiction of the Secretary of Veterans Affairs if it is determined that the physician's work in the area or at such facility is in the public interest.

### (3) Second Preference Eligibility [§§ 811-837]

### (a) Members of the Professions Holding Advanced Degrees [§§ 811-823]

### § 823 Labor certification and related requirements

#### Statutes

8 USCA § 1153(b)(2)(B), amended in 1999, provides further that the Attorney General will grant a waiver on behalf of any alien physician with respect to whom a petition for preference classification has been filed if the physician agrees to work full time as a physician in an area designated as having a shortage of health care professionals or at a health care facility under the jurisdiction of the Secretary of Veterans Affairs if it is determined that the physician's work in the area or at such facility is in the public interest.

© West, a Thomson business, 5/2004

§ 825 What constitutes exceptional ability

*Sciences, Arts, or Business (§§ 824–827)*

§ 827 Waiver of job offer requirement

**Statutes**

8 U.S.C. § 1153(b)(2)(B), amended in 1999

**Regulations**

8 CFR § 204.12+, added in 2001, provides

**(b)** *Aliens of Exceptional Ability*

**Cases**

Immigration and Naturalization Service

§ 847 Eligibility and visa availability

§ 853 Definitions

**(a)** *Introduction (§§ 849–855)*

**Regulations**

20 CFR § 656.3, amended in 1998, added a

**b.** *Labor Certification Process (§§ 849–966)*

**(1)** *Introduction (§§ 849–855)*

§ 866 English language requirement for documents

**(c)** *General Requirements (§§ 861–868)*

**Research References**

*U.S.: Aliens §§ 66, 122, 182, 184*

**(b)** *Basic Labor Certification Process (§§ 869–897)*

**(iii)** *Postapplication Procedures (§§ 883–897)*

§ 885 — How prevailing wage determined

§ 886 — Calculation of prevailing wage

**Regulations**

20 CFR § 656.40(c) was redesignated

§ 887 — Davis-Bacon Act and Service Contract Act occupations

**Statutes**

40 U.S.C.A. §§ 276c, et seq. (Davis Bacon

**Regulations**

20 CFR § 656.40(c), added in 1998, provides

§ 889 — Other occupations; average wage rate

§ 914 Documentation—prearranged employment; required notices

**Regulations**

8 CFR § 214.6, added in 1998, requires cer-

**(d)** *Applications for Schedule A Occupations (§§ 910–916)*

§ 915 — Physical therapists and nurses

**Regulations**

8 CFR § 212.15, added in 1998, requires ver-

§ 300 Forwarding or transmittal of record

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer

§ 301 Examination of record by party or representative

**Regulations**

Title 8 of the Code of Federal Regulations

§ 302 Withdrawal of appeal (§§ 302, 303)

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer

**Cases**

§ 303 Summary dismissal

**Regulations**

Title 8 of the Code of Federal Regulations

© West, a Thomson business, 5/2004

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

8 CFR § 3.19(h), added in 1998, provides that while the Transition Period Custody Rules (TPCR) remain in effect, an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the specified classes of aliens. 8 CFR § 3.19(i) provides for stays of custody orders pending Service appeal, and the Service is entitled to seek an emergency stay for the Board in connection with such an appeal at any time. It also provides for automatic stays in certain cases.

## § 338 Notice of change in custody location or of release

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1003, 8 C.F.R. Part 236 was redesignated 8 C.F.R. Part 1236.

### (4) Documents and Applications; Filing [§§ 339, 340]

## § 339 Generally

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1003.

8 CFR § 3.31(d), added in 2002, provides that in any immigration proceeding, the immigration judges can, upon a showing by the Service of a substantial likelihood that specific information submitted under seal or to be submitted under seal will, if disclosed, harm the national security, as defined, or law enforcement interests of the United States, issue a protective order barring disclosure of such information. 8 CFR § 3.46(e) & 8 CFR § 3.46(f) provides for the motion by the Service. 8 CFR § 3.46(e) provides for a sealed annex to the motion. 8 CFR § 3.46(e) and 8 CFR § 3.46(f) deal with denied and granted motions.

## § 340 Service and size of documents

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Natural-

## § 341 Prehearing conferences; Continuances

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

**Cases**
Immigration judge (IJ) did not abuse his discretion, or deny asylum applicant's constitutional or statutory right to counsel, in denying alien's request for continuance and thus proceeding with asylum hearing without counsel, where counsel requested continuance only two days before hearing, he had agreed to hearing date eight months previously, counsel failed to explain reason for his planned out-of-town absence; IJ reasonably concluded counsel's absence would make no difference in hearing; and it was clear that asylum claim would not merit relief. Ponce-Leiva v. Ashcroft, 331 F.3d 369 (3d Cir. 2003).

## § 342 Recording equipment

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

## § 343 Waiver of alien's presence; in absentia hearings

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

**Cases**
Alien who was lawfully admitted for permanent residence was not denied due process in connection with his removal in absentia for convictions of crimes involving moral turpitude, by denial of his motion to reopen case; alien had notice and opportunity to attend removal hearing, and alien took advantage of opportunity to reopen case, and was to appeal denial of motion to reopen. Lopez v. Ashcroft, 267 F. Supp. 2d 150 (D. Mass. 2003).

## § 344 Telephonic or video electronic media hearings

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Natural-

§ 1154(a)(1)(B)(v) were added as part of the Violence Against Women Act of 2000 in an effort to remedy problems with implementation of the immigration provisions of the Violence Against Woman Act of 1994.

## § 608 Good moral character

**Statutes**
8 USCA § 1101(f), as amended in 2000, also provides that no finding of absence of good moral character may be made in the case of an alien who makes a false statement or claim of citizenship, or who registers to vote or votes in a federal, state, or local election in violation of a restriction of such registration or voting to citizens, if each natural parent of the alien is or was a citizen, the alien permanently resided in the United States prior to attaining the age of 16, and the alien reasonably believed that he was a citizen.

## § 612 Derivative beneficiaries

**Statutes**
8 USCA § 1101(b)(1)(F), was redesignated 8 USCA § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of an orphan child described in 8 USCA § 1101(b)(1)(F)(i), was adopted abroad, or is coming to the United States for adoption, by the adoptive parent or parents of that sibling, and is under the age of 18 years or was described in 8 USCA § 1101(b)(1)(F)(i) except that the child was under the age of 18 years at the time the petition was filed.

### (iii) Self-Petitions by Abused Children [§§ 614-624]

## § 614 Eligibility

**Statutes**
8 USCA § 1154(a)(1)(A)(vi) and 8 USCA § 1154(a)(1)(B)(iv) were added as part of the Violence Against Women Act of 2000 in an effort to remedy problems with implementation of the immigration provisions of the Violence Against Woman Act of 1994.

## § 620 Good moral character

**Statutes**
8 USCA § 1101(f), as amended in 2000, also provides that no finding of absence of good moral character may be made in the case of an alien who makes a false statement or claim of citizenship, or who registers to vote or votes in a federal, state, or local election in violation of a restriction of such registration or voting to citizens, if each natural parent of the alien is or was a citizen, the alien permanently resided in the United States prior to attaining the age of 16, and the alien reasonably believed that he was a citizen.

### (h) Petition for Parent [§§ 625-633]

## § 626 Evidence to support petition

## § 627 — Primary evidence; if petitioner is legitimate son or daughter

## § 630 — If petitioner is adopted son or daughter

**Statutes**
8 USCA § 1101(b)(1)(E)(i) was redesignated 8 USCA § 1101(b)(1)(E)(i) in 1999. Under new 8 USCA § 1101(b)(1)(E)(ii) an adopted child is also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in 8 USCA § 1101(b)(1)(E)(i), was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

## § 632 Decision on and disposition of petition

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

### (i) Petition for Brother or Sister [§§ 634-642]

## § 640 Decision on and disposition of petition

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

### (j) Validity of Approved Petition [§§ 643, 644]

## § 643 Rule of indefinite validity; subsequent petition

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 205 was redesignated 8 C.F.R. Part 1205.

## § 644 Preference priority date

**Regulations**
Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 205 was redesignated 8 C.F.R. Part 1205.

© West, a Thomson business, 5/2004

(b)  Conditional Permanent Residence
Status under Immigration Marriage
Fraud Amendments (§§ 645–659)

§ 645  Applicability; conditional nature of status

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216.

§ 646  Petition to remove condition

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216.

§ 647 — Notification requirement

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216.

§ 648 — Form and content; fees; place of filing

**Regulations**

8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211 in 2003.

8 C.F.R. § 103.7 was redesignated 8 C.F.R. § 1003.7.

8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216 in 2003.

§ 649 — Presence in U.S., not required; third-party affidavits

**Regulations**

8 C.F.R. Part 205 was redesignated 8 C.F.R. Part 1205, except for 8 C.F.R. § 205.1 in 2003.

§ 650 — Waiver of joint petition—cause of terminated marriage

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated

48

§ 651 — Petition on behalf of children of conditional permanent resident

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216.

§ 652  Personal interview

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216.

§ 653  Decision; removal of condition or termination of status; review in subsequent deportation proceeding

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216.

§ 654  Termination of status for failure to file petition or appear for interview

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216.

§ 656  Filing of petition during two-year conditional period

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated

§ 657  Termination during two-year conditional period

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 216 was redesignated 8 C.F.R. Part 1216, 8 C.F.R. Part 235.1 in 2003.

§ 659  Waiver of petition and interview requirements

**Regulations**

Title 8 of the Code of Federal Regulations

2004 Cumulative Supplement

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

§ 329  Obligation to provide change of address or status

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

§ 330  Voluntary and involuntary removal from listing

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. § 1003.3.

c.  Rules of Procedure for Proceedings before Immigration Judges (§§ 331–367)

(1)  In General (§§ 331–335)

§ 331  Application of rules or procedures

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003, 8 C.F.R. Part 292 was redesignated 8 C.F.R. Part 1292.

8 C.F.R. § 3.12 was amended in 2000 by revising the reference to § 292.3 of this chapter to read as this part.

8 C.F.R. § 3.46, added in 2002, provides that in any immigration or bond proceeding, immigration judges can, upon a showing by the Service of a substantial likelihood that specific information submitted under seal or in camera to the immigration judge is defined, or law enforcement interests of the United States, issue a protective order barring disclosure of such information. (8 CFR § 3.46(a); 8 CFR § 3.46(b) provides for a sealed annex to the tion, 8 CFR § 3.46(e) and 8 CFR § 3.46(f) deal with denial and granted motions, redesignated 8 C.F.R. Part 289 was redesignated 8 C.F.R. Part 1289.

§ 332  Jurisdiction; commencement of proceedings

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003, 8 C.F.R. Part 236, 8 C.F.R. 337.4 was redesignated 8 C.F.R. Part 1337, 8 C.F.R. Part 240 was redesignated 8 C.F.R. Part 1240, except for 8 C.F.R. § 240.25.

§ 333  Venue

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

§ 334  Scheduling of case by immigration judge; notice of hearing

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

§ 335  Waiver of fees

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003.

(2)  Representation and Appearance before Immigration Judge (§ 336)

§ 336  Generally

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 3 was redesignated 8 C.F.R. Part 1003, 8 C.F.R. Part 292 was redesignated 8 C.F.R. Part 1292.

**Cases**

Alien's due process rights were not violated by alleged ineffective assistance of counsel, in removal proceeding, where alien failed to show that he was prevented from reasonably presenting his case; Da Ruan Silva v. INS, 263 F.Supp. 2d 1006 (E.D.Pa. 2003).

(3)  Redetermination of Custody and Bonds Decisions Made by INS (§§ 337, 338)

§ 337  Generally

**Regulations**

Title 8 of the Code of Federal Regulations

## § 2184

ALIENS AND CITIZENS

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1212. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212. 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

### § 2167 Certain Polish and Hungarian parolees

### § 2168 — Waiver of inadmissibility

**Statutes**

8 USCA § 1182(a)(2)(C), amended in 1999, designated the general inadmissibility provision for drug traffickers as (i) and added (ii) which makes inadmissible specified relatives of such alien inadmissible under (i) if the person obtained financial or other benefits from the illicit activity, and knew or should have known that the benefit was the product of that activity.

8 USCA § 1182(a)(3)(B)(ii), involving officers and the like of the Palestine Liberation Organization. The designation in 2001 to address more specifically definitions relating to terrorism.

### (g) Effect of Departure While Adjustment Application Is Pending [§§ 2169, 2170]

### § 2169 Generally

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

### § 2170 Application for advance parole

**Cases**

Rule that arriving aliens in removal proceedings who were not advance parolees were ineligible to apply for adjustment of status so that of lawful permanent resident was a new rule imposed on alien in violation of due process; arriving alien, was in the same position as those aliens termed excludable before rule took effect, and just as excludable aliens who were eligible for adjustment of status only if they were returning to the United States under a grant of advance parole, arriving aliens in removal proceedings remained eligible for adjustment of status under that same regulation, so long as they were returning to the United States with permission pursuant to advance parole. U.S.C.A. Const.Amend. 5; Immigration and Nationality Act, § 245, 8 U.S.C.A. § 1255; 8 C.F.R. § 245.1(c)(8). Sevilla v. I.N.S., 33 Fed. Appx. 238 (9th Cir. 2002).

### § 2172 Factors considered in exercise of discretion; applicant's good-faith entry

### § 2176 — Applicant's moral character

**Statutes**

8 USCA § 1101(f), as amended in 2000, also

provides that no finding of absence of good moral character may be made in the case of an alien who makes a false statement or claim of citizenship, or who registers to vote or votes in a federal, state, or local election in violation of a restriction on such registration or voting to citizens, if each natural parent of the alien is or was a citizen, the alien permanently resided in the United States prior to attaining the age of 16, and the alien reasonably believed that he was a citizen.

### (3) Application and Examination Procedures [§§ 2180–2204]

#### (a) In General [§§ 2180–2187]

### § 2180 Where to file application

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 240 was redesignated 8 C.F.R. Part 1240, except for 8 C.F.R. § 240.25. 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

### § 2181 What to file

**Regulations**

8 CFR § 214.15, added in 2001, provides that under section 101(a)(15)(v) of the Act, certain eligible spouses and children of lawful permanent residents may apply for a V nonimmigrant visa at a consular office abroad and be admitted to the United States in V-1 spouse, V-2 (child), or V-3 (dependent child of the spouse or child who is accompanying or following to join the principal beneficiary) or nonimmigrant status to await the approval of other specified visas. Eligible aliens already in the United States may apply to the Service to obtain V nonimmigrant status for the same purpose. 8 CFR § 214.2(v) provides that the status of spouses and children of lawful permanent residents is governed by the new regulation.

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

### § 2183 — Relative cases

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

### § 2184 — Applicant subject to deportation

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Natural-

© West, a Thomson business, 5/2004

81

**§ 2184**

ization Service to the Department of Homeland Security; 8 C.F.R. Part 1245.

## § 2185 — Application for adjustment of status by alien who has been deported or removed; application for permission to reapply

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

**Cases**

Alien who was charged with illegal reentry after deportation, was actually prejudiced by the process violation in his deportation proceeding since there was a real possibility that he would have succeeded in obtaining the form had been preserved to the Immigration judge, and once alien's status had been adjusted, there would have been no further grounds for deportation, and no valid objection... Reque. 165 F Supp 2d 577 (D. N.Y. 2001).

## § 2186 Effect of INS misconduct resulting in unavailability of visa

**Cases**

Mere delay is insufficient to constitute affirmative misconduct by Immigration and Naturalization Service (INS) for purposes of estoppel claim. Mauting v. I.N.S, 16 Fed. Appx. 788 (9th Cir. 2001).

## § 2187 — Equitable estoppel

**Cases**

Alien did not invoke estoppel against the Immigration and Naturalization Service (INS) ... where the did not present evidence of deliberate lies or a pattern of false promises. Fernandez-Aguirre v. I.N.S., 7 Fed. Appx. 489 (9th Cir. 2001).

The Immigration and Naturalization Service (INS) was equitably estopped from asserting that alien's motion to reopen, seeking adjustment of status, was untimely, in a case in which the INS, in a letter, had led the alien to believe it would allow her to remain in the United States until a visa petition on her behalf was approved; Valencia-de-Fajardo v. I.N.S., 7 Fed. Appx. 756 (9th Cir. 2001).

### (b) Applications Made to District Director [§§ 2188–2202]

## § 2188 Medical examination; who must be examined

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer

of functions of the Department of Homeland Security; 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

## § 2192 — Proceedings upon finding of communicable disease of public health significance

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

## § 2193 — Appeal of certification

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

## § 2195 Notice of decision on application; form of discretionary denial

**Cases**

Denial of illegal reentry defendant's motion to withdraw guilty plea, in order to allow him to apply for adjustment of status as that of permanent legal resident, was not abuse of discretion; post-guilty plea statute under which adjustment would have been sought was retroactively applicable to defendant; U.S. v. Solis-Mesta, 90 Fed. Appx. 600 (10th Cir. 2009).

## § 2196 Renewal of application in deportation or exclusion proceedings

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 1236, 8 C.F.R. Part 240 was redesignated 8 C.F.R. Part 1236, 8 C.F.R. Part 1240, except for 8 C.F.R. Part 240.20, 8 C.F.R. Part 245 was redesig...

## § 2197 S nonimmigrants; application

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security; 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

## § 2198 — Priority date

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer

cess to Justice Act (EAJA), inasmuch as Congress was not reversing final determination that subject-matter jurisdiction did not exist, but was merely providing new forum to raise claim again, with new legal principles to be applied; Zambrano v. I.N.S., 282 F.3d 1145 (9th Cir. 2002).

### 5. Rules of Practice and Procedure Governing Administrative Hearings in Unlawful Employment of Aliens and Unfair Immigration-Related Employment Practices Cases [§§ 2473–2527]

### c. Hearing Procedures [§§ 2503–2515]

## § 2510 Representation of parties—by counsel; withdrawal by attorney of record

**Cases**

Immigration judge (IJ) deprived alien of his statutory right to be represented by counsel at group deportation hearing, where IJ did not address the individuals, and did not expressly state that individual had the right to counsel knowingly and voluntarily; U.S. v. Ahumada-Aguilar, 295 F.3d 943 (9th Cir. 2002).

he signed waiver, writer, in Spanish, of his right to delay deportation, and a waiver form also informed him of his right to a government-appointed lawyer to advise him on that decision; defendant failed to show that deported witnesses could have provided exculpatory evidence; U.S. v. Favela-Favela, 41 Fed. Appx. 185 (10th Cir. 2002).

### C. PROPERTY RIGHTS [§§ 2528–2565]

### 2. Acquisition of Property or Rights in Property [§§ 2532–2546]

## § 2534 Lease

**Regulations**

43 CFR Parts 3500 et seq. were extensively amended in 2000. The Bureau of Land Management (BLM) amended its regulations governing leasing of solid minerals other than coal and oil shale. Under the previous rule, each solid mineral commodity had its own separate regulation. These rules now combine these solid minerals regulations into one set of regulations, streamlined, updated and rewritten in plain English. The rule also clarifies the responsibilities of the parties. The subject matter of 48 CFR 3501.1(a) is now covered by 43 C.F.R. § 3502.10, and 43 C.F.R. § 3502.11(b) is covered by 43 C.F.R. § 3502.13.

## § 2535 — Oil, gas, and mineral leases on federal lands

**Regulations**

## § 2360

had never been legally authorized to work in the United States, even though alien had been unlawfully terminated in violation of the National Labor Relations Act. Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

Federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA), foreclosed an award of backpay to undocumented alien who had never been legally authorized to work in the United States, even though alien had been unlawfully terminated in violation of the National Labor Relations Act (NLRA). Hoffman Plastic Compounds, Inc. v. N.L.R.B., 122 S. Ct. 1275, 152 L. Ed. 2d 271 (U.S. 2002), rehearing en banc granted.

An alien's undocumented status does not render him or her ineligible to obtain backpay as remedy for an employer's NLRA violation, unless the United States worker or unauthorized alien fails to establish the threshold requirement that he or she is a ... [text continues]

### (3) Immigration Legislation [§ 2367]

### § 2367 Immigration Reform and Control Act

**Cases**

Aliens who use or attempt to use fraudulent documents to subvert the employer verification system established by the Immigration Reform and Control Act of 1986 (IRCA) are subject to fines and criminal prosecution. Immigration and Nationality Act, § 274C, as amended, 8 U.S.C.A. § 1324c, as amended; I.N.S. v. ... Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

By establishing an extensive "employment verification system" designed to deny employment to aliens who are not lawfully present in the United States, the Immigration Reform and Control Act of 1986 (IRCA) forcefully made central to the policy of immigration law. Immigration and Nationality Act, § 274A, as amended, 8 U.S.C.A. § 1324a, Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

Employers who violate the Immigration Reform and Control Act of 1986 (IRCA) are punished by civil fines and may be subject to criminal prosecution. Immigration and Nationality Act, § 274A, as amended, 8 U.S.C.A. § 1324a, Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

Immigration Reform and Control Act of 1986 (IRCA) mandates that employers verify the identity and eligibility of all new hires by examining specified documents, and it imposes criminal sanctions for failure to begin work. Immigration and Nationality Act, § 274A, as amended, 8 U.S.C.A. § 1324a, Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

## 3B Am Jur 2d Supp

Immigration Reform and Control Act of 1986 (IRCA) is a comprehensive scheme prohibiting the employment of illegal aliens in the United States. Immigration and Nationality Act, § 274A, as amended, 8 U.S.C.A. § 1324a, Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

Immigration Reform and Control Act of 1986 (IRCA) forbids an employer to hire an alien to subvert the employer verification system by tendering fraudulent documents. Immigration and Nationality Act, § 274C, as amended, 8 U.S.C.A. § 1324c, Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

Under the Immigration Reform and Control Act of 1986 (IRCA) regime, it is impossible for an undocumented alien to obtain employment in the United States without directly or indirectly contravening explicit congressional policies. Immigration and Nationality Act, § 274A, 274C, as amended, 8 U.S.C.A. §§ 1324a, 1324c; Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

Under the Immigration Reform and Control Act of 1986 (IRCA), if an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is required to discharge the worker upon discovery of the worker's undocumented status. Immigration and Nationality Act, § 274A, as amended, 8 U.S.C.A. § 1324a, Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

Under the Immigration Reform and Control Act of 1986 (IRCA), if an alien applicant is unable to present the required documentation, the unauthorized alien cannot be hired. Immigration and Nationality Act, § 274A, as amended, 8 U.S.C.A. § 1324a, Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

### b. Constitutional Rights [§§ 2380–2386]

### § 2383 Due process

**Cases**

Alien was not denied due process by immigration judge presiding over both bond hearing and removal proceeding, that led to order of deportation and that the order involving required bond hearing, to be "separate and apart from," and to "form, no part of," any hearing. Immigration judge, in conducting removal hearing, immigration judge relied only on evidence properly admitted at the removal proceeding in his immigration judge's decision was, in effect, an unreviewable denial of bond. Galvez v. Lewis, 56 F. Supp. 2d 637 (E.D. Va. 1999).

Improper retroactive application of the 1996 Immigration and Nationality Act (INA) amendments to alien's case, which resulted in treatment of sexual assault conviction as an aggravated felony and rendered alien subject to removal as result of a due process violation that did not render his deportation hearing fundamentally unfair. U.S. v. Hernandez-Rodriguez, 170 F. Supp. 2d 700 (N.D. Tex. 2001).

## Aliens and Citizens

## § 2271

status from permanent resident to national of the United States. Olivares v. I.N.S., 42 Fed. Appx. 773 (6th Cir. 2002).

Denial of application for adjustment of status pursuant to Diversity Visa Lottery Program on grounds of expiration of one-year deadline was neither a "judgment" nor a discretionary "decision or action" precluding judicial review. Iddir v. I.N.S., 301 F.3d 492 (7th Cir. 2002).

Section of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), providing that aliens seeking legalization under Immigration Reform and Control Act (IRCA) must have presented or attempted to present alien's cause of action, precluded federal court jurisdiction over claims by aliens who had failed to present completed applications and fees to an immigration officer, regardless of whether their failure to do so was due to front-desking policy under which Immigration and Naturalization Service (INS) would reject applications of ineligible aliens before filing, and regardless of whether their claims presented facts unique to individuals. California Legal Services, Inc. v. I.N.S., 182 F.3d 1053 (9th Cir. 1999).

Immigration and Naturalization Service's (INS) denial of aliens' applications for adjustment of status pursuant to Diversity Immigrant Visa Program under the Immigration and Nationality Act (INA) was non-reviewable "judgment" under statute divesting court of jurisdiction to review any judgment denying adjustment of status; aliens' applications were not denied until after INS had exceeded the time-frame allotted to apply process their applications prior to the statutory deadline for which aliens were selected to apply. Iddir v. I.N.S., 166 F. Supp. 2d 1250 (N.D. Ill. 2001).

Under the "transitional" judicial review provisions of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), district court lacked habeas jurisdiction to review any alien's application for adjustment of status. Mendoza v. I.N.S., 52 F. Supp. 2d 155 (D. Mass. 1999).

### § 2259 Habeas corpus jurisdiction

**Cases**

District court did not have habeas jurisdiction to review immigration judge's finding that statute requiring detention of criminal aliens applied to alien and that alien could not be released pending the removal proceeding, even if bond proceeding were only an interim removal proceeding, and thus a final order in immigration judge's decision was, in effect, an unreviewable denial of bond. Galvez v. Lewis, 56 F. Supp. 2d 637 (E.D. Va. 1999).

### § 2262 Abuse of discretion not reviewable

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland

Security. 8 C.F.R. Part 245 was redesignated 8 C.F.R. Part 1245.

**Cases**

Immigration and Naturalization Service (INS) has non-reviewable discretion in the scheduling of adjustment interviews; thus court lacked subject matter jurisdiction under administrative Procedure Act (APA) or federal question jurisdiction to require INS to schedule an interview regarding application for adjustment of immigration status. Zheng v. Reno, S.D.N.Y.2001, 166 F.Supp.2d 875.

### § 2263 Exhaustion of administrative remedies

**Cases**

Alien was not entitled to judicial review of immigration judge's denial of her request for adjustment of status since she had failed to exhaust her administrative remedies; alien could review her request upon administrative proceeding. Cardoso v. Reno, 216 F.3d 512 (5th Cir. 2000).

Alien was not required by exhaustion requirement to appeal to Board of Immigration Appeals (BIA) immigration judge's decision that alien was not eligible for writ of habeas corpus before filing petition for writ of habeas corpus in federal district court; alien need not re-open case, and appeal could have been futile due to Attorney General's position that Antiterrorism and Effective Death Penalty Act (AEDPA) applied retroactively. Fuller v. INS, 144 F. Supp. 2d 72 (D. Conn. 2000).

### § 2265 Standard and scope of review

**Cases**

District Court lacked jurisdiction to review alien's claim that denial of her application for adjustment of status was result of unconstitutional deprivation of due process; statutory "safety valve" permitted direct review of substantial constitutional issues, despite section of the Immigration and Nationality Act barring judicial review of discretionary denials by Immigration Service's (INS) adjudication of adjustment of applications, and the courts of appeals. Afsharzadeh v. Perryman, 214 F. Supp. 2d 884 (N.D. Ill. 2002).

### C. CHANGING NONIMMIGRANT CLASSIFICATION [§§ 2271–2286]

#### 1. Eligibility [§§ 2271–2277]

### § 2271 Aliens eligible for change of nonimmigrant classification

**Statutes**

8 USCA § 1189(a)(9) was amended as part of the Violence Against Women Act of 2000 to offer equal access to immigration protections of the Violence Against Women Act of 1994 for battered immigrant self-petitioners.

**Regulations**

8 CFR § 214.15, added in 2001, provides that under section 101(a)(15)(v) of the Act, certain eligible spouses and children of lawful permanent residents may apply for a V nonimmigrant classification.

© West, a Thomson business, 5/2004

§ 2271

migrant visa at a consular office abroad and to be admitted in V-2 (child) or V-3 (dependent child of spouse), V-2 (child) or V-3 (dependent child of the spouse or child who is accompanying or following to join the principal beneficiary) nonimmigrant status to await the approval of other specified visas. Eligible aliens already in the United States may apply to the Service to obtain V nonimmigrant status for the same purpose. 8 CFR § 214.2(v) provides that the status of spouses and children of lawful permanent residents is governed by the new regulation.

§ 2273 — Must have maintained status as lawfully admitted nonimmigrant

**Statutes**

8 USCA § 1184(i) was redesignated 8 USCA § 1184(m) in 2000. 8 USCA § 1187, as amended, is worded in terms of "program" rather than "pilot program."

**Regulations**

8 CFR § 248.1(b), amended in 2001, provides that except in the case of an alien applying to obtain V nonimmigrant status in the United States under 8 CFR § 214.15(f) of this chapter, a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed, except that the Service may extend the period of previously authorized status or may be included in the application in the discretion of the Service.

2. *Application*

§ 2275 Aliens ineligible for change of nonimmigrant classification

**Regulations**

8 CFR § 212.7(d), added in 2002, provides that the Attorney General, in general, will not favorably exercise discretion under the Act to consent to an application for readmission or adjustment of status, with respect to immigrant aliens who are inadmissible under the Act in cases involving violent or dangerous crimes or in cases in which the alien clearly demonstrates that the denial of the application for adjustment of status or an immigrant visa or admission as an immigrant visa, or admission would result in extreme hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion under section 212(h)(2) of the Act.

§ 2277 When change of nonimmigrant classification not required

**Regulations**

8 CFR § 248.3(e)(2), amended in 2000, provides that an alien classified under sections 101(a)(15)(A) or 101(a)(15)(G) of the Act as a member of the immediate family of a principal alien classified under the same section, or an alien classified under sections 101(a)(15)(E), (H), (I), (J), (L), (O), (P), or (R) of the Act as the spouse or child of an alien so classified, who is classified as the spouse or a child who accompanied or followed to join a principal alien who is classified in the United States under the same section, may attend school in the United States as long as the immediate family member, spouse, or child continues to be qualified for and maintains the status as classified.

8 CFR § 248.3(e)(2), as amended in 2002, provides that change of nonimmigrant classification is not required for the immediate family as a member of the immediate family of a principal alien classified under the same section, or an alien classified under sections 101(a)(15)(E), (H), (I), (J), (L), (O), or (R) of the Act as the spouse or child of an alien so classified, who is the spouse of an alien classified under the above section, may attend school in the United States as long as the immediate family member, spouse, or child maintain their nonimmigrant status.

(3) *Application for Employment Authorization and Supporting Information (§§ 2339–2343)*

§ 2278 Filing requirements; forms

**Regulations**

8 CFR § 214.15, added in 2001, provides that under section 101(a)(15)(v) of the Act, certain eligible spouses and children of lawful permanent residents may apply for a nonimmigrant status to await the approval of other specified visas, if accompanying or following to join the principal beneficiary (spouse), V-2 (child), or V-3 (dependent child of the spouse or child who is accompanying or following to join the principal beneficiary) to the United States in V-1 (spouse), V-2 (child), or V-3 (dependent child of the spouse or child who is accompanying or following to join the principal beneficiary) nonimmigrant status. Eligible aliens already in the United States may apply to the Service to obtain V nonimmigrant status for the same purpose. 8 CFR § 214.2(v) provides that the status of spouses and children of lawful permanent residents is governed by the new regulation.

8 CFR § 248.3(a), amended in 2000, now refers to nonimmigrants classified as Q-1, rather than Q.

8 CFR § 248.3(d), added in 2000, provides that any alien classified as a Q-2 nonimmigrant, who requests a change to another nonimmigrant classification, must file Form I-539, with appropriate fee, to the Nebraska Service Center. Any spouse or minor children of the principal alien who are in the United

3B AM JUR 2d SUPP

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

§ 2277 When change of nonimmigrant classification not required

**Regulations**

8 CFR § 248.3(e)(1), amended in 2000, provides that an alien classified under sections 101(a)(15)(A) or 101(a)(15)(G) of the Act as a member of the immediate family of a principal alien classified under the same section, or an alien classified under sections 101(a)(15)(E), (H), (I), (J), (L), (O), (P), or (R) of the Act as the spouse or child of an alien so classified, who is classified as the spouse or a child who accompanied or followed to join a principal alien who is classified in the United States under the same section, may attend school in the United States as long as the immediate family member, spouse, or child continues to be qualified for and maintains the status as classified.

8 CFR § 248.3(e)(2), as amended in 2002, provides that change of nonimmigrant classification is not required for an alien admitted as member of the immediate family of a principal alien classified under the same section, or an alien classified under sections 101(a)(15)(E), (H), (I), (J), (L), (O), or (R) of the Act as the spouse or child of an alien so classified, who is the spouse or child maintain their nonimmigrant status.

§ 2337 — Employment pursuant to informal de facto reciprocal arrangements

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

§ 2339 Basic filing requirements

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

§ 2341 Adjudication

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

§ 2342 Grant of employment authorization; interim authorization

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

§ 2343 Denial of employment authorization

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization

ALIENS AND CITIZENS

ization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

§ 2335 Dependents of foreign government officials

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

§ 2336 — Employment pursuant to formal bilateral agreement

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1274a.

(4) *Termination or Revocation of Employment Authorization (§ 2345)*

§ 2344 Automatic termination of employment authorization

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

§ 2345 Revocation of employment authorization

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 274a was redesignated 8 C.F.R. Part 1274a.

b. *Employment of Aliens in Particular Federal Agencies, Institutions, and Programs (§§ 2346–2356)*

§ 2351 Armed Forces

**Statutes**

10 U.S.C.A. § 510(b), added in 2002, defines "National Call to Service participant."

c. *Employment-Related Rights (§§ 2357–2379)*

(1) *Employment-Related Rights (§§ 2357–2379)*

a. *Statutory Rights (§§ 2357–2362)*

(1) *Labor Legislation (§§ 2357–2362)*

§ 2357 National Labor Relations Act; alien as "employee"

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1274a.

§ 2360 — Awards of backpay to undocumented workers

**Cases**

Federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA), foreclosed the National Labor Relations Board (NLRB) from awarding backpay to undocumented alien who had never been legally authorized to work in the United States, even though that alien had been unlawfully terminated in violation of the National Labor Relations Act (NLRA); immigration and Nationality Act §§ 274A, 274C, as amended, 8 U.S.C.A. §§ 1324a, 1324c; National Labor Relations Act, §§ 1 et seq., as amended, 29 U.S.C.A. § 151 et seq., *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002).

Federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA), foreclosed the National Labor Relations Board (NLRB) from awarding backpay to undocumented alien who

## ALIENS AND CITIZENS

Hyung Joon Kim, 123 S. Ct. 1708, 155 L. Ed. 2d 724, 2004 A.L.R. Fed. 633 (U.S. 2003).

A judicial officer cannot be made to do service for an administrative judgment on a basic matter entrusted by law to an administrative agency. I.N.S. v. Ventura, 537 U.S. 12, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002).

An appellate court may not intrude upon the domain which Congress has exclusively entrusted to an administrative agency. I.N.S. v. Ventura, 537 U.S. 12, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002).

On review of an administrative judgment on a basic matter entrusted by law to an administrative agency, a court of appeals is not generally empowered to conduct a de novo inquiry into the matter and to reach its own conclusions based on such an inquiry; rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. I.N.S. v. Ventura, 537 U.S. 12, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002).

Alien's claims relating to Immigration and Naturalization Service's (INS) failure to rule on his wife's pending immediate relative petition, which would subject alien to judicial review, even if ruling on wife's petition might determine alien's eligibility for cancellation of removal procedures, Vasquez-Velezmoro v. U.S. I.N.S., 281 F.3d 693 (5th Cir. 2002).

Section of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) precluding judicial review of any final order of removal against an alien who is convicted of having committed a criminal offense covered by statute, did not deprive Court of Appeals of jurisdiction to hear the expunged state court drug conviction was a conviction for purposes of the latter statute and rendered him ineligible for cancellation of removal. Vasquez-Velezmoro v. U.S. I.N.S., 281 F.3d 693 (5th Cir. 2002).

Court of Appeals lacked jurisdiction over alien's appeal from Board of Immigration Appeals' (BIA) decision to affirm an order for his removal based on commission of an aggravated felony where BIA premised one of two grounds for determining alien's intent to do some permanent injury in alien's immigration case, BIA's consideration the effect of vacatur of alien's conviction on his immigration case, Lopez-Ruiz v. Ashcroft, 298 F.3d 886 (9th Cir. 2002).

## § 2027 — Denials of discretionary relief

### Cases

Even if Court of Appeals had jurisdiction to

---

### § 2073

claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien, did not bar district court's jurisdiction to consider claims that application of stop-line provision of IIRIRA to aliens violated their constitutional rights. Tefel v. Reno, 180 F.3d 1286 (11th Cir. 1999).

Plaintiff would not be allowed to amend complaint against the Immigration and Naturalization Service (INS) to add claim for injunctive relief commanding defendants to rescind a prior administrative removal order directed at plaintiff, as amendment would have been futile inasmuch as alleged raised serious questions as to whether Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) limited the number of suspensions of deportation order became final after October 30, 1996, so as to be subject to transition rules, and district court lacked jurisdiction of action seeking relief from deportation. Kenkowski-White v. I.N.S., 316 F.3d 798 (6th Cir. 2003).

Statute granting jurisdiction to federal district court to hear habeas corpus petitions based on non-discretionary statutory and constitutional violations was explicitly not repealed by sections of Antiterrorism and Effective Death Penalty Act (AEDPA) and of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) restricting federal court's jurisdiction over claims regarding deportation orders. Mojica v. Reno, 47 F. Supp. 2d 1219 (D. Or. 1999).

Newly enacted statute applied and divested district court of authority to review decision of immigration judge to deny release on bond where there was no order to deport alien; transition period applies only to cases in which alien was in effect when alien originally was released from incarceration and when he was granted release on bond, did not apply to jurisdictional question. Edwards v. Blackman, 48 F. Supp. 2d 477 (M.D. Pa. 1999).

### § 2074  Transitional rule with regard to suspension of deportation

### Cases

Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) deprived federal courts of subject matter jurisdiction to hear suit seeking to compel Attorney General and Immigration and Naturalization Service (INS) to consider aliens' applications for suspension of deportation under repealed provision of Immigration and Naturalization Act (INA) rather than under IIRIRA, suit necessarily called for judicial review of Attorney General's exercise of her discretion to commence proceedings and to not adjudicate aliens' deportations, which necessarily included within her rebuttal to entertain their suspension applications and deportations. Alvidres-Reyes v. Reno, 180 F.3d 199 (5th Cir. 1999).

Determination of Board of Immigration Appeals (BIA) that alien failed to establish her good moral character, and therefore did not qualify for suspension of deportation or voluntary departure, was a nondiscretionary, nonreviewable determination under transitional rule of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), even though BIA's determination was based on discretionary statutory-defined categories of aliens who were per se

---

considered to have good moral character, but rather, was based on catchall category. Kenkowski-White v. I.N.S., 316 F.3d 798 (6th Cir. 2003).

Alien was subject to Illegal Immigration Reform and Immigrant Responsibility Act's (IIRIRA) "stop-line rule," which set forth the purely legal claims of a criminal alien against final orders of removal, Diaz v. McElroy, 296 F.3d 48 (2d Cir. 2002).

New section of the Immigration and Nationality Act (INA), precluding judicial review of action of Attorney General to commence proceedings, adjudicate cases, or execute removal orders against alien, did not apply to alien whose deportation proceedings were commenced before April 1, 1997, effective date of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), but whose deportation order became final after October 30, 1996, so as to be subject to transition rules; and the district court's jurisdiction over action seeking relief from deportation for alien convicted of aggravated felony was ineligible for discretionary relief from deportation; if the new section applied along with the transition rule, when the alien was subject to the specific provision for review of criminal alien's deportations. Perez v. Reno, 18 F. Supp. 2d 674 (W.D. Tex. 1998).

Alien's habeas corpus petition challenging removal proceeding on ground that he was a United States citizen should have been presented pursuant to the Court of Appeals; if Court of Appeals were to conclude that alien's case presented a genuine issue of material fact about his nationality, it should then transfer the proceedings to the district court. Duarte v. I.N.S., D.Mass.1999, 81 F.Supp.2d 167.

### § 2026  Matters not subject to judicial review; review relating to the inspection of applicants for admission

#### Cases

**Provision of Immigration and Nationality Act** (INA) limiting judicial review of Attorney General's discretionary judgment regarding detention or release of any alien that deprive Supreme Court of jurisdiction to grant habeas relief to alien challenging his detention under no-bail provision of INA; alien was under such habeas challenging the decision by Attorney General, judgment was challenging constitutionality, under Due Process Clause of the Fifth Amendment, of statute framework that permitted his detention without bail, and provision did not explicitly bar habeas review. U.S.C.A. Const. Amend. 5; Immigration and Nationality Act, § 236(c, e), 8 U.S.C.A. § 1226(c, e). Demore v. Hyung Joon Kim, 123 S. Ct. 1708, 155 L. Ed. 2d 724, 187 A.L.R. Fed. 633 (U.S. 2003).

Where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. Demore v. Hyung Joon Kim, 123 S. Ct. 1708, 155 L. Ed. 2d 724, 187 A.L.R. Fed. 633 (U.S. 2003).

Where provision precluding judicial review is claimed to bar habeas review, Supreme Court requires particularly clear statement that such is Congress' intent. Demore v.

---

### § 2075  Transition for certain family unity aliens

#### Statutes

8 USCA § 1182(a)(9) was amended as part of the Violence Against Women Act of 2000 to offer equal access to immigration protections of the Violence against Woman Act of 1994 for battered immigrant self-petitioners.

### § 2076  Limitation on suspension of deportation

#### Cases

Decision of Board of Immigration Appeals (BIA) that alien's prior conviction for conspiring to obtain, possess and use illegal immigration documents was for crime of moral turpitude, so as to deprive BIA of discretion to suspend alien's deportation for exceptional and extremely unusual hardship, was not unreasonable; offense involved intent to deceive the United States. Omagah v. Ashcroft, 288 F.3d 254 (5th Cir. 2002).

Alien whose exclusion proceedings commenced prior to effective date of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) was not entitled to suspension of deportation, notwithstanding Nicaraguan Adjustment and Central American Relief Act...

© West, a Thomson business, 5/2004

## § 2027

review Board of Immigration Appeals' (BIA) denial of discretionary relief of cancellation of removal, alien waived any substantive objections to BIA's ruling by failing to raise them in its appellate brief. Hulski v. Ashcroft, 316 F.3d 807 (9th Cir. 2003).

### Cases

Offense of making terroristic threats, which was a "crime of violence" as the "crime" which alien was convicted, was one that, on its face, falls within the language of one-year, so that Court of Appeals lacked jurisdiction to entertain alien's petition to review final order of removal based on that conviction; alien's 12-to-24-month sentence was 12 months, and thus judicial review of Attorney General's prosecutorial discretion, which not limited to entering alien's petition to review final order of removal based on that conviction, where the minimum term imposed on a prison sentence merely sets the date prior to which a prisoner any not be paroled, so that the sentence was 11 months. Bovkun v. Ashcroft, 283 F.3d 166 (3d Cir. 2002).

Federal statute providing that, "notwithstanding any other provision of law," no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed certain offenses eliminated statutory habeas corpus jurisdiction of district court, and any remaining habeas jurisdiction that alien had in connection with his convictions was institutionalization of the Constitution was insufficient; following his conviction of aggravated felony, Vazquez v. Reno, C.A.3 (Tex.) 2000, 210 F.3d 558.

## § 2028 — Orders against criminal aliens

### Cases

Danish immigrant did not acquiesce in torture of Iraqi female by her father and brothers, as required under Convention Against Torture, and alien therefore was not eligible for withholding of removal under Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment, where she did not manifestly contrary to law, where Danish police had arrested assailants, incarcerated them during investigation of her charges, and offered to detain father and brothers not to harm her, but refusing to allow them to harm alien. Ali v. Reno, 237 F.3d 591 (6th Cir. 2001).

Board of Immigration Appeals' (BIA) failed to consider fraud's motive in request for withholding removal under Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, where BIA did not consider whether alien's mistreatment based on his ethnic/religious affiliation warranted. BIA made a credibility determination, "and BIA's adverse credibility determination with respect to him as "Syrian Christian," and not actually rejected his claim of "Syrian Christian," and its rejection, to him as "Syrian Christian," differed in a relevant way, which was not. Najarian v. I.N.S., 230 F.3d 902 (7th Cir. 2000).

Under Illegal Immigration Reform and Immigration Responsibility Act's (IIRIRA) transitional rules, Court of Appeals had jurisdiction to review Board of Immigration Appeals' denial of motion to reopen removal proceedings. Immigration and Nationality Act § 106(a), as amended, 8 U.S.C.A.(1994 Ed.) § 1105(a); Aquino v. I.N.S., 1 Fed. Appx. 678 (9th Cir. 1995).

Illegal Immigration Reform and Immigration Responsibility Act (IIRIRA) section precluding judicial review of discretionary decisions of the Board of Immigration Appeals (BIA) does not violate the Due Process Clause. Antonio Cruz v. I.N.S., 147 F.3d 1129 (9th Cir. 1998).

## § 2029 Treatment of certain decisions

### Cases

Because Board of Immigration Appeals (BIA) failed to explain what particular piece of applicant's testimony it would have found reasonable to expect him to have corroborated, whether BIA properly applied its own rules on denying applications for asylum and withholding of removal based on applicant's failure to present corroborating evidence, it was impossible for Court of Appeals to review BIA's appropriate. Abdulai v. Ashcroft, 239 F.3d 542, 179 A.L.R. Fed. 733 (3d Cir. 2001).

Board of Immigration Appeals' finding that

## § 2032 Scope and standard for review

### Cases

Board of Immigration Appeals (BIA) did not abuse its discretion in denying motion to reopen removal proceedings by declining to equitably toll filing deadline for motion; judicial review of orders from the Board of Immigration Appeals from denial is precluded under Illegal Immigration Reform and Immigration Responsibility Act's (IIRIRA) transitional statute, including claims of statutory error and abuse of discretion. Mai v. Reno, C.A.9 (Wash.) 2000, 209 F.3d 815, rehearing and rehearing en banc denied, certiorari granted.

Denial by Board of Immigration Appeals (BIA) of alien's motion to reopen deportation proceedings to apply for adjustment of status, in basic denial, petition granted.

## § 2073 Transitional changes in judicial review

### Cases

Denial by Board of Immigration Appeals (BIA) of alien's motion to reopen deportation proceedings to apply for adjustment of status, pursuant to its discretionary authority in basic denial, petition granted. Okonga v. Reno, 229 F.3d 1237 (11th Cir. 2000).

## ALIENS AND CITIZENS

implementation of the immigration provisions of the Violence Against Women Act of 1994.

### 4. Effective Dates; Transition

#### a. In General [§§ 2068–2070]

## § 2068 Generally

### Cases

Newly enacted statute applied and directed district court of authority to review decision of immigration judge to deny release on bond once there was an order to deport alien; transitional period rules (TPCR), which were once there was an order to deport alien; transitional period rules (TPCR), which were in effect when immigration judge denied release from custody on bond, did not apply to jurisdictional question. Edwards v. Blackman, 48 F. Supp. 2d 477 (M.D. Pa. 1999).

#### b. Transition for Aliens in Proceedings [§§ 2071–2076]

## § 2071 General rule

### Cases

Former version of statute, making discretionary relief unavailable to legal permanent residents, who had been deportable by reason of having committed a specified criminal offense, applied to alien who had left for only a short period of time, and eliminated discretionary relief for both excludable and deportable aliens, where the statute was held before date of decision of Board of Immigration Appeals (BIA) that the statute applied only in deportation, and not exclusion, proceedings. Esperdy-Torres, 179 F.3d 776 (11th Cir. 1999).

In deportation case governed by transition rules of Illegal Immigration Reform and Immigration Responsibility Act (IIRIRA), district court lacked subject matter jurisdiction over alien's habeas corpus petition; alien's petition to final deportation order prior to filing the petition, alien's direct appeal, if timely filed, would have been filed prior to issuance of final deportation order and alien challenged retroactive application of Anti-terrorism and Effective Death Penalty Act (AEDPA) provision expanding category of criminal convictions rendering deportation eligible for discretionary relief from deportation. Okonga v. Reno, 229 F.3d 1237 (11th Cir. 2000).

Section of Immigration and Nationality Act (INA) precluding judicial review of federal courts of subject matter jurisdiction to consider alien's application for suspension of deportation under repealed provision of Immigration and Naturalization Service (INS) proceedings exhaust administrative remedies. Alamo-Reyes v. Reno, 180 F.3d 159 (4th Cir. 1999).

Section of Immigration and Nationality Act (INA) deprived federal courts of subject matter jurisdiction to consider alien's application for suspension of deportation under repealed provision of Immigration and Naturalization Service (INA) rendering certain listed criminal convictions, precluding Court of Appeals from considering constitutional claim that it was not "deportable" and thus not "deportable" under meaning of section. Diakite v. I.N.S., 179 F.3d 553 (7th Cir. 1999).

Within meaning of Illegal Immigration Reform and Immigration Responsibility Act's (IIRIRA) provision precluding judicial review of final orders of deportation against certain aliens eligible for legalization, an alien who could have jurisdiction. Ortiz v. Meissner, 179 F.3d 718 (9th Cir. 1999).

District court had jurisdiction to determine interim work authorization status to be accorded illegal aliens whose eligibility for legalization had been administratively denied; they could be decided if the district court of legalization, and would become moot before legal aliens for legalization under the amnesty provisions of Immigration and Nationality Act (INA) applicable to transitional cases, which prohibited assertion of jurisdiction.

© West, a Thomson business, 6/2004

U.S.C.A. § 1101(b)(1)(F)(ii). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i), was adopted while under the age of 18 years.

### § 507 Strict age limit

**Statutes**

8 U.S.C.A. § 1101(b)(1)(E) was redesignated 8 U.S.C.A. § 1101(b)(1)(E)(i) in 1999. Under new 8 USCA § 1101(b)(1)(E)(ii) an adopted child is also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in 8 USCA § 1101(b)(1)(E)(i), was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

### § 508 Two-year period of residence and legal custody

**Statutes**

8 U.S.C.A. § 1101(b)(1)(E) was redesignated 8 U.S.C.A. § 1101(b)(1)(E)(i) in 1999. Under new 8 USCA § 1101(b)(1)(E)(ii) an adopted child is also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in 8 USCA § 1101(b)(1)(E)(i), was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

### § 510 Deprivation of rights of natural or prior adoptive parents

**Statutes**

8 U.S.C.A. § 1101(b)(1)(F) was redesignated 8 U.S.C.A. § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i), was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(F)(i) except that the child was adopted while under the age of 18 years.

### § 511 Adoption in foreign country

**Statutes**

42 USCA § 14901 et seq., added in 2000 and comprising the Intercountry Adoption Act of 2000, was enacted to (1) provide for implementation by the United States of the Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption; (2) protect the rights of, and prevent abuses against, children, birth families, and adoptive parents involved in adoptions subject to the Convention; and (3) improve the ability of the federal government to assist United States citizens seeking to adopt children from abroad and residents of other countries party to the Convention seeking to adopt children from the United States.

### (e) Orphan [§§ 515, 516]

### § 515 Eligibility as dependent on approved visa petition

**Statutes**

8 USCA § 1101(b)(1)(F) was redesignated 8

U.S.C.A. § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i), was adopted while under the age of 18 years.

### § 516 Orphan child defined

**Statutes**

8 USCA § 1101(b)(1)(F) was redesignated 8 USCA § 1101(b)(1)(F)(i). Under new 8 USCA § 1101(b)(1)(F)(ii), an orphan petition can also be made if the child is a natural sibling of a child described in 8 USCA § 1101(b)(1)(F)(i), was adopted while under the age of 18 years.

### § 517 Deprivation of rights of natural or prior adoptive parents

**Statutes**

8 USCA § 1101(b)(1)(F) was redesignated 8

### § 517.1 Immediate Relative Eligibility [§§ 517–520]

### b. Immediate relative defined

**Cases**

Alien was not an "orphan" on basis that she was a child of a "sole parent" "incapable of providing proper care," because the biological mother was living and the mother's financial support would be "unknown" to facilitate adoption, shared the same house with child's mother and was providing ample financial support to all of them, and thus had not abandoned all legal rights to alien in the manner contemplated by the statute, and there was no evidence that alien's mother was incapable of providing proper care for the child. Rogan v. Reno, E.D.N.Y. 1999, 75 F.Supp.2d 63.

### § 518 Siblings by means of adoption

**Statutes**

8 USCA § 1101(b)(1)(E) was redesignated 8 USCA § 1101(b)(1)(E)(i) in 1999. Under new 8 USCA § 1101(b)(1)(E)(ii) an adopted child is also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in 8 USCA § 1101(b)(1)(E)(i), was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

### f. Family-Sponsored Fourth Preference Eligibility [§§ 535–541]

### § 541 Siblings by means of adoption

**Statutes**

8 USCA § 1101(b)(1)(E) was redesignated 8 USCA § 1101(b)(1)(E)(i) in 1999. Under new 8 USCA § 1101(b)(1)(E)(ii) an adopted child is also treated as a "child" for immigration purposes if he or she is a natural sibling of a child described in 8 USCA § 1101(b)(1)(E)(i), was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8 USCA § 1101(b)(1)(E)(i) except that the child was adopted while under the age of 18 years.

### g. Derivative Status [§§ 542–545]

### § 542 Deriving status from immigrant spouse or parent

**Cases**

In considering minor alien's argument that

1999, also includes nurses who are coming temporarily to the United States to perform services as registered nurses, who meet certain qualifications, and will practice in health professional shortage areas for a specified period.

### F. CONGRESS [§§ 388, 389]

### § 388 Powers regarding immigration laws

**Cases**

In exercise of its broad power over naturalization and immigration, Congress may make rules for aliens that would be unacceptable if applied to citizens. Demore v. Hyung Joon Kim, 123 S. Ct. 1708, 155 L. Ed. 2d 724, 187 A.L.R. Fed. 633 (U.S. 2003).

## III. SEEKING ADMISSION TO THE UNITED STATES: IMMIGRANTS, NONIMMIGRANTS, REFUGEES AND ASYLEES [§§ 402–1446]

### A. IMMIGRANTS [§§ 402–1100]

### 1. Overview [§§ 402–463]

### a. Definition and Classification of Immigrants [§§ 402–406]

### § 402 "Immigrant" and "immigrant visa" defined

**Statutes**

8 U.S.C.A. §§ 1101(a)(15)(T), 1184(n), added in 2000, involve aliens who are or have been victims of a severe form of trafficking in persons as defined in 22 USCA § 7102.

8 USCA § 1101(a)(15)(U) was added as part of the Violence Against Women Act of 2000 in an effort to remedy problems with implementation of the immigration provisions of the Violence Against Woman Act of 1994.

### b. Quota Immigrants [§§ 407–440]

### (1) Preference Allocations [§§ 407–435]

### (b) Employment-Based Immigrants [§§ 408–435]

### (i) First through Third-Preference [§§ 408–419]

### § 408 Priority workers

**Statutes**

8 USCA § 1154(a)(1) subparagraphs (C) through (D) were redesignated subparagraphs (E) through (J) as part of the Violence Against Women Act of 2000. New 8 USCA § 1154(a)(1)(C), (D) involve battered immigrant women.

**Cases**

Claims by class of aliens that their applications for Special Agricultural Worker (SAW) status, by failing to provide interpreters and by employing certain presumptions, were subject to judicial review in district courts, notwithstanding statute generally prohibiting judicial review of determination relating to application for adjustment of SAW status, inasmuch as each claim asserted unconstitutional practice, and INS's failure to make adequate record of SAW proceedings would effectively prevent a court of appeals, while reviewing individual order of deportation, from assessing validity of claim with respect to denial of SAW status. Abdullah v. INS, 184 F.3d 158 (2d Cir. 1999).

### § 412 Members of the professions holding advanced degrees or aliens of exceptional ability

**Statutes**

8 U.S.C.A. § 1182(r), added in 1999, provides further that the Attorney General shall waive a requirement that an alien physician with respect to whom a petition for preference classification has been filed if the physician agrees to work full time as a physician in an area designated as having a shortage of health care professionals or at a health care facility under the jurisdiction of the Secretary of Veterans Affairs if it is determined that the physician's work in the area or at such facility is in the public interest.

### (ii) Fourth Preference Special Immigrants [§§ 420–434]

### § 420 Generally

**Statutes**

8 U.S.C.A. § 1153(b)(4) was amended in 2000 to limit to 100 in any fiscal year the number of employment-based immigration visas issued under 8 USCA § 1101(a)(27)(M) (see § 434.5).

**Regulations**

8 CFR § 204.13(a), added in 2001, provides that an alien who is employed on behalf of the United States Broadcasting Board of Governors (BBG), or a grantee of the BBG, can petition for an alien (and the alien's accompanying spouse and children) to work as a broadcaster, as defined for the BBG or a grantee of the BBG in the United States with fourth preference eligibility. 8 CFR § 204.13(b) regulates the number of petitioners who may apply each year. 8 CFR § 204.13(c) provides the forms for the petition, while 8 CFR § 204.13(d) provides for supplemental evidence to accompany the form.

### § 425 Foreign medical graduates

**Statutes**

8 U.S.C.A. § 1101(a)(15)(H)(i), amended in 1999, also includes nurses who are coming temporarily to the United States with temporarily registered nurses, who meet certain qualifications, and will practice in health professional shortage areas for a specified period.

8 U.S.C.A. § 1182(r), added in 1999, provides that certain requirements for uncertified

© West, a Thomson business

foreign health-care workers do not apply to an alien who seeks to enter the United States for the purpose of performing labor as a nurse who presents specified proof of qualifications.

**Regulations**

8 CFR § 204.12 and 8 CFR § 245.18, added in 2000, established the procedure under which a physician who is willing to perform full- or part-time service in an area designated by the Secretary of Health and Human Services as having a shortage of health care professionals or in a facility operated by the Department of Veterans Affairs may obtain a waiver of the requirement that applies to alien beneficiaries of second preference employment-based immigrant visa petitions that the alien physician meet, in order to obtain approval of an immigrant visa petition and, once the physician has completed the requirements, to obtain adjustment of his or lawful permanent residence status. This regulatory change is necessary to help reduce the shortage of physicians in designated underserved areas of the United States.

**§ 426 International organizations, officers and employees, and intermediate family members**

8 CFR § 204.13(a), added in 2001, provides that the International Broadcasting Board of Governors (BBG); or a grantee of the BBG, can petition for an alien (and for the alien's accompanying spouse and children) to work as a granter of the BBG in the United States with fourth preference eligibility. 8 CFR § 204.13(b) regulates the number of petitioners who may apply, each year. 8 CFR § 204.13(c) provides § 204.13(d) provides for petitions, while 8 CFR § 204.13(d) provides the supplemental evidence to accompany the form.

22 CFR § 42.32(d)(5), added in 2001, involves entitlement to special immigrant status of certain international United States international broadcasting employees.

**§ 438 Petitions**

**Regulations**

8 CFR § 204.5, added in 2001, provides for an alien claiming to be entitled to compete for consideration for a diversity immigrant visa must file a petition for such consideration, which petition must consist of a single form, which is typed or legibly printed in the Roman alphabet, and pinned in the Roman alphabet the petitioner's name; date and place of birth (including city and county of birth (including the alien claims to be a native, if other than the country of birth; name(s), date(s), and place(s) of birth of the

§ 426 of 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1245 was redesignated 8 C.F.R. Part 1245.

petitioner's spouse and any children, including legally-adopted and step children, regardless of whether they are living with the petitioner or intend to accompany or follow to join the petitioner; and current mailing address. 22 CFR § 42.33(b)(4). New 22 CFR § 42.33(b)(2) provides that the petitioner must personally sign his or her native alphabet. 22 CFR § 42.33(b)(3) requires that the alien affix to the photograph of his or her spouse and each child, and sets forth detailed requirements for such photographs. 22 CFR § 42.33(j) was redesignated 22 CFR § 42.33(f).

**§ 439 — Approval and validity of petitions**

**Regulations**

22 CFR § 42.33(g) was redesignated 22 CFR § 42.33(b) in 2001. New 22 CFR § 42.33(g) involves allocation of visa numbers.

**Statutes**

8 U.S.C.A. § 1151(b), added in 1997, provides rules for determining whether certain aliens are immediate relatives. New 8 U.S.C.A. § 1153(d) involves rules for determining whether certain aliens are children.

**§ 441 Family-sponsored immigrants**

*(1) Numerical Quotas [¶¶ 441–455]*

a. *Worldwide Quotas [¶¶ 441–443]*

*(2) Per-Country Quota Levels [¶¶ 444–448]*

**§ 444 Special rules for spouses and children of permanent resident aliens**

**Statutes**

8 U.S.C.A. § 1151(b), added in 2002, provides rules for determining whether certain aliens are immediate relatives. New 8 U.S.C.A. § 1153(h) involves rules for determining whether certain aliens are children.

**§ 456 Immediate relatives of U.S. citizens**

**Statutes**

8 U.S.C.A. § 1154(a)(1)(A)(vi) was added as part of the Violence Against Women Act of 2000 in an effort to remedy problems with implementation of the immigration provisions.

**Regulations**

22 CFR § 42.21(b) was amended in 2002 to add to the definition of "immediate relatives" the widows and widowers and alien spouses purporting to be the immigrant spouse and Naturalization Service on September 11, 2001. New 22 CFR § 42.21(c) involves immediate-relative-child status of children of U.S. citizens slain in those terrorist acts.

**§ 460 Commuters**

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

**§ 461 Employees of American University of Beirut**

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

*2. Relatives of Citizens or Permanent Residents [¶¶ 464–517]*

a. *Validity of Marriage [¶¶ 464–476]*

**§ 473 Sham marriage doctrine**

**Research References**

Validity, construction, and application of 8 U.S.C.A. § 1325(c), prohibiting knowingly entering into marriage to avoid immigration laws, 159 A.L.R. Fed. 497.

**§ 474 — Rebutting charge of sham**

**Cases**

Alien who obtained permanent resident status through a fraudulent marriage, but who later remarried and obtained permanent resident status as an immediate relative, could be forgiven the fraud and maintain lawful permanent resident status through a waiver of deportation; alien was not forced to rely on his relationship with his former wife for purposes of seeking waiver of deportation. Virk v. I.N.S., 295 F.3d 1055 (9th Cir. 2002).

b. *Child [¶¶ 483–516]*

*(a) Related Derivative Definitions [¶¶ 483, 484]*

**§ 483 Derivative definition of parent**

**Regulations**

22 CFR § 40.1(n) was redesignated 22 CFR § 40.1(o) in 2000.

**§ 484 Derivative definition of son or daughter**

**Regulations**

22 CFR § 40.1(q) was redesignated 22 CFR § 40.1(r) in 2000.

*(c) Legitimation [¶¶ 492–505]*

**§ 493 Child born out of wedlock**

**Cases**

Additional proof-of-paternity requirement

imposed for citizenship by birth whenever the citizen parent of child who is born out of wedlock abroad is child's father, as opposed to the mother, did not represent unconstitutional denial of equal protection based on sex or illegitimacy; at time of child's birth, alien parent's desire to promote relationship between citizen fathers and their offspring born out of wedlock and the recognition that no one else was similarly situated with respect to the entry-into-wedlock requirement, whenever the citizen parent, or father formally acknowledged that father is child's parent, or paternity is established by adjudication before child attains age 18. Nguyen v. I.N.S., 533 U.S. 53, 121 S. Ct. 2053, 150 L. Ed. 2d 115 (2001) (concurring in part and concurring in the judgment) (Miller v. Albright, 118 S. Ct. 1428, 140 L. Ed. 2d 575 (U.S. 1998).

**§ 503 Effect of abolition of distinction between legitimate and illegitimate children**

**Cases**

Immigration and Naturalization Service (INS) did not violate Administrative Procedures Act (APA) by denying alien's petition for preferred visa status as an immediate investor, on grounds that alien's immigrant petition by other person was not identical petitions to the precedent decisions on the issue; alien's petition was adjudicated and the time the INS decided the alien's investors petitions since it substance of the prior decisions or denial of issuance of the statute, and issued prior approval of the statute, and issued the INS was free to change its interpretation. R.L. Inv. Ltd. Partners v. I.N.S., 86 F. Supp. 2d 1014 (D. Haw. 2000).

*(d) Adoption [¶¶ 506–514]*

**§ 506 Basic requirements for recognized adoption**

**Statutes**

8 U.S.C.A. § 1101(b)(1)(E)(i) was redesignated 8 U.S.C.A. § 1101(b)(1)(E)(i) in 1999. Under new 8 U.S.C.A. § 1101(b)(1)(E)(ii), a child who is also treated as a child for immigration purposes, as described in 8 U.S.C.A. § 1101(b)(1)(F), was adopted by the adoptive parent or parents of that sibling, and is otherwise described in 8

§ 2097                                                3B Am Jur 2d Supp

able reliance and settled expectations. Reversed v. Reno, 95 F. Supp. 2d (D. Mass. 2000).

Alien was eligible for a discretionary waiver of deportation under prior law at the time when Immigration Judge (IJ) addressed the merits of his waiver application; at that time, alien had not been incarcerated for five years, and, but for IJ's erroneous determination that required state conviction under the Anti-Drug Abuse Act (ADAA) applied retroactively, alien would have been deemed eligible for such relief. Hartman v. Elwood, 255 F. Supp. 2d 510 (E.D. Pa. 2003).

### § 2098 Removal Court

#### Statutes

As amended in 2001, 50 USCA § 1803(a) now provides for the designation of 11 district court judges, of whom no fewer than three must reside within 20 miles of the District of Columbia.

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 208 was redesignated 8 C.F.R. Part 1208. 8 C.F.R. Part 507 was redesignated 28 C.F.R. Part 200, consisting of 28 C.F.R. § 200.1.

### § 2101 Removal hearing

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 208 was redesignated 8 C.F.R. Part 1208. 8 C.F.R. Part 507 was redesignated 28 C.F.R. Part 200, consisting of 28 C.F.R. § 200.1.

### § 2109 Decision

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 208 was redesignated 8 C.F.R. Part 1208. 8 C.F.R. Part 507 was redesignated 28 C.F.R. Part 200, consisting of 28 C.F.R. § 200.1.

### § 2110 Appeal; denial of application for removal under Title V

#### Cases

Erroneous citation in final administrative order of removal to section of immigration statute stating that aggravated felony includes offenses, rather than to section on crimes of violence, was not prejudicial and could not surmount the jurisdictional restriction on judicial review of such orders, where alien did not dispute the fact that he was convicted for the offense of making terroristic threats, and did not allege that the erroneous citation confused him regarding the basis on which

deportation was being sought. Bovkun v. Ashcroft, 283 F.3d 166 (3d Cir. 2002).

### § 2112 — Decision in hearing

#### Cases

Claim in which plaintiffs, Canadian citizens living in United States, alleged that Immigration and Naturalization Service's (INS) use of Privacy Act by sharing personal information with Canadian authorities did not accrue, for statute of limitations purposes, when plaintiffs discovered violation from Canadian authorities, but when INS agent, who told plaintiffs they lacked evidence and should wait for INS to finish its own investigation before bringing suit, informed plaintiffs that their claim had been substantiated. Lacey v. U.S., 74 F. Supp. 2d 13 (D.D.C. 1999).

Alien's action against United States under Privacy Act, seeking order directing Immigration and Naturalization Service (INS) and Federal Bureau of Investigation (FBI) to correct their records to expunge reference to voided state conviction and enjoining INS from invalidating action against alien based on conviction, was not barred by sovereign immunity, even though alien also sought attorney fees and costs. Schaeuble v. Reno, 87 F. Supp. 2d 383 (D.N.J. 2000).

### § 2119 Photograph, fingerprint, and warning requirements

#### Statutes

8 USCA § 1182a(a)(3)(B)(i), involving officers and the role of the Palestine Liberation Organization, was amended in 2001 to address more specifically definitions relating to terrorism.

## VI. — SEEKING EXTENSION, ADJUSTMENT OR CHANGE OF STATUS [§§ 2121–2286]

### A. EXTENSION OF STAY [§§ 2121–2133]

#### 1. Extension of Stay as Nonimmigrant [§§ 2121–2132]

##### a. Eligibility [§§ 2121–2125]

###### (1) In General [§§ 2121, 2122]

### § 2122 Aliens not eligible for extension

#### Regulations

8 C.F.R. §§ 214.2(m)(18), 214.2(m)(19), added in 2002, provide that for purposes of the rules regarding eligibility, the term "accredited representative" means a national of Canada or Mexico who is admitted to the United States as an F-1 nonimmigrant student to enroll in a full course of qualifying study or training, on a part-time or full-time basis, in an approved school located within the United States of a United States land border. This rule clarifies that Mexican or Canadian nationals who reside outside the United States and regularly commute across a land border to study may no so far as a particular class of F or M nonimmigrant category. These changes are being made to facilitate and legitimize certain

ALIENS AND CITIZENS                                   § 1987

tion Service (INS) in violation of federal law without showing both post-removal order detention in excess of six months and evidence of good reason to believe that there is no significant likelihood of removal in reasonably foreseeable future. Akinwale v. Ashcroft, 287 F.3d 1050 (11th Cir. 2002).

Indefinite detention of inadmissible alien pursuant to final order of removal did not violate due process where removal could not be effected, alien's application for adjustment and Naturalization Service (INS) in violation and Attorney General did not abuse her discretion when determining that alien, who had admitted to associating with dangerous terrorists and extremists and had been convicted in Egypt of various crimes, was dangerous to flight risk. In re Soliman, 134 F. Supp. 2d 1238 (N.D. Ala. 2001).

Mandatory detention of criminal alien pending removal proceeding did not violate alien's substantive due process rights; fundamental liberty interest was not involved, inasmuch as alien, who had a legal right to be in the United States, unless and until she obtained a waiver based on showing of hardship to her children. Raddy v. Ashcroft, 193 F. Supp. 2d 454 (D. Conn. 2002).

Mandatory detention of criminal alien pending removal proceeding did not violate alien's substantive due process rights; fundamental liberty interest was not involved because alien was not a legal permanent resident, and thus did not have a legal right to be in the United States, unless and until she obtained a waiver based on showing of hardship to her children. Raddy v. Ashcroft, 193 F. Supp. 2d 454 (D. Conn. 2002).

Application to alien of mandatory detention provision of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) without a bond hearing, while alien's request for a stay of removal was pending, violated alien's right to procedural due process. Welch v. Reno, 127 F. Supp. 2d 306 (D. Conn. 2000).

Attorney General's decision to detain, for up to six months, alien who was subject to final order of deportation was reasonably related to government's interest in assuring removal, and thus alien was available for deportation, and its need to manage facility in which alien was detained, and thus did not violate alien's due process rights in violation of Fifth Amendment, even if alien was an illegal immigrant, subject to risk, absent allegation of intent to punish. Al Najjar v. Ashcroft, 186 F. Supp. 2d 1235 (S.D. Fla. 2002).

Constitutional limitations imposed by United States land border's decision in Zadvydas v. Davis on post-removal order detentions, precluding detention of alien beyond that period reasonably necessary to secure his removal, did not apply to alien who was being detained within six month removal-order proceedings, which did not last termination point. Badio v. U.S., 172 F. Supp. 2d 1200 (D. Minn. 2001).

Although immigration statute mandating removal of aliens pending removal proceedings based on conviction was facially constitutional, its application in the reasonably foreseeable future, delay in issuing travel

ture, exceed indiscriminate denial of bond was excessive in relation to regulatory purposes of protecting public, preventing aliens from absconding during removal procedures, and ensuring that an alien would not immigrate, and thus violated substantive due process, rights of lawful permanent resident not yet subject to final order of removal, inasmuch as government's objectives could be satisfied by less oppressive means, such as through indicating individual. Ngo v. Demil v. Ashcroft, 176 F. Supp. 2d 316 (D.N.J. 2001).

Alien who was subject to removal order but had not yet been issued travel documents was detained in violation of due process clause where the immigration and Naturalization Service did not present sufficient evidence showing that it abided by the Interim Procedures of the immigration regulations or demonstrated that it conducted the required interviews before determining that alien could remain detained after expiration of the 90-day removal period could not be detained by the Attorney General following a removal order. Ford v. Quarantillo, 142 F. Supp. 2d 585 (D.N.J. 2001).

Continued detention of alien who was availing deportation to Barbados was not unreasonable where he did not show or attempt to show that there was any impediment to his removal and it was undisputed that the only reason he had not been removed was that he chose to contest his final order of deportation. Worrell v. Ashcroft, 207 F. Supp. 2d 61 (W.D. N.Y. 2002).

Continued detention of alien who was availing deportation to Barbados was not unreasonable where he did not show or attempt to show that there was any impediment to his removal and it was undisputed that the only reason he had not been removed was that he chose to contest his final order of deportation. Worrell v. Ashcroft, 207 F. Supp. 2d 61 (W.D. N.Y. 2002).

Due process did not require an individualized bond hearing for a lawful resident alien with three marijuana misdemeanor convictions held pending his removal to the United States on returning from a visit to Korea and who was subject to mandatory detention under immigration statute pursuant to the provision requiring detention of alien that INS's final resolution of this appeal of an order requiring his removal from the country; as an individual alien, he did not have a liberty interest sufficient to trigger due process rights to a bond hearing. Hoang v. U.S., 341 F. Supp. 2d 627 (E.D. Va. 2003).

Aliens, who were natives and nationals of Somalia, and were in detention pending their removal to Somalia, demonstrated that there was not substantial likelihood that aliens would be removed in reasonably foreseeable future, given that Somalia did not have government capable of accepting deportees, and thus aliens were entitled to relief from detention. Ali v. Ashcroft, 213 F.R.D. 390 (W.D. Wash. 2003).

Alien, whose post-final-removal-order detention exceeded six months, was entitled to relief from continued detention since he failed to meet his burden of showing no significant likelihood of removal in the reasonably foreseeable future, delay in issuing travel

© West, a Thomson business, 5/2001

§ 1987

documents to alien arose from the fact that the Ethiopian Consulate was unsure of alien's nationality, where it was likely that the alien's deportation would not be effected and the plan government's conclusion over the issue was alleviated. Lema v. U.S. I.N.S., 214 F. Supp. 2d 1116 (W.D. Wash. 2002).

No reasonable likelihood existed that Immigration and Naturalization Service (INS) would be able to remove alien within reasonably foreseeable future, and, thus, INS could not continue to detain him beyond the normal 90-day statutory removal period after ordering him removed; although INS had submitted evidence that State Department had referred the matter for repatriation agreement to Cambodian government, United States had no functioning repatriation agreement with Cambodia, and Cambodia had not announced willingness to enter into agreement. Ma v. Reno, 208 F.3d 815, remanded on reh'g, 208 F.3d 815, as amended, releasing an hour denied, certiorari granted.

Statute providing for mandatory detention of aggravated felons pending removal violated procedural due process rights of alien, whose removal was effected after the enactment of Antiterrorism and Effective Death Penalty Act (AEDPA) and Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), and who was thus eligible for discretionary relief under the United States Attorney General's authority to remove removed; the alien was removed "may" be detained beyond the removal period granted Attorney General authority to subject aliens under final orders of removal to periodic custody review. Nguyen v. Fasano, 84 F. Supp. 2d 1099 (S.D. Cal. 2000).

Alien with criminal record under final order of deportation did not have substantive due process right that precluded indefinite detention of alien, where (1) there was possibility of eventual departure; (2) there were adequate procedures in place for detention, whereby alien was eligible for release on parole; and (3) detention was necessary to prevent risk of flight or threat to community. Borac v. I.N.S., 72 F. Supp. 2d 1101.

Statute providing that certain aliens ordered removed "may be detained beyond the removal period" granted Attorney General authority to subject aliens under final orders of removal to periodic custody review. Nguyen v. Fasano, 84 F. Supp. 2d 1099 (S.D. Cal. 2000).

Statutory detention of alien pending removal proceeding although facially neutral on removal proceeding was constitutionally valid; alien's fundamental right to liberty under due process clause, while alien did not have an absolute right to remain at liberty while the Immigration and Naturalization Service (INS) undertook removal proceedings against him, due process required an individualized hearing to the necessity of the detention. Bouyadi v. Holmes, E.D.Pa.1999, 74 F.Supp.2d 471.

[N]either the Immigration and Nationality Act (INA) nor the due process clause authorizes certain criminal aliens subject to final deportation beyond the 90-day removal period was not unconstitutional. Dominguez-Estrella v. U.S. I.N.S., W.D.La.1999, 71 F.Supp.2d 1478.

Alien's challenge to constitutionality of statutory scheme under which he was allegedly detained for the indefinite and permanent detention of aliens who were under final orders of deportation but who could not be deported because their countries refused to allow the reinstatement of their nationals, was not

58

2004 Cumulative Supplement

---

district court's jurisdiction as challenge of detention to "execute removal orders." Villafuerte v. U.S. I.N.S., W.D.La.1999, 71 F.Supp.2d 573.

§ 1988 Supervision after 90-day period

Cases

Regulation permitting Immigration and Naturalization Service (INS) to impose a bond on alien released after final determination of removal who were not removed within the statutory 90-day removal period was reasonable. Cuc v. U.S. I.N.S., 189 F. Supp. 2d 1092 (S.D. Cal. 2001).

§ 1989 Aliens imprisoned, arrested, or on parole, supervised release, or probation

Statutes

42 U.S.C.A. §§ 267 to 281a, regarding narcotics addicts, were repealed in 2000.

Cases

Defendant's three prior misdemeanor convictions against the person, so as to warrant an enhanced term of supervised release for illegal reentry into the United States; driving under the influence was not a crime against the person and therefore did not qualify as a crime of violence. U.S. v. Trejo-Galvan, 304 F.3d 406 (6th Cir. 2002).

"Detention by the Immigration and Naturalization Service (INS) of an alien convicted of first degree assault with a deadly weapon, after alien served sentence pursuant to provision of Immigration and Nationality Act, requiring mandatory detention of criminal aliens pending administrative removal proceedings, violated alien's substantive due process rights. Fed. Appx. 919 (10th Cir. 2002).

Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) eliminated the district court's jurisdiction to order alien detention. Because IIRIRA's expungement release even though it did not stay alien's deportation, the sentence before IIRIRA was enacted, statute in an intervening statute conferring or outling jurisdiction and therefore applies to all cases then pending when the statute was enacted. U.S. v. Ramirez-Perez, 166 F.3d 1106 (11th Cir. 1999).

§ 1993 Reinstatement of removal orders against aliens illegally re-entering

Cases

Alien who had conceded that all predicate findings that prior deportation officer made in reinstating his prior deportation order followed, where it was neither new, nor substantially true, and did not allow him to relief safeguards he sought could alter result, could not show that he suffered any formal prejudice through application of removal procedures governing reinstatement of removal orders that were

---

ALIENS AND CITIZENS

removal provision necessarily adopted in enlarged definition, including the rejection of the charge. Guerrero-Sousa v. I.N.S., 226 F.3d 1020 (9th Cir. 2000).

Board of Immigration Appeals could reasonably interpret bank fraud statute as involving fraud or deceit within definition of "aggravated felony," and thus alien's offense was subject to removal. Sharma v. Ashcroft, 57 Fed. Appx. 998 (3d Cir. 2002).

Alien convicted in state court of possession of more than 30 grams of cannabis was not subject to removal on the basis of his drug conviction, where his conviction was vacated on post-conviction under consideration for possession of less than 30 grams. Sandoval v. I.N.S., 240 F.3d 577 (7th Cir. 2001).

Alien's prior state court conviction of possession of stolen motor vehicle did not qualify as a "theft offense" under either a categorical or modified categorical approach, as an aggravated felony for which alien could be removed; because elements of Arizona statute in question were such that alien could be convicted without knowing vehicle was stolen, and deportation hearing judge did not consider whether alien had necessary knowledge that the vehicle was stolen, and only that she was convicted of possession of a stolen vehicle. Huerta-Guevara v. Ashcroft, 321 F.3d 883 (9th Cir. 2003).

In calculating the definition of aggravated felony, the conviction of a larceny felon rendering an alien subject to removal. Reyes v. I.N.S., 292 F.3d 1029 (9th Cir. 2002).

In calculating "loss" which resulted from particular count of bank fraud indictment to which alien pled guilty, for purposes of deciding whether count of conviction was an aggravated felony for which alien could be removed, court could not restrict his inquiry solely to amount of check alleged in that count as having been fraudulently obtained; in the conviction check was written in furtherance of overall scheme, and could consider total amount of scheme, as having been written in furtherance of overall scheme, and court could consider total amount of loss resulting from entire scheme. Khalayleh v. I.N.S., 287 F.3d 978 (10th Cir. 2002).

Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) precluded district court from reviewing any claim by alien deportation officer's exercise of discretion in connection with deportation proceedings that resulted in his deportation based on his expunged status as an aggravated felon. U.S. v. Brown, 127 F. Supp. 2d 392 (W.D. N.Y. 2000).

b.   Judicial Removal (§§ 2091–2096)

§ 2093 Judicial order of removal—notice, appeal and execution

Cases

Alien was convicted under controlled sub-

© West, a Thomson business, 5/2004

---

§ 2097

stances statute, not "accessory after the fact" statute, and Court of Appeals thus lacked jurisdiction to review removal order based upon alien's conviction, where judgment of criminal conviction, where defendant's offense was as "Title 8, Section" of controlled substance conviction, and described "Nature of Offense" as "Accessory after the fact to the Manufacture of Methamphetamine," and where listing conviction and sentence modified consistently with first time convictions for possession of less than 30 grams. Garcia-Garcia v. I.N.S., 328 F.3d 1083 (9th Cir. 2003).

Although Court of Appeals lacked jurisdiction to review whether an issue of whether alien's underlying conviction constituted an "aggravated felony," Nijjar-Barraza v. I.N.S., 275 F.3d 1173 (9th Cir. 2002).

Immigration and Naturalization Service (INS) may, in deportation hearing, give alien submission, rather than to address that appeared on the hardwritten note in her INS file, in sending notice of removal hearing to alien's address that was residing with cousin, and there was note that address was in writing; note did not suggest that alien was residing with cousin, and there was an address that was residing with cousin, and there was a note that address was in writing. Dominguez v. U.S. Atty. Gen., 284 F.3d 1258 (11th Cir. 2002).

c.   Alien Terrorist Removal Procedures
(§§ 2097–2120)

§ 2097 Overview

Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 2 was redesignated as 8 C.F.R. Part 200, and sections were redesignated 28 C.F.R. Part 200, consisting of 28 C.F.R. § 200.1.

Cases

Alien convicted by jury of violation of state drug laws could not have relied on availability of discretionary relief from order of deportation, and thus may not have been entitled to waiver of deportation under Antiterrorism and Effective Death Penalty Act (AEDPA); rather, AEDPA's limitation of discretionary relief was retroactive. Zoldan, Dias v. I.N.S., 311 F.3d 456 (1st Cir. 2002).

Retroactive application of Antiterrorism and Effective Death Penalty Act (AEDPA) to alien who pled guilty to a crime before AEDPA's enactment date, ineligible for a discretionary waiver of deportation which alien would have been statutorily eligible at time of his guilty plea, was impermissible; the alien's eligibility for discretionary waiver attached at new disability, in respect to transactions or considerations already past, and offended principles of law governing retroactivity and respect for reason-

75

# ALIENS AND CITIZENS (§§ 1447-2555)

KeyCite® Cases and other legal materials listed in KeyCite Scope can be researched through West's KeyCite service on Westlaw®. Use KeyCite to check citations for form, parallel references, prior and later history, and comprehensive citator information, including citations to other decisions and secondary materials.

## IV. PORTS OF ENTRY TO THE UNITED STATES; BORDER CROSS-INGS [§§ 1447-1641]

### A. BORDER CROSSING DOCUMENTS [§§ 1447-1641]

#### 1. Matters Pertaining to All Aliens [§§ 1447, 1448]

##### § 1447 Introduction

**Cases**

The fact that there was a regulation designating only one immigration officer at each location in question as an immigration officer (INS) agent with 11 years of experience that location in question in alien smuggling prosecution did warrant his testimony. U.S. v. Caisson, 282 F.3d 253 (3d Cir. 2002).

##### § 1842 Drug-related crimes

**Research Notes**

What Constitutes "Aggravated Felony" for which Alien Can Be Deported or Removed Under § 237(a)(2)(A)(iii) of Immigration and Nationality Act [8 U.S.C.A. § 1227(a)], 168 A.L.R. Fed. 575.

**Cases**

Although alien pleaded guilty to a felony for violation of state statute prohibiting "trafficking in cocaine," alien's drug conviction, which was based on his possession of between 5 and 80 grams of cocaine, did not constitute an "aggravated felony" for purposes of Immigration and Nationality Act (INA), for purposes of determining his eligibility for discretionary relief from removal, where state offense charged was only a felony under federal law, under federal controlled substance simple possession statute, the offense was not a felony under federal law, and reference to term of imprisonment included period of incarceration or confinement ordered by court. Vasquez v. Reno, 97 F. Supp. 2d 142 (D. Mass. 2000).

##### § 1843 Sex offenses

**Research Notes**

What Constitutes "Aggravated Felony" for which Alien Can Be Deported or Removed

---

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1211.

##### § 1458 Documents deemed unexpired during voyage to United States

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

##### § 1459 Presenting permit

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

###### c. Reentry Permit [§§ 1459-1466]

##### § 1465 Period of validity

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

##### § 1466 Who must present visa

**Regulations**

Title 8 of the Code of Federal Regulations

---

3. Canadian-Born Indians [§§ 1451-1463]

##### § 1462 Declaratory, injunctive, mandamus, or habeas corpus relief

**Cases**

Court of Appeals had jurisdiction to hear appeal of denial of habeas corpus petition filed by alien, who was being deported pursuant by Immigration and Naturalization Service (INS) following deportation order violated his due process rights, inasmuch as decision to deny order so as to be unreviewable by courts pursuant to Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which was jurisdictional limit under which his claims could be evaluated. Zadvydas v. Underdown, 185 F.3d 279 (5th Cir. 1999).

###### 4. Immigrants [§§ 1454-1479]

###### a. Basic Rules [§§ 1454-1468]

##### § 1455 Who must present passport

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

##### § 1456 Who must present visa

**Regulations**

Title 8 of the Code of Federal Regulations

---

was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211.

###### c. Alien Registration Receipt Card [§ 1467]

##### § 1467 Generally

**Regulations**

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 1211.

---

sion and customary International law tenet that the best interests of the child be considered where possible. Beharry v. Reno, 183 F. Supp. 2d 584 (E.D. N.Y. 2002).

Alien convicted of bank fraud was convicted of an "aggravated felony," requiring expedited removal proceedings, and thus was convicted for removal purposes. Bauoba v. Elwood, 252 F. Supp. 2d 195 (E.D. Pa. 2003).

Alien's failure to raise claim that retroactive application of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) definition of "aggravated felony" to his forgery convictions was improper before immigration judge or Board of Immigration Appeals (BIA) constituted waiver of such claim on federal habeas corpus petition. Song v. I.N.S., S.C.D.Cal.2000, 82 F.Supp.2d 1121.

Since alien was sentenced to a term of imprisonment of one year, his state petty larceny conviction was an aggravated felony for removal purposes under statutory subsection which makes an aggravated felony any theft offense for which the term of imprisonment is at least one year. Sui v. Immigration & Naturalization, W.D.N.Y.1999, 77 F.Supp.2d 360.

---

Expanded definition of "aggravated felony" added to Immigration and Naturalization Act (INA) by Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) was meant to apply retroactively to those aliens convicted of an "aggravated felony," or of otherwise nonqualifying offenses prior to statute's effective date, so as to render such aliens ineligible for relief from removal. Mohammed v. Ashcroft, 261 F.3d 1244 (11th Cir. ...).

Word "suspension" as used in prison-term test found in Immigration and Nationality Act's definition of "aggravated felony," has federal meaning, and refers to a procedural act that precedes a court's authorization for a defendant to spend part or all of the imposed prison sentence outside of prison. U.S. v. Ayala-Gomez, 255 F.3d 1314 (11th Cir. 2001).

Retroactive application of Illegal Immigration Reform and Immigrant Responsibility Act's (IIRIRA) provision which made alien removable by redefining "aggravated felony" to include alien's prior conviction, did not violate Due Process Clause, where alien did not have any settled expectation of being eligible for discretionary relief from removal at time of deportation, alien was not similarly-situated aliens, and there was a rational basis for affording discretionary relief only to aliens with a settled expectation regarding their eligibility for such relief. U.S. v. Hernandez-Vargas, 273 F. Supp. 2d 1120 (C.D. Cal. 2003).

Congress intended the 1996 amendments to Immigration and Nationality Act to make the aggravated felony definition apply retroactively to all defined offenses wherever committed and to make alien so convicted eligible for deportation notwithstanding the passage of time between the crime and the removal order. Mathews v. I.N.S., 170 F. Supp. 2d 99 (D. Mass. 2001).

In order to bring Immigration and Naturalization Act (INA) into compliance with international law requirements, section establishing eligibility for discretionary relief from deportation should be read to require only seven years of residence in the United States, who would suffer "extreme hardship" if the alien is removed would be construed to confer eligibility to satisfy seven-year residence and "extreme hardship" requirements of seven years for family and had been convicted of an "aggravated felony" as defined after they committed their crime, but was not categorized as deportable; such treatment and summary deportation of such aliens would violate International Covenant on Civil and Political Rights (ICCPR) guarantee against arbitrary interference with one's family, and the provision that an alien be allowed to submit the reasons against the expul-

© West, a Thomson business, 5/2004

### § 1468    d.   Waiver of Documentation [§§ 1468–1470]

### § 1468   Generally

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

### § 1469   Application for waiver

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

### § 1470   Action on application

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

### e.   Documents of Particular Categories of Immigrants [§§ 1471–1479]

#### (1)   Refugees [§§ 1471]

#### (a)   In General [§ 1471]

### § 1471   Generally

#### Regulations

8 C.F.R. § 212.1(n), added in 2000, provides that notwithstanding any of the provisions of this part, an alien seeking admission as a principal according to § 101(a)(15)(Q)(ii) of the Act must be in possession of a Certification Letter issued by the Department of State's Program Administrator documenting participation in the Irish peace process cultural and training programs.

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

### (b)   Travel Documents [§§ 1472–1475]

### § 1472   Eligibility

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. § 103.7 was redesignated 8 C.F.R. § 103.7(b)(1), amended in 2000, reflects that not all Form I-129 petitioners must be accompanied by a $500 filing fee. The regulation now provides that only certain

H-1B petitions must be submitted with the $500 filing fee.

8 C.F.R. § 103.7(b)(1), amended in 2002, added fees for filing an application to classify an alien as a T nonimmigrant, victim of a severe form of trafficking in persons and their immediate family members.

8 C.F.R. § 103.7(b)(1), amended in 2001, changes the base set and additional fees required under Form I-129 for a nonimmigrant worker. It also provides certain fee exemptions.

### (2)   Others [§§ 1476–1479]

### § 1476   Commuters

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

### § 1479   Diplomats, trade representatives, and international organization representatives

#### Regulations

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 211 was redesignated 8 C.F.R. Part 1211.

### 5.   Nonimmigrants [§§ 1480–1514]

### a.   Passports and Visas [§§ 1480–1496]

#### (1)   Basic Rules [§ 1480]

### § 1480   Generally

#### Regulations

8 C.F.R. § 212.1(n), added in 2000, provides that notwithstanding any of the provisions of this part, an alien seeking admission as a principal according to § 101(a)(15)(Q)(ii) of the Act, must be in possession of a Certification Letter issued by the Department of State's Program Administrator documenting participation in the Irish peace process cultural and training programs.

Title 8 of the Code of Federal Regulations was reorganized in 2003 to reflect the transfer of functions of the Immigration and Naturalization Service to the Department of Homeland Security. 8 C.F.R. Part 212 was redesignated 8 C.F.R. Part 1212.

#### Cases

Restaurant manager did not qualify for preference visa as a "multinational manager" where employer's duties would not involve use of "managerial" skills and, further, whether the executive functions and what proportion would be actively or primarily managerial, there was no evidence that proportion of manager's duties would be managerial. IKEA US, Inc. v. U.S. Dept. of Justice I.N.S., 48 F. Supp. 2d 22 (D.D.C. 1999).

Restaurant manager did not qualify for preference visa as a "multinational manager" where employer failed to document what proportion of manager's duties would be managerial.

### ALIENS AND CITIZENS

expunged under state rehabilitative laws, contended that it would retroactive application. Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000).

### § 1836   Sentence requirements

#### Cases

Defendant convicted of conspiracy to commit bank fraud could be deported regardless of sentence imposed, and therefore, sentencing court lacked jurisdiction to determine proper basis for departure. U.S. v. Ogunade, 41 F. Supp. 2d 567 (E.D. Pa. 1999).

### § 1837 —   Effect of suspension of sentence and probation

#### Cases

Defendant's two drug possession offenses under Arizona law were not "aggravated felonies" for purposes of sentencing guidelines enhancement for alien who reenters United States illegally, even though the defendant could have been subjected to an enhanced sentence for his re-entry conviction, even though the Controlled Substances Act, the offenses are punishable as felonies by more than one year's imprisonment under applicable state or federal law. U.S. v. Sanchez-Rodriguez, 161 F.3d 556 (9th Cir. 2002).

### § 1841   Definitions under IIRAIRA

#### Research References

What Constitutes "Aggravated Felony" for which Alien Is Deported or Removed Under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act (8 U.S.C.A. § 1227(a)), 168 A.L.R. Fed. 575.

Immigration law and the criminal alien: A compendium of policies for arbitrary deportation. 18 Okla. City U. L. Rev. 1 (1993).

### § 1841a   Aggravated Felonies [§§ 1841–1844]

#### Statutes

8 U.S.C.A. §§ 1589 et seq., added in 2000, involve strengthening the prosecution and punishment of traffickers in persons.

#### Cases

Congress had legitimate interests in protecting society from the commission of aggravated felonies and illegal trafficking, possession, and use of dangerous weapons and in expeditiously removing dangerous aliens from country and legislation providing for the conviction of all aliens convicted of qualifying offenses; therefore, retroactive application of expanded definition of "aggravated felony" under Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) and Antiterrorism and Effective Death Penalty Act (AEDPA), convicted of conspiracy to export firearms without license prior to IIRIRA's enactment